**GARCIA & ARTIGLIERE**
**Stephen M. Garcia, State Bar No. 123338**
  edocs@lawgarcia.com
**One World Trade Center, Suite 1950**
**Long Beach, California 90831**
**Telephone: (562) 216-5270**
**Facsimile: (562) 216-5271**

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| GAIL PARRISH by and through Successor in Interest, Monica Parrish <br><br> Plaintiff, <br><br> vs. <br><br> GORDON LANE HEALTHCARE, LLC; SUN MAR MANAGEMENT SERVICES; IRVING BAUMAN; FRANK JOHNSON; ELI MARMUR; WILLIAM PRESNELL and DOES 1-250, inclusive, <br><br> Defendants. | CASE NO. 8:22-CV-01790 <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES** <br><br> 1) Violations of the Consumer Legal Remedies Act (Civ. Code § 1750, et seq.) <br> 2) Violations of Resident Rights (Health & Saf. Code, § 1430, subd. (b)) <br><br> **DEMAND FOR JURY TRIAL** |

 **COMES NOW** Plaintiff GAIL PARRISH (hereinafter sometimes referred to as "PLAINTIFF") was at all times relevant hereto a resident of the State of California. GAIL PARRISH brings this action by and through her Successor in Interest Monica Parrish, on behalf of herself and a class of similarly situated California consumers, based on information and belief and the investigation of counsel, except for information based on personal knowledge, hereby alleges as follows:

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1

**THE PARTIES**

1.    <u>Plaintiff Class</u>.

The class sought to be represented is defined as follows:

a.    <u>Plaintiff Subclass One: "Private Pay Residents-First Cause of Action Only."</u>

The first subclass sought to be represented in this action as it relates to the First Cause of Action only, is defined as follows: all persons who resided in (or continue to reside in) the California skilled nursing facility GORDON LANE HEALTHCARE LLC, that is and was owned, operated, and/or managed by the defendants named herein at any time within the three years prior to the filing of this Complaint through the date of the final disposition of this action wherein the defendants were reimbursed for services provided to a "class member" by private pay and/or privately acquired insurance and/or any HMO or PPO. The subclass does not include: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror selected to hear this case.

b.    <u>Plaintiff Subclass Two: "All Residents-First And Second Causes of Action</u>

The second subclass sought to be represented in this action as it relates to the First and Second Causes of Action, is defined as follows: all persons who were resided in (or continue to reside in) the California skilled nursing facility GORDON LANE HEALTHCARE LLC, that is and was owned, operated, and/or managed by the defendants named herein at any time within the three years prior to the filing of this Complaint through the date of the final disposition of this action. The class does not include: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror selected to hear this case. This subclass shall seek attorneys' fees and costs only.

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR DAMAGES
M:\Gordon Lane Healthcare, LLC, In Re (22-086)\Pleading\Complaint.docx

c.    Plaintiff Subclass Three: "Health & Safety Code Section 1430(b) Violations"

The third subclass sought to be represented in this action as it relates to the Second Cause of Action only, is defined as follows: all persons who were resided in (or continue to reside in) the California skilled nursing facility GORDON LANE HEALTHCARE LLC, that is and was owned, operated, and/or managed by the defendants named herein at any time within the three years prior to the filing of this Complaint through the date of the final disposition of this action regardless of the manner in which Defendants were reimbursed for services. The class does not include: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror selected to hear this case.

2.    Individual Plaintiff/Class Representative. Plaintiff GAIL PARRISH (sometimes referred to herein as "Plaintiff") was a resident of GORDON LANE HEALTHCARE LLC who entered into a standard admission agreement with the Defendants. Plaintiff was at all times relevant hereto a "person," and a "consumer" as defined by *Civil Code* §1761 in that Plaintiff is an individual who sought or acquired, by purchase or lease, services for personal purposes.

3.    Defendants. Defendants GORDON LANE HEALTHCARE LLC and DOES 1 through 50 (hereinafter referred to as the "FACILITY") were at all relevant times in the business of providing long-term custodial care as the licensee of a 24-hour skilled nursing facility under the fictitious name GORDON LANE HEALTHCARE LLC and were subject to the requirements of federal and state law regarding the operation of skilled nursing facilities operating in the State of California. GORDON LANE HEALTHCARE LLC reports to the Secretary of State of California that its principal place of business is located at 3580 Wilshire Blvd., Los Angeles, California 90010.

4.    IRVING BAUMAN; FRANK JOHNSON; ELI MARMUR and DOES

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

51 through 100 each own at least a 5% or more equity interest in GORDON LANE HEALTHCARE LLC as reported to the California Office of Statewide Health Planning and Development under penalty of perjury and are also the only listed managers of GORDON LANE HEALTHCARE LLC as reported to the Secretary of State of California, with all the legal rights and obligations attendant thereto.

5.     IRVING BAUMAN; FRANK JOHNSON;  WILLIAM PRESNELL and DOES 101 through 150 are the only listed managers of SUN MAR MANAGEMENT SERVICES as reported to the Secretary of State of California, with all the legal rights and obligations attendant thereto. FRANK JOHNSON and ELI MARMUR each own a 5% or more equity interest in SUN MAR MANAGEMENT SERVICES as reported to the California Office of Statewide Health Planning and Development under penalty of perjury.

6.     SUN MAR MANAGEMENT SERVICES effectively operates and controls GORDON LANE HEALTHCARE LLC's operations as its management company. In addition, SUN MAR MANAGEMENT SERVICES is one of the owners of GORDON LANE HEALTHCARE, LLC as reported to the Centers for Medicare & Medicaid Services.

7.     Defendants IRVING BAUMAN; FRANK JOHNSON; ELI MARMUR; WILLIAM PRESNELL; SUN MAR MANAGEMENT SERVICES and DOES 51 through 151 (collectively hereinafter, the "MANAGEMENT DEFENDANTS") were at all relevant times the FACILITY'S owners, operators, parent company, and/or management company and actively participated and controlled the business of the FACILITY and thus provided long-term professional and custodial care as a 24-hour Skilled Nursing Facility (hereinafter the FACILITY and MANAGEMENT DEFENDANTS are collectively alternatively referred to as the "DEFENDANTS").

8.     GAIL PARRISH is informed and believes and therefore alleges that at all times relevant to this Complaint, DOES 101-250 were licensed and unlicensed individuals and/or entities, and employees of the DEFENDANTS rendering care and

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

services to GAIL PARRISH and whose conduct caused or contributed injuries and damages alleged herein. It is alleged that at all times relevant hereto, the DEFENDANTS were aware of the unfitness of DOES 101-250 to perform their necessary job duties and yet employed these persons and/or entities in disregard of the health and safety of GAIL PARRISH.

9. GAIL PARRISH is ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 250, and for that reason has sued such Defendants by fictitious names. PLAINTIFF will seek leave of the Court to amend this Complaint to identify said Defendants when their identities are ascertained.

## **CLASS ACTION ALLEGATIONS**

10. <u>Ascertainable Class</u>. The proposed class is ascertainable. The litigation of the questions of fact and law involved in this action will resolve the rights of all members of the class and hence will have binding effect on all class members. These class members can be readily identified from residency computer files of the defendants and other means readily available to the defendants, and thus the plaintiffs, through minimally intrusive discovery. The class is numerous. On information and belief, those class members number more than three thousand (3000). Joinder of all class members is impracticable due to both a reluctance of class members to sue their current caregivers and the relatively small monetary recovery for each class member in comparison to the costs associated with separate litigation.

11. <u>Community of Interest</u>. The proposed class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiff has claims typical of the class members. Without limitation, as a result of defendants' conduct alleged herein, Plaintiff and the class were deprived of the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

"an adequate number of qualified personnel to carry out all of the functions of the facility." The named Plaintiff can fairly and adequately represent and protect the interests of the class in that there are no conflicts between Plaintiff's interest and the interests of other class members, this action is not collusive, the named Plaintiff and Plaintiff's counsel have the necessary resources to litigate this action, and counsel has the experience and ability required to prosecute this case as a class action.

12. <u>Superiority of Class Adjudication</u>.    The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue their current nursing home provider and/or their inability to afford a separate action. Finally, equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received.

## **ALTER EGO ALLEGATIONS**

13. The DEFENDANTS set forth hereinabove fail to recognize the uniqueness and independence of each of the DEFENDANTS. That at all times relevant hereto there was a such a unity of interest and ownership between the DEFENDANTS such that the individual distinctions between them had ceased and that the facts as alleged herein are such that an adherence to the fiction of the separate existence of the DEFENDANTS would, under the particular circumstances alleged herein, sanction a fraud and/or promote injustice.

14. At all relevant times, the DEFENDANTS, and each of their tortious acts and omissions, as alleged herein, were done in concert with one another in furtherance of their common design and agreement to accomplish a particular result, namely maximizing profits from the operation of the FACILITY by underfunding and understaffing the FACILITY. Moreover, the DEFENDANTS aided and abetted each

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

other in accomplishing the acts and omissions alleged herein. (See Restatement (Second) of Torts §876 (1979)).

15.    Upon information and belief, it is alleged that the misconduct of the DEFENDANTS, which led to the violation of the rights of Plaintiff and the class as alleged herein, was the direct result and product of the financial and control policies and practices forced upon the FACILITY by the financial limitations imposed upon the FACILITY by the DEFENDANTS, by and through the officers, directors and/or managing agents enumerated in herein below and others presently unknown to PLAINTIFF and according to proof at time of trial.

16.    The MANAGEMENT DEFENDANTS controlled the FACILITY to such a degree that it was a "mere instrumentality" of the MANAGEMENT DEFENDANTS used for an improper purpose.

17.    As alleged hereinabove, IRVING BAUMAN; FRANK JOHNSON; and ELI MARMUR each own at least a 5% or more equity interest in GORDON LANE HEALTHCARE LLC as reported to the California Office of Statewide Health Planning and Development under penalty of perjury and are also the only listed managers of GORDON LANE HEALTHCARE LLC as reported to the Secretary of State of California, with all the legal rights and obligations attendant thereto.

18.    As alleged hereinabove, IRVING BAUMAN; FRANK JOHNSON; WILLIAM PRESNELL and DOES 101 through 150 are the only listed managers of SUN MAR MANAGEMENT SERVICES as reported to the Secretary of State of California, with all the legal rights and obligations attendant thereto. As alleged hereinabove, FRANK JOHNSON and ELI MARMUR each own a 5% or more equity interest in SUN MAR MANAGEMENT SERVICES as reported to the California Office of Statewide Health Planning and Development under penalty of perjury.

19.    As alleged hereinabove, SUN MAR MANAGEMENT SERVICES effectively operates and controls GORDON LANE HEALTHCARE LLC's operations as its management company. In addition, SUN MAR MANAGEMENT

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  SERVICES is one of the owners of GORDON LANE HEALTHCARE, LLC as

2  reported to the Centers for Medicare & Medicaid Services.

3      20.    The MANAGEMENT DEFENDANTS direct the expenditures of the

4  FACILITY to other companies of the MANAGEMENT DEFENDANTS so that they

5  can unlawfully profit from the operations of the FACILITY at the expense of the

6  legally mandated care the residents of the FACILITY, including GAIL PARRISH,

7  require and deserve. Further the MANAGEMENT DEFENDANTS intentionally hide

8  the multi-tier profiteer effort through manipulation of multiple companies, shell

9  operators and refusal to report all related party transactions to the State of California

10  in violation of applicable rules, laws and regulations.

11      21.    Accordingly, the MANAGEMENT DEFENDANTS, in effect controls

12  the operations of the FACILITY.

13      22.    This includes but is not limited to the legal obligation in the operation of

14  the FACILITY that "any matter relating to the activities of the limited liability

15  company is decided *exclusively* by the managers" pursuant to *Corporations Code* §

16  17704.07(c)(1) (emphasis added).) And in fact, in effect, only the manager of the

17  FACILITY, has the sole capacity to bind the limited liability company and/or execute

18  any instrument on behalf of the limited liability company.

19      23.    And accordingly any act of the MANAGEMENT DEFENDANTS is

20  imputed to the FACILITY, pursuant to *Corporations Code* § 300(a), 17703.01(b), (c).

21      24.    Furthermore, the MANAGEMENT DEFENDANTS operate each of the

22  DEFENDANTS as an alter ego and/or single enterprise, by (1) commingling of funds

23  and other assets; (2) treating each entity as if it was solely his, (3) holding out to

24  lenders that he is personally liable for debts of the entities, (4) failing to maintain

25  adequate corporate records, owning all of the stock, (5) use of the different entities as

26  mere conduit for a single enterprise, and concealment of his financial interest in the

27  companies, and (6) using other mechanisms and according to proof at time of trial.

28      25.    The "Single Enterprise" formed by the DEFENDANTS can be found by

review of the Long-Term Care Facility Integrated Disclosure and Medi-Cal Cost Report submitted under penalty of perjury to the California Office of Statewide Health, Planning, and Development ("OSHPD Report"). Therein, the FACILITY lists "related" parties, referring to entities under common ownership or control, to which it funnels cash for non-existent phantom services and obligations which are, in fact, simply efforts by the MANAGEMENT DEFENDANTS to move money, goods and services around from one of their commonly owned and/or controlled entities to another with no regard to their legal separation.

26.    GORDON LANE HEALTHCARE, LLC and others, at the expense of the legally mandated care to be provided to residents in the FACILITY, claims in the OSHPD Cost Report of the FACILITY for its reporting period ending December 31, 2019, that SUN MAR MANAGEMENT SERVICES provided the FACILITY so-called "administrative services" with a paid value of $797,900.00. SUN MAR MANAGEMENT SERVICES provides no services which near such value and rather this is a manner in which the "Single Enterprise" siphons off monies for the sole purpose of unjustly enriching the owners of MANAGEMENT DEFENDANTS and others who mandate the payment from the FACILITY to the MANAGEMENT DEFENDANTS for these non–existent phantom services. The agreement to pay for such services was not the result of an arm's length negotiation but was rather dictated to GORDON LANE HEALTHCARE, LLC by IRVING BAUMAN and FRANK JOHNSON as the managers and/or officers of GORDON LANE HEALTHCARE, LLC and SUN MAR MANAGEMENT SERVICES, and in furtherance of the take from one pocket place it another mentality of a single enterprise.

27.    Because the funds that were improperly siphoned to the MANAGEMENT DEFENDANTS including but not limited to SUN MAR MANAGEMENT SERVICES, IRVING BAUMAN; FRANK JOHNSON; ELI MARMUR; and WILLIAM PRESNELL for phantom services as alleged in the immediately preceding paragraph should have instead gone to pay for labor costs to

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

9

1  ensure that the FACILITY was sufficiently staffed to meet the needs of the residents,

2  failing to hold DEFENDANTS liable under an alter ego theory would lead to an

3  inequitable result.

4      28.    At the expense of the legally mandated care to be provided to residents

5  in the FACILITY, GORDON LANE HEALTHCARE, LLC claimed in the last

6  reporting to the California OSHPD, that the FACILITY paid "Various" related parties

7  for "Various" unspecified services with an accumulated paid value of $553,844.00.

8  These various related entities provided no services which near such value and rather

9  this is a manner in which the "Single Enterprise" siphons off monies for the sole

10 purpose of unjustly enriching the owners of MANAGEMENT DEFENDANTS and

11 others who mandate the payment from the FACILITY to the MANAGEMENT

12 DEFENDANTS for these non–existent phantom services.

13     29.    Because the funds that were improperly siphoned to the

14 MANAGEMENT DEFENDANTS including but not limited to SUN MAR

15 MANAGEMENT SERVICES, IRVING BAUMAN; FRANK JOHNSON; ELI

16 MARMUR; and WILLIAM PRESNELL for phantom services as alleged in the

17 immediately preceding paragraph should have instead gone to pay for labor costs to

18 ensure that the FACILITY was sufficiently staffed to meet the needs of the residents,

19 failing to hold DEFENDANTS liable under an alter ego theory would lead to an

20 inequitable result.

21     30.    Due to the DEFENDANTS' direct conduct, as well as their practice of

22 aiding and abetting the wrongful acts and omissions alleged herein and at the direction

23 of the true owner, operators and directors of the FACILITY, GAIL PARRISH

24 suffered the significant injuries more fully alleged herein as well as other injuries

25 according to proof at trial. These injuries were not the product of isolated failure but

26 rather the result of prolonged neglect and abuse that arose out of four (4) calculated

27 business practices by DEFENDANTS at the direction of the true owners, operators

28 and directors of the FACILITY:

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

(a) understaffing;

(b) relentless marketing and sales practices to increase resident census despite knowledge of ongoing care deprivation;

(c) ongoing practice of <u>utilizing unqualified and untrained employees</u> who, by law, were forbidden by law to administer nursing care to residents;

(d) ongoing practice of recruiting heavier care residents for which the nursing home received higher reimbursements, despite the dangerous levels of staff who were incapable of meeting the needs of the existing resident population.

31.    Critical operational decisions having impact on the FACILITY'S revenues and expenditures were centrally made and controlled by the DEFENDANTS at a corporate level at the direction of the true owners, operators and directors of the FACILITY. More specifically, the MANAGEMENT DEFENDANTS determined and controlled: the staff allowed to work in their nursing home chain; the staffing expenditures at each nursing home; the revenue targets for each nursing home, the census mix/targets as well as patient recruitment programs for each nursing home. In sum, at all relevant times, all cash management functions, revenues and expenditure decisions at the nursing home level were tightly controlled at the corporate level at the direction of the true owners, operators, and directors of the facilities, the MANAGEMENT DEFENDANTS. This was the case at the FACILITY. Accordingly, decisions as to staffing and census were made irrespective of patient population needs in the facilities, but rather, were determined by the financial needs of the company.

32.    The DEFENDANTS, by and through their corporate officers, directors, and managing agents including IRVING BAUMAN (manager of GORDON LANE HEALTHCARE, LLC and director of SUN MAR MANAGEMENT SERVICES); FRANK JOHNSON (manager of GORDON LANE HEALTHCARE, LLC and Director/CEO of SUN MAR MANAGEMENT SERVICES); ELI MARMUR (manager of GORDON LANE HEALTHCARE, LLC); WILLIAM PRESNELL (Director and CFO of SUN MAR MANAGEMENT SERVICES), and others

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR DAMAGES
M:\Gordon Lane Healthcare, LLC, In Re (22-086)\Pleading\Complaint.docx

presently unknown and according to proof at time of trial, ratified the conduct of their co-defendants and the FACILITY, in that they were aware of the understaffing of the FACILITY, in both number and training, the relationship between understaffing and sub-standard provision of care to patients of the FACILITY, including GAIL PARRISH, the rash, and truth of lawsuits against the DEFENDANTS' skilled nursing facilities including the FACILITY, and the FACILITY'S customary practice of being issued deficiencies by the California DPH as alleged herein.

33. And the fact of the matter is that by unlawfully siphoning off required funds for resident care, the MANAGEMENT DEFENDANTS and others left insufficient funds to safely and lawfully operate the FACILITY in accordance with applicable regulation. This fact is borne out by the simple fact that in 2019 when the average California nursing facility received only 22 DPH survey deficiencies, the FACILITY received 43, or double. And in the abysmal performance in care continued thereafter, for in the year 2020, when the average was only 7 DPH survey deficiencies, the FACILITY received 31, or more than 4 times as many DPH survey deficiencies.

34. In sum, the MANAGEMENT DEFENDANTS commingled the funds of the FACILITY with the operations of other skilled nursing facilities operated and controlled by them, siphoning funds from one to the other to cover the fact that the MANAGEMENT DEFENDANTS were unlawfully siphoning off cash from the FACILITY leaving insufficient funds to operate any of their facilities. The intermingling of the finances between the FACILITY and the MANAGEMENT DEFENDANTS is so complete as to render them simply alter egos of one another.

35. In addition to the aforementioned allegations, it is alleged upon information and belief that the managerial and operational control exerted by the MANAGEMENT DEFENDANTS over the FACILITY is also achieved through the implementation of uniform policies and procedures that the MANAGEMENT DEFENDANTS disseminate to the FACILITY and with which the FACILITY and its employees and agents are mandated to comply.

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

36.     While the MANAGEMENT DEFENDANTS exert complete operational control over the FACILITY as set forth in the immediately preceding paragraphs, pursuant to applicable state law the FACILITY also remains responsible to their licensing authority (the Department of Public Health) for their conduct in the exercise of their licenses and each has the "responsibility to see to it that the license is not used in violation of law." *California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295. In fact, Title 22 California *Code of Regulations* §72501 mandates that the FACILITY "shall be responsible for compliance with the licensing requirements and for the organization, management, operation and control of the licensed facility. The delegation of any authority by a licensee shall not diminish the responsibilities of such licensee." Title 22 California *Code of Regulations* § 72501.

## COMMON FACTUAL ALLEGATIONS

37.     In owning, operating, managing, administrating, controlling, and/or supervising the FACILITY, DEFENDANTS were required to comply with California statutory and regulatory law governing the operation of skilled nursing facilities. In owning, operating, managing, administrating, controlling, and/or supervising the FACILITY, DEFENDANTS were also subject to the authority of licensing and other governmental agencies, including but not limited to the California Department of Public Health ("DPH"), the California Department of Health Care Services ("DHCS"), and the federal Centers for Medicare & Medicaid Services ("CMS").

38.     It is alleged that Plaintiff and each class member were admitted to the FACILITY   pursuant to the utilization of the "California Standard Admission Agreement"[1] as mandated by Title 22 of the California *Code of Regulations*, §72516. *Health & Safety Code* §1599.74 mandates that every California skilled nursing facility

---

[1] A true and correct copy of an exemplar of the "California Standard Admission Agreement for Skilled Nursing Facilities and Intermediate Care Facilities" obtained from the California Department of Public Health's website at the self-authenticating link http://www.cdph.ca.gov/pubsforms/forms/CtrldForms/cdph327.pdf.

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

admission agreement shall contain a complete copy of the statutory and regulatory bill of rights in legible print of no less than 12-point type and that every resident shall sign a separate written acknowledgement that the resident has been informed of the Resident Bill of Rights.[2] California *Health & Safety Code* §1599.74 mandates in relevant part:

> (b)    Every contract of admission shall contain a complete copy of both the statutory and regulatory Patients' Bill of Rights. Notwithstanding any other provision of law, the text of the Patients' Bill of Rights shall be in legible print of no less than 12-point type. If a translation has been provided by the department, the text given to non-English-speaking residents shall be in their language.

> (c)    The    contract    shall    also    contain    a    separate    written acknowledgement that the resident has been informed of the Patients' Bill of Rights. Written acknowledgement by the resident or the resident's representative must be made either on a separate document or in the agreement itself next to the clause informing the resident of these regulatory rights. Written acknowledgement by use of the signature on the agreement as a whole does not meet this requirement.

California *Health & Safety Code* §1599.74(b)–(c).

39.    Pursuant to this uniform representation that the services provided by the Defendants would meet the particularized standards as set forth in the Resident Bill of Rights attached to the uniform Admission Agreement, the DEFENDANTS were to provide all residents of the FACILITY services consistent with the mandatory requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations* §72527(a)(25). Specifically, the services represented by the DEFENDANTS that they would provide to each resident, via the contractual Admission Agreement arrangement with each resident, was explicitly stated by the DEFENDANTS to include the obligation, and representation as to the standard of care to be provided, that the FACILITY would ensure the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations*  §72527(a)(25), most specifically the right to live in a facility

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

---

[2] A true and correct copy of an exemplar of the Resident Bill of Rights (Attachment F to the Standard Admission Agreement) obtained from the California Department of Public Health website at the self-authenticating link http://www.cdph.ca.gov/pubsforms/forms/CtrldForms/cdph327-Attachment-F.pdf  at 32–37.

14

that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" including, and as to that which this lawsuit references, "Direct Caregivers" as that term is defined in "Direct Caregivers", as the term "Direct Caregivers" is defined 22 *Code of Regulations* §72038.[3] These uniform representations of the DEFENDANTS in the Admission Agreement as to the nature of their services in this regard as to "Direct Caregivers" as defined in 22 *Code of Regulations* §72038, while performing nursing services as described in Sections 72309, 72311, and 72315 of Title 22 of the California *Code of Regulations*, as those sections read as of July 1, 2017 were false and actually known to be false when made by the DEFENDANTS when made. And in fact, the allegations in this action are specifically limited to an analysis of the failure to comply with applicable regulations and laws as to "Direct Caregivers" as defined in 22 *Code of Regulations* §72038, only.

40.    Pursuant to requirements of law and the provisions of the standard admission agreement, the DEFENDANTS were to provide PLAINTIFF and the class with services consistent with the mandatory requirements of Title 22 *Code of Regulations* §72527 and California *Health & Safety Code* §1599.1(a), as specifically referenced in Title 22 CODE OF REGULATIONS §72527(a)(25). Specifically, the DEFENDANTS were required to ensure the rights afforded to PLAINTIFF, members of the class, and all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and *Code of Regulations* §72527(a)(25), most specifically, the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility," in this lawsuit meaning "Direct Caregivers", as the

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

---

[3] Throughout this Complaint when the term "Direct Caregiver" is referenced it is meant to be as that term is defined in 22 *Code of Regulations* §72038 which is as follows:

"Direct caregiver" means a registered nurse, as referred to in Section 2732 of the Business and Professions Code, a licensed vocational nurse, as referred to in Section 2864 of the Business and Professions Code, a psychiatric technician, as referred to in Section 4516 of the Business and Professions Code, and a certified nurse assistant, or a nursing assistant participating in an approved training program, as defined in Section 1337 of the Health and Safety Code, while performing nursing services as described in sections 72309, 72311 and 72315. A person serving as the director of nursing services in a facility with 60 or more licensed beds cannot be a direct caregiver.

15

term "Direct Caregivers" is defined 22 *Code of Regulations* §72038, pursuant to Health & Safety Code §1599.1(a) (as expressly incorporated by Title 22 *Code of Regulations* §72527(a)(25). As to "Direct Caregivers" these DEFENDANTS failed miserably in this regard. The analysis of *Health & Safety Code* §1599.1 is accomplished in part by assessing the compliance of the DEFENDANTS with, as to this lawsuit "Direct Caregivers", as the term "Direct Caregivers" is defined 22 *Code of Regulations* §72038, consistent with the requirements of 22 *Code of Regulations* §72329.1.

41.    During the admissions process and prior to becoming residents of the FACILITY, representatives of the FACILITY presented Plaintiff and each class member, and/or each's legal representative, with a standard admission agreement containing the resident bill of rights as an attachment to the admission agreement as mandated by *Health & Safety Code* §1599.74. Plaintiff and each member of the class, and/or each's legal representative, read and understood the standard admission agreement and relied upon the material terms contained therein. In reliance on the terms of the standard admission agreement, Plaintiff and each member of the class, and/or each's legal representative, decided that Plaintiff and each member of the class would become residents of the FACILITY, and signed the admission agreement and became residents of the FACILITY. Each and every putative class member, and most specifically the named Plaintiff, and/or their legal representatives acting on their behalf, justifiably relied on these false written representations in agreeing to the terms and obligations of the written admission agreement to their detriment and as more fully set forth below.

42.    Before, during, and after the admissions processes of Plaintiff and each class member, the DEFENDANTS actively and intentionally concealed from Plaintiff and class members that at all times relevant hereto the FACILITY did not employ "an adequate number of "Direct Caregivers", as the term "Direct Caregivers" is defined 22 *Code of Regulations* §72038, to carry out all of the functions of the facility" in

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

16

violation of Health & Safety Code §1599.1(a) (as expressly incorporated by Title 22 *Code of Regulations* §72527(a)(25)).

43. It is alleged that the concealments by DEFENDANTS alleged in the immediately preceding paragraph were intended to deceive Plaintiff and members of the class into believing that the FACILITY were properly operated to induce Plaintiff and class members into becoming residents of the FACILITY. That Plaintiff and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, were unsophisticated and unknowledgeable in the operation of skilled nursing FACILITY in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status. Had the concealed facts been disclosed to Plaintiff and members of the class, they would not have become residents of the FACILITY and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing care at the FACILITY.

44. Before, during, and after the admissions processes of Plaintiff and each class member, the DEFENDANTS actively and intentionally concealed from Plaintiff and class members and/or each's legal representatives that DEFENDANTS did not devote sufficient financial resources to the proper operation of the FACILITY so as to ensure the sufficiency of "Direct Caregivers, and instead diverted those resources to create ill-begotten profits for DEFENDANTS. It is alleged that this concealment by DEFENDANTS was intended to deceive Plaintiff and members of the class and/or each's legal representatives into believing that the FACILITY was properly operated with sufficient "Direct Caregivers" to induce Plaintiff and class members into becoming residents of the FACILITY. That Plaintiff and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, and/or each's legal representatives, were unknowledgeable and unsophisticated in the operation of skilled nursing facilities in

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status.

45.     Before, during, and after the admissions processes of Plaintiff and each class member, the DEFENDANTS actively and intentionally concealed from Plaintiff and class members that DEFENDANTS chronically understaffed the FACILITY with an inadequate number of  "Direct Caregivers" to carry out the function of the FACILITY as more fully alleged herein, and in so doing and as a result thereof, the DEFENDANTS have violated the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of 'Direct Caregivers' to carry out all of the functions of the facility." It is alleged that this concealment by DEFENDANTS was intended to deceive Plaintiffs and members of the class into believing that the FACILITY was properly staffed to induce Plaintiff and class members into becoming residents of the FACILITY. That Plaintiff and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, were unknowledgeable and unsophisticated in the operation of skilled nursing facilities in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status. Had the concealed facts been disclosed to Plaintiff and members of the class, they would not have become residents of the FACILITY and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing care at the FACILITY.

46.     In reality, in direct contradiction to the representation in their uniform admission agreement that the FACILITY would "employ an adequate number of qualified personnel to carry out all functions of the facility" and to meet the needs of their residents, DEFENDANTS chronically understaffed the FACILITY as to "Direct

18

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

Caregivers" and chronically failed to meet the particularized standards as set forth in the Resident Bill of Rights relating to the mandatory requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations* §72527(a)(25), in the requirements of Title 22 *Code of Regulations* §72329.1 as is more fully alleged herein below. Thus, DEFENDANTS have misrepresented in their admission agreement that entering into the admission agreement with DEFENDANTS conferred or involved rights, remedies, or obligations which the transaction did not have or involve, or which was prohibited by law, in violation of *Civil Code* §1770(a)(14).

47.    Plaintiff and the class members, as persons unknowledgeable and unsophisticated in the operation of skilled nursing facilities in the State of California and having no knowledge of the material concealments by DEFENDANTS alleged herein, justifiably relied on the material terms of, and the representations set forth in, the DEFENDANTS' uniform Admission Agreement in entering into the admission agreement and becoming residents of the FACILITY thereby assuming the obligation of payment to the DEFENDANTS. Most specifically, Plaintiff and the Class relied on the following material term of the California Standard Admission Agreement relating to resident rights:

> **IV. Your Rights as a Resident**.  Residents of this Facility keep all their basic rights and liberties as a citizen or resident of the United States when, after, they are admitted. Because these rights are so important, both federal and state laws and regulations describe them in detail, and state law requires that a comprehensive Resident Bill of Rights be attached to this Agreement.
>
> Attachment F, entitled "Resident Bill of Rights," lists your rights as set forth in State and Federal law. For your information, the attachment also provides the location of your rights in statute.
>
> You should review the attached "Resident Bill of Rights" very carefully. To acknowledge that you have been informed of the "resident Bill of Rights," please sign here: _____.

In requiring their residents to specifically and separately acknowledge receipt of DEFENDANTS' representations regarding the minimum standards of care as set forth

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  in the Resident Bill of Rights, DEFENDANTS knew, or should have known, that their

2  residents were reasonably and justifiably relying on said representations.

3      48.    It is alleged that Plaintiffs and members of the Class suffered injury in

4  fact and concrete harm in that they relied on the representations of the

5  DEFENDANTS that they would be provided with minimum standards of care

6  consistent with the requirements of *Health & Safety Code* §1599.1(a) as incorporated

7  into Title 22 *Code of Regulations* §72527(a)(25), yet did not receive this promised

8  standard of care and suffered pecuniary harm by being deprived of the value of

9  payments made for skilled nursing services when these services were not actually

10  rendered consistent with the DEFENDANTS' representations.

11      49.    In addition, these class members made monetary payments to the

12  DEFENDANTS in return for skilled nursing services of the standard promised by the

13  DEFENDANTS in the uniform Admission Agreement and its attachments which are

14  incorporated into the Admission Agreement as alleged above. The class has suffered

15  pecuniary harm in that the DEFENDANTS did not provide such services of the

16  standard represented. In addition, Plaintiff and class members have suffered pecuniary

17  harm in that DEFENDANTS misrepresented that entering into an admission

18  agreement with DEFENDANTS conferred the statutory resident right under *Health*

19  *& Safety Code* §1599.1 of Plaintiffs and class members to reside in a facility that

20  employs "an adequate number of qualified personnel to carry out all of the functions

21  of the facility" when in fact the transaction of entering into an admission agreement

22  with DEFENDANTS did not confer such right.

23      50.    That is, simply by entering into an admission agreement with a resident,

24  the DEFENDANTS represent in writing as an exhibit or addendum attached to the

25  admission agreement of Plaintiff, and all others similarly situated, that the

26  DEFENDANTS will provide services of the standard and quality consistent with the

27  Resident Bill of Rights as set forth in Title 22 California *Code of Regulations*

28  §72527(a)(25) to wit, California *Health & Safety Code* §1599.1.

51.    That is, simply by entering into an admission agreement with a resident, the DEFENDANTS represent in writing as an exhibit or addendum attached to the admission agreement of Plaintiffs, and all others similarly situated, that the transaction conferred the statutory resident rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" as to "Direct Caregivers" when in fact the transaction of entering into an admission agreement with DEFENDANTS did not confer such right in direct violation of *Civil Code* §1770(a)(14).

52.    The representations of DEFENDANTS as incorporated into their admissions contracts are false and known by the DEFENDANTS to be false when made. Plaintiff and the class relied on these misrepresentations into becoming residents of the FACILITY. In reliance of these misrepresentations, Plaintiff and the class made payments to the DEFENDANTS in return for these services as promised. Plaintiff and the class suffered pecuniary harm in the form of lost payments and lost services when the DEFENDANTS actually failed to provide these promised skilled nursing services as represented.

53.    It is alleged that DEFENDANTS' representations set forth in their uniform resident admission agreements that they would ensure their residents' right to live in an adequately staffed facility were false because, instead of providing the represented standard of care, at all times herein relevant the DEFENDANTS intentionally concealed from Plaintiff and members of the class that the MANAGEMENT DEFENDANTS conceived and implemented a plan to wrongfully increase business profits at the expense of the rights and health of residents such as Plaintiff, and others similarly situated through the chronic understaffing of "Direct Caregivers" which prevented the FACILITY from ensuring their residents' statutory right to live in an adequately-staffed facility as to "Direct Caregivers" that would meet

M:\Gordon Lane Healthcare, LLC, In Re (22-086)\Pleading\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  the needs of the residents, rendering the representations of the DEFENDANTS as to

2  the nature and quality of their services as false.

3    54.    It is alleged that federal and California regulations require skilled nursing

4  facilities to provide adequate, qualified staffing to meet resident needs and to carry

5  out all functions at the facility, regardless of whether adequate staffing would require

6  more staff than any required bare numeric ratios. Specifically, as it relates to federal

7  law, 42 *Code of Federal Regulations* § 483.30 states that a skilled nursing facility

8  "must have sufficient nursing staff to provide nursing and related services to attain or

9  maintain the highest practicable physical, mental, and psychosocial well-being of

10 each resident, as determined by resident assessments and individual plans of care." 42

11 *Code of Federal Regulations* §483.30 further states that a skilled nursing facility

12 "must provide services by sufficient numbers of each of the following types of

13 personnel on a 24-hour basis to provide nursing care to all residents in accordance

14 with resident care plans: (i) Except when waived under paragraph (c) of this section,

15 licensed nurses; and (ii) Other nursing personnel." 42 *Code of Federal Regulations* §

16 483.30(a)(1).

17    55.    It is specifically alleged that the regulations enacted pursuant to the

18 California *Health and Safety Code*[4] also require that a skilled nursing facility maintain

19 staffing at levels sufficient to meet the needs of residents, even if that required staffing

20 level is more than the bare minimum numeric ratio of 3.2 NHPPD required by *Health*

21 *& Safety Code* §1276.5 through July of 2017 and thereafter, pursuant to *Health &*

22 *Safety Code* §1276.65- 3.5 NHPPD. "Nursing service personnel shall be employed

23 and on duty in at least the number and with the qualifications determined by the

24 Department to provide the necessary nursing services for patients admitted for care.

25

---

26 [4] These regulations set the standard of care with which skilled nursing FACILITY must comply. See Cal. *Health & Saf. Code* §1276(a) ("The building standards published in the State Building Standards Code by the Office of Statewide Health Planning and Development, and the regulations adopted by the state department shall, as applicable, prescribe standards of adequacy, safety, and sanitation of the physical plant, of staffing with duly qualified licensed personnel, and of services, based on the type of health facility and the needs of the persons served thereby.").

27

28

The staffing requirements required by this section are minimum standards only. Skilled nursing facilities shall employ and schedule additional staff as needed to ensure quality resident care based on the needs of individual residents and to ensure compliance with all relevant state and federal staffing requirements." Title 22 *California Code of Regulations* § 72329.1(a).

56.     It is alleged that minimum staffing of personnel in the FACILITY is dependent by law upon the acuity (need) level of the residents of the FACILITY. As alleged more fully below, the FACILITY'S resident acuity levels during the class period were so high such that the "minimum" staffing ratios exceeded the numeric minimum of *Health & Safety Code* §1276.5 and *Health & Safety Code* §1276.65 pursuant to the provisions of Title 22 *California Code of Regulations* §§72515(b), 72329.1 and 42 C.F.R. §483.30.

57.     Thus, it is specifically alleged that DEFENDANTS, as operators of skilled nursing facilities must, pursuant to statutes and regulations with which DEFENDANTS are required to comply, know that sufficient nursing staff is required to meet the needs of residents and to ensure the health and safety of residents. Conversely, DEFENDANTS, as operators of skilled nursing facilities must also know that a failure to maintain sufficient staffing to meet the needs of residents will endanger the health and safety of residents of the FACILITY. The DEFENDANTS, as operators of skilled nursing facilities, cannot claim ignorance of these regulatory requirements without endangering their very licensure. Skilled nursing facilities have the "responsibility to see to it that the license is not used in violation of law." (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295.); see also *California Code of Regulations*, §72501, subd. (a) (skilled nursing facilities "shall be responsible for compliance with the licensing requirements and for the organization, management, operation and control of the licensed facility.").

58.     It is alleged that at all times relevant hereto, in addition to mandating

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

minimum staffing, the California Legislature also has specifically recognized and declared that failing to maintain sufficient staffing may result in death or serious physical harm to residents. As specifically alleged hereinabove, operators of skilled nursing facilities such as the DEFENDANTS are required to comply with (and hence have knowledge of) these statutes and regulations. California *Health and Safety Code* §1276.65, which requires the development of regulations setting forth staffing ratios as explained above, also provides that "[a] violation of the regulations developed pursuant to this section may constitute a class "B," "A," or "AA" violation pursuant to the standards set forth in Section 1424." (*Health & Saf. Code*, §1276.65, subd. (g)(2).) That is, simply understaffing a facility may constitute a class "B," "A," or "AA" citation. In turn, Section 1424, subdivisions (c), (d), and (e), defines the classifications of citations in relevant part as follows:

> (c)    Class "AA" violations are violations that meet the criteria for a class "A" violation and that the state department determines to have been a *direct proximate cause of death of a patient or resident* of a long-term health care facility.

> (d)    Class "A" violations are violations which the state department determines present either (1) *imminent danger that death or serious harm* to the patients or residents of the long-term health care facility would result therefrom, or (2) *substantial probability that death or serious physical harm to patients or residents* of the long-term health care facility would result therefrom.

> (e) Except as provided in paragraph (4) of subdivision (a) of Section 1424.5, class "B" violations are violations that the state department determines have a *direct or immediate relationship to the health, safety, or security of long-term health care facility patients or residents*, other than class "AA" or "A" violations.

California *Health & Safety Code* §1424 (emphasis added).

59.    Thus, it is alleged that at all times relevant hereto, the DEFENDANTS were required to know pursuant to applicable statues and regulations (or risk forfeiture of licensure) that understaffing the FACILITY creates a high risk of harm to residents of that facility. That at all times relevant hereto the DEFENDANTS consciously disregarded that knowledge and continued to maintain insufficient staffing levels.

60.    The analysis of whether a skilled nursing facility provides adequate

GARCIA & ARTIGLIERE

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

24

staffing entails three basic steps: a) determining the collective acuity level of the residents at the facility; b) determining the staffing levels at the facility; and c) comparing the collective acuity and staffing levels at the facility in light of recognized minimum staffing requirements. It is alleged that a facility's acuity level is based upon the average resident acuity in the population for whom care is being provided. It is alleged that it is not necessary to determine whether all residents individually receive a certain number of hours of nursing care per day, but rather whether the facility – as a whole – is adequately staffed to account for the facility's collective acuity level. It is alleged that although a facility's acuity level can vary from day to day, the acuity rates can be determined by taking the average facility acuity over the course of several months. This process provides a reliable index of a facility's average patient nursing needs, a key for determining adequate staffing requirements.

61.    And in fact GORDON LANE HEALTHCARE LLC has itself testified under penalty of perjury confirming this reality and as follows:

Q  How does the facility determine whether there's enough staff on duty to -- to meet the needs of its residents?

A  All right. So we have a schedule of our nursing for our residents, and based on that schedule and our daily census and our acuity of our patients, we make a determination how much staff we need.

Q  Okay. So your facility doesn't just throw out a number and say based upon this census we're going to meet mandatory minimums or something like that, correct?

A  Correct.

Q  You looked at the -- you look at the acuity of the residents to determine sufficiency of staff, correct?

A  Correct.

Q  In other words, you don't look at individual residents and say that person needs 1.5 nursing hours per patient day, do you?

A  Correct.

FIRST AMENDED COMPLAINT FOR DAMAGES
M:\Gordon Lane Healthcare, LLC, In Re (22-086)\Pleading\Complaint.docx

Q  What you do is use your education, your training, your experience and the input of the department heads and the like, which you see on a daily basis, and you say the totality of the building has a census which we feel requires X number of staff, right?

A  Among other factors.

Q  Including acuity, correct?

A  Correct.

Q  What I'm saying is, is when you -- as the facility to determine the needs of all the residents in the facility, you got to determine what the needs of all the residents are in the facility to determine sufficiency of staff, right?

A  Correct.

Q  You don't look at individual residents one on one to determine the sufficiency of the staff in the facility, you look at all of the needs of all of the resident, correct?

A  That is correct.

62.    The staffing analysis described above is done at a facility-level. Thus, it does not require any individualized inquiry into how many hours of direct nursing care any specific resident received on any given day. Rather, the proper analysis is whether the *facility as a whole* employed an adequate number of qualified staff to competently care for the collective needs of its residents. It is specifically alleged that the United States Centers for Medicare & Medicaid Services ("CMS") has already developed a methodology for determining the level of staffing required to meet the needs of residents based on the collective acuity levels of the residents via the CMS Agency Patient-Related Characteristics Report (formerly the Case Mix Report), which is the average resident need score based on resident assessment data that CMS *has already collected and calculated*. A self-authenticating link to a portion of this staffing information is at:

**http://www.cms.gov/Medicare/Provider-Enrollment-and-**

FIRST AMENDED COMPLAINT FOR DAMAGES
M:\Gordon Lane Healthcare, LLC, In Re (22-086)\Pleading\Complaint.docx

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  **Certification/CertificationandComplianc/Downloads/staffingdatafile.zip.**

2      63.    It is specifically alleged that if a skilled nursing facility's staffing levels

3  are lower than the level of staffing of "Direct Caregivers" required to meet the needs

4  of residents as determined by their collective acuity, that facility has violated its

5  residents' statutory, affirmative and actionable right to reside in a skilled nursing

6  facility that employs "an adequate number of qualified personnel to carry out all of

7  the functions of the facility." California *Health & Safety Code* §1599.1(a). Upon

8  information and belief, it is alleged that the FACILITY were inadequately staffed in

9  violation of *Health & Safety Code* §1599.1(a).

10      64.    However, contrary to DEFENDANTS' representations contained within

11  the standard admission agreement, DEFENDANTS did not devote sufficient financial

12  resources to the proper operation of the FACILITY, did not devote sufficient financial

13  resources to protect the health and safety of residents and ensure resident rights were

14  not violated, and instead diverted those resources to create ill-begotten profits for

15  DEFENDANTS. Instead, DEFENDANTS chronically understaffed the FACILITY

16  with an inadequate number of "Direct Caregivers" to carry out the function of the

17  FACILITY as more fully alleged herein, and in so doing and as a result thereof, the

18  DEFENDANTS have violated the rights afforded to all residents of skilled nursing

19  facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations*

20  §72527(a)(25).

21      65.    In reality, in direct contradiction to the representation in their uniform

22  admission agreement that the FACILITY would "employ an adequate number of

23  qualified personnel to carry out all functions of the facility" and to meet the needs of

24  their residents, DEFENDANTS chronically understaffed the FACILITY as to "Direct

25  Caregivers" and chronically failed to meet the particularized standards as set forth in

26  the Resident Bill of Rights relating to the mandatory requirements of California

27  *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations*

28  §72527(a)(25), in the requirements of Title 22 C*Code of Regulations* §72329.1 during

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE

the residency of Plaintiff in the FACILITY, as well as during the residencies of members of the class.

66.     In fact, the reported hours and staffing ratios by the DEFENDANTS are a complete and intended fraud in two ways. First, this intended fraud to be perpetrated upon the public and the government by these DEFENDANTS is vibrantly illustrated by the staffing records of the FACILITY used by the FACILITY to report hours to the DPH, in which DEFENDANTS include non-direct caregivers in violation of 22 *Code of Regulations* §§ 72329.1(g) and §72038 in their computation of staffing ratios reported to the public and the government. That is, DEFENDANTS artificially and fraudulently inflate the reported nursing staff ratios by unlawfully and fraudulently including the hours of employees not providing direct nursing care, including but not limited to administrative, supervisory, and/or maintenance employees who do not provide direct patient care.

67.     Second, the fraud perpetrated on the public and the government can be seen from DEFENDANTS' own time-keeping records which do not take into account rest breaks required by *Labor Code* §226.7 and 8 *California Code of Regulations* §§ 11010-11150, ¶ 12 and §11160, ¶ 11. Thus, for example, for a nurse working an eight-hour shift, the DEFENDANTS report the full eight hours to DPH even though in reality that nurse was only on the floor providing direct patient care for seven hours and forty minutes (7.66 hours) due to taking the two 10-minute breaks required by the *Labor Code*. While the fraudulent reporting of eight hours as opposed to 7.66 hours may seem inconsequential with only one nurse involved, when it is extrapolated on a facility wide-basis, its effects are dramatic.

68.     For example, if on a given day the FACILITY had 40 nurses working eight-hour shifts with a total patient census of 100 for that day, the FACILITY as a systemic policy and practice reports a total of 320 hours worked for that day, divided by 100 residents for a total of 3.2 nursing hours per patient day ("NHPPD"), which is

GARCIA & ARTIGLIERE

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 · FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR DAMAGES
M:\Gordon Lane Healthcare, LLC, In Re (22-086)\Pleading\Complaint.docx

the bare minimum numeric staffing ratio required by Health & Safety Code §1276.5. However, in reality and contrary to the fraudulent reporting of DEFENDANTS to DPH, each of the 40 nurses worked only 7.66 hours due to taking two required 10-minute breaks for a total of 306.4 hours actually worked. 306.4 hours divided by 100 residents results in a total of 3.064 NHPPD, well *below* the minimum numeric ratio of 3.2 hours required by Health & Safety Code §1276.5. These reality of this understaffing and fraud perpetrated by the DEFENDANTS upon CMS will be proven by review of a few simple and available documents and as follows:

- The Facility CDPH "612 Form";
- The "Facility Assessment" prepared pursuant to 42 Code of Federal Regulations § 483.70(e);
- The Facility form as to actual hours;
- Staff Assignment Sheets;
- CMS 671 and 672 forms;
- Payroll Based Journal;
- The Facility RUGS (Resident Utilization Group) and HIPPS scores;
- Facility Staffing Ladders;
- Medicare and Medicaid Cost Reports; and
- The time cards of each individual the DEFENDANTS claim were providing "direct nursing services" (as that term is defined in *Health & Safety Code* §1276.5) during the relevant time period.[5]

Each of these documents can be produced by a computer key stroke for analysis.

---

[5] The concern of course is that the defendant will now destroy the records to hide the truth of their deception and fraud from being exposed. Such an effort in spoliation would, at a minimum, clearly violate the provisions of 22 *Code of Regulations* §72329.1(h) which mandates as follows:

h) The facility shall retain the staff assignment record that it employs to comply with subsection (i) for each shift, the licensing and/or certification status of the staff, and the patient census for each shift. Records documenting staffing, including staff assignment records and payroll records, shall be retained for a minimum of three years. Unless the request is made by Department staff who are present at the facility, in which case it must be provided immediately, documentation of staffing shall be provided to the Department within ten days of the Department's request for the documentation. If the facility is unable to provide the documentation requested by the Department, it shall cease admitting new patients until it demonstrates to the Department that it has the staff necessary to provide the care needed by the patients by submitting the requested documentation. The facility shall also comply with the provisions of Section 1429.1 of the Health and Safety Code.

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

69.     It is alleged that at all relevant times hereto, the DEFENDANTS as a systemic policy and practice always reported to DPH total nursing hours and NHPPD ratios which did not take into account the rest breaks required by Labor Code §226.7 and 8 California Code of Regulations §§ 11010–11150, ¶ 12 and §11160, ¶ 11. It is further alleged that at all times relevant hereto DEFENDANTS failed to take into account required rest breaks in determining the amount of staff the FACILITY required to ensure the rights afforded to PLAINTIFF, members of the class, and all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations*  §72527(a)(25), most specifically, the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" pursuant to Health & Safety Code §1599.1(a) (as expressly incorporated by Title 22 *Code of Regulations*  §72527(a)(25). That in failing to take into account the required rest breaks, DEFENDANTS failed to adequately staff the FACILITY to meet the needs of the residents, thereby violating PLAINTIFF'S and each class member's rights set forth in *Health & Safety Code* §1599.1(a) and 22 CODE OF REGULATIONS  §72527(a)(25).

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (Civ. Code, 1750, ET SEQ.) [BY PLAINTIFF AGAINST ALL DEFENDANTS]**

70.     Plaintiff refers to, and incorporates herein by this reference, all paragraphs hereinabove, as though fully set forth herein.

71.     The DEFENDANTS make representations to prospective residents and their families, and others similarly situated via their uniform admission agreements as set forth more fully hereinabove. Pursuant to this uniform representation that the services provided by the Defendants would meet the particularized standards as set forth in the Resident Bill of Rights attached to the uniform Admission Agreement, the DEFENDANTS were to provide all residents of the FACILITY services consistent with the mandatory requirements of California *Health & Safety Code* §1599.1(a) as

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

set forth in Title 22 *Code of Regulations* §72527(a)(25). Specifically, the services represented by the DEFENDANTS that they would provide to each resident, via the contractual Admission Agreement arrangement with each resident, was explicitly stated by the DEFENDANTS to include the obligation, and representation as to the standard of care to be provided, that the FACILITY would ensure the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" as to "Direct Caregivers." These uniform representations of the DEFENDANTS in the Admission Agreement as to the nature of their services in this regard as to "Direct Caregivers" were false and actually known to be false when made by the DEFENDANTS.

72.    These representations by DEFENDANTS were intended to induce and lure elderly and infirm residents (and their representatives) into agreeing to be admitted to the FACILITY based on false and misleading representations without disclosing that DEFENDANTS cannot and do not provide the represented level and quality of care to residents. Before, during, and after the admissions processes of Plaintiff and each class member, the DEFENDANTS actively and intentionally concealed from Plaintiff and class members, and/or each's legal representative, that DEFENDANTS have a long history of being serial violators of skilled nursing industry laws.

73.    It is alleged that the concealments by DEFENDANTS alleged in the immediately preceding paragraph were intended to deceive Plaintiff and members of the class, and/or each's legal representative, into believing that the FACILITY was properly operated to induce Plaintiff and class members into becoming residents of the FACILITY. That Plaintiff and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, and/or each's legal representative, were unsophisticated and

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1 unknowledgeable in the operation of skilled nursing facilities in the State of California

2 and had no knowledge of the facts concealed by DEFENDANTS and could not have

3 discovered those concealed facts due to, among other things, their extremely

4 vulnerable status. Had the concealed facts been disclosed to Plaintiff and members of

5 the class, they would not have become residents of the FACILITY and would not have

6 paid, or had monies paid on their behalf, for the substandard skilled nursing care at

7 the FACILITY.

8      74.    The representations DEFENDANTS made in their uniform admission

9 agreement as to "Direct Caregivers" were false and known to be false when made as

10 set forth more fully hereinabove.

11      75.    Plaintiff and the class relied on these misrepresentations into becoming

12 residents of the FACILITY. In reliance of these misrepresentations, the Plaintiff and

13 the class made payments to the DEFENDANTS in return for these services as

14 promised. Plaintiff and the class suffered pecuniary harm in the form of lost payments

15 and lost services when the DEFENDANTS actually failed to provide these promised

16 skilled nursing services as represented.

17      76.    As a result, Defendants have violated and continue to violate the

18 Consumer Legal Remedies Act, *Civil Code* §1770 et seq. ("CLRA") in at least the

19 following respects:

20     a. In violation of section 1770(a)(5), the defendants' acts and practices
       constitute misrepresentations that the skilled nursing care that they
21       purport to provide had characteristics, standards, performance and level
       of quality which it did not have; and
22
    b. In violation of section 1770(a)(7), the defendants have misrepresented
23       that the skilled nursing care that they purport to provide is of a particular
       standard, quality and/or grade, when it is not.
24
    c. In violation of section 1770(a)(9), the defendants have misrepresented
25       the nature of their skilled nursing services with the intent not to sell
       them as represented.
26
    d. In violation of section 1770(a)(14), the defendants have misrepresented
27       that the transaction of entering into admission agreement with
       Defendants conferred or involved rights, remedies, or obligations
28       which the transaction did not have or involve, or which was prohibited

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

32

by law.

77.    On May 13, 2022, pursuant to Section *Civil Code* § 1782, Plaintiff notified GORDON LANE and SUN MAR, and on August 15, 2022 IRVING BAUMAN; FRANK JOHNSON; ELI MARMUR and WILLIAM PRESNELL,  in writing of the asserted violations of Section 1770 and demanded that DEFENDANTS rectify the conduct described above. Plaintiff is informed and believes that DEFENDANTS took no corrective action thereafter.

78.    It is alleged that Plaintiffs and members of the Class suffered injury in fact and concrete harm in that they relied on the representations of the DEFENDANTS that they would be provided with minimum standards of care consistent with the requirements of *Health & Safety Code* §1599.1(a) as incorporated into Title 22 *Code of Regulations*  §72527(a)(25), yet did not receive this promised standard of care and suffered pecuniary harm by being deprived of the value of payments made for skilled nursing services when these services were not actually rendered consistent with the DEFENDANTS' representations.

79.    In addition, these class members made monetary payments to the DEFENDANTS in return for skilled nursing services of the standard promised by the DEFENDANTS in the uniform Admission Agreement and its attachments which are incorporated into the Admission Agreement as alleged above. The class has suffered pecuniary harm in that the DEFENDANTS did not provide such services of the standard represented. In addition, Plaintiff and class members have suffered pecuniary harm in that DEFENDANTS misrepresented that entering into an admission agreement with DEFENDANTS conferred the statutory resident right under *Health & Safety Code* §1599.1 of Plaintiffs and class members to reside in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" when in fact the transaction of entering into an admission agreement with DEFENDANTS did not confer such right.

80.    Plaintiff and members of the class are "senior citizens" as defined by

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

Section 1761(f) and meet the requirements of Section 1780(b) to each be entitled to an award of $5,000 in addition to the other remedies available under the CLRA.

81.    The defendants' conduct as alleged in this cause of action was, and is, malicious, oppressive and/or fraudulent.

## SECOND CAUSE OF ACTION
## VIOLATION OF RESIDENT RIGHTS (Health & Saf. Code §1430(b)) BY PLAINTIFF AGAINST ALL DEFENDANTS

82.    GAIL PARRISH refers to, and incorporates herein by this reference, all paragraphs hereinabove, as though fully set forth herein.

83.    *Health & Safety Code* §1430(b) creates a private right of action for any resident or patient of a skilled nursing facility against the licensee of the facility that violates any rights of the resident or patient as set forth in the Patients' Bill of Rights.

84.    *Health & Safety Code* §1430(b) also provides that "a current or former resident or patient of a skilled nursing facility as defined in subdivision (c) of section 1250 may bring a civil action against the licensee of a facility who violates any applicable regulatory  rights of the resident or patient here to include the right to sufficient staff to meet the residents needs as required by 22 *Code of Regulations* §§72329 and 72329.1.

85.    As more specifically set forth in paragraphs 13 through 32 hereinabove, the liability of all of the DEFENDANTS under *Health & Safety Code* §1430(b) arises from the DEFENDANTS joint enterprise in that there was a such a unity of interest and ownership between the DEFENDANTS such that the individual distinctions between them had ceased and that the facts as alleged herein are such that an adherence to the fiction of the separate existence of the DEFENDANTS would, under the particular circumstances alleged herein, sanction a fraud and/or promote injustice. The MANAGEMENT DEFENDANTS controlled the FACILITY to such a degree that it was a "mere instrumentality" of the MANAGEMENT DEFENDANTS used for an improper purpose.

86.    At all relevant times, the DEFENDANTS, and each of their tortious acts

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

GARCIA & ARTIGLIERE

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

and omissions, as alleged herein, were done in concert with one another in furtherance of their common design and agreement to accomplish a particular result, namely maximizing profits from the operation of the FACILITY by underfunding and understaffing the FACILITY despite the mandates of law in violation of PLAINTIFF's and the class' resident's rights.

87.    Upon information and belief, it is alleged that the misconduct of the DEFENDANTS, which led to the violation of the rights of Plaintiff and the class as alleged herein, was the direct result and product of the financial and control policies and practices forced upon the FACILITY by the financial limitations imposed upon the FACILITY by the DEFENDANTS, by and through the officers, directors and/or managing agents enumerated in hereinabove and others presently unknown to PLAINTIFF and according to proof at time of trial.

88.    The DEFENDANTS systematically and systemically violated 22 *Code of Regulations* §§72329 and 72329.1 by failing to have "Direct Caregivers" Nursing service personnel employed and on duty in at least the number to provide the necessary nursing services for patients admitted for care. In doing so the DEFENDANTS have run afoul of the provisions of *Health & Safety Code* §1430(b).

89.    As a result of the systematic and systemic violations of 22 *Code of Regulations* §§72329 and 72329.1 by failing to have Nursing service personnel employed and on duty in at least the number to provide the necessary nursing services for patients admitted for care, GAIL PARRISH, as well as others similarly situated, failed to receive the care to which she was required to receive pursuant to California law and would not have entered the facilities but for the above alleged reasonable reliance upon the representations of the Admission Agreements as to the Patient's Bill of Rights and suffered personal and real harm as the result of this misrepresentation and subsequent violations.

90.    Among other remedies, *Health & Safety Code* §1430(b) authorizes the recovery of statutory damages up to $500.00 per cause of action, attorneys' fees and

costs. *Health & Safety Code* §1430(b). These remedies are cumulative to any other remedies provided by law. *Health & Safety Code* §1430(c). Given that the violation involves elderly residents, the statutory damage award is subject to trebling under *Civil Code* §3345.

**WHEREFORE**, plaintiffs prays for judgment as follows:

1.    For a Court order certifying that the action may be maintained as a class and/or representative action;

2.    For an Order permanently enjoining defendants, and each of them, from violating residents' rights pursuant to *Health & Safety Code* §1430(b). For an injunction, requiring that:

a. That the FACILITY and all other licensed California skilled nursing facility with which the MANAGEMENT DEFENDANTS, or their successors, provide services under a Professional Services Agreement or a reasonable facsimile thereof, maintain actual nursing hours (as that term is defined in *Health & Safety Code* §1276.5(b)) of 3.94 nursing hours per patient day ;

b. the Defendants report to DPH all incidents of actual or suspected abuse or neglect (as defined by law) of which it has learned in the last three (3) years at the FACILITY, or any other licensed California skilled nursing facility with which the MANAGEMENT DEFENDANTS, or their successors, provide services under a Professional Services Agreement or a reasonable facsimile thereof, which were not reported to DPH, Adult Protective Services and/or Law Enforcement;

c. the Defendants provide proof to the Court of compliance with the reporting requirements over the last three (3) years for any and all such incidents in the form of a copy of the report submitted to DPH;

d. the FACILITY, and any other licensed California skilled nursing facility with which the MANAGEMENT DEFENDANTS, or their successors, provide services under a Professional Services Agreement or a reasonable facsimile thereof,  conduct quarterly, confidential surveys of *all* residents and residents' representatives inquiring whether any conduct which may be deemed suspected abuse and/or neglect, and/or a violation of residents' rights has occurred (with a clear, court approved definition of these terms included, with examples), and requiring that the responses to these surveys be turned over to the Long Term Care Ombudsman assigned to the pertinent facility for review. Further, after providing confidential surveys in unredacted form to the Ombudsman, the FACILITY shall than redact only the name of the individual residents who completed the survey (or on whose behalf the survey was completed) from the surveys, and maintain copies of those surveys for a period of five (5) years, and that the surveys be made available (with names redacted) to any prospective resident, or their

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

36

representative, any current resident, or their representative, or any past resident, or their representative, within 24 hours of a request;

e. the FACILITY, and all other licensed California skilled nursing facility with which the MANAGEMENT DEFENDANTS, or their successors, provide services under a Professional Services Agreement or a reasonable facsimile thereof, notify all current residents of this injunction by providing a copy of the injunction to them and their power of attorney/responsible party and/or personal representative, if any;

f. the FACILITY, and all other licensed California skilled nursing facility with which the MANAGEMENT DEFENDANTS, or their successors, provide services under a Professional Services Agreement or a reasonable facsimile thereof, notify all future residents (at the time the admission agreement is signed) by providing a copy of this injunction during the period for which this injunction is in force to any new resident and to his or her power of attorney/responsible party and/or personal representative, if any;

g. That this injunction shall remain in full force and effect until the earlier of either of the following; (1) ten years from the date of entry of judgment, or (2) five years if no other violations of the injunction have been found by this or any other Court of competent jurisdiction regarding the FACILITY. The burden of proof to obtain the shorter period shall be on the Defendants;

h. This injunction shall be enforced by the Court upon motion of any interested party (i.e., plaintiffs or any other current or former resident (and/or their power of attorney/responsible party and/or personal representative, if any, or any employee of the FACILITY) and/or the filing of a new action of any such interested party. Each separately identifiable violation of this injunction shall be punishable by a $5,000 fine payable to the person filing the motion or bringing the action and a payment of all reasonable attorney's fees and costs incurred by the person bringing the motion or action against the Facility for violation of the injunction.    A separate, identifiable violation includes for example, each giving of a dose of medication that is not prescribed is a separate violation that each resident may demand, separately;

i. the FACILITY and all other licensed California skilled nursing facility with which the MANAGEMENT DEFENDANTS, or their successors, provide services under a Professional Services Agreement or a reasonable facsimile thereof, shall draft a policy and procedure to the satisfaction of the Court covering the handling of suspected abuse and neglect reporting as well as the obligation to asses and document patients' needs *immediately* upon arrival and when an emergency occurs; and on staffing; and

j. the FACILITY and all other licensed California skilled nursing facility with which the MANAGEMENT DEFENDANTS, or their successors, provide services under a Professional Services Agreement or a reasonable facsimile thereof, shall prepare a training program to the satisfaction of the Court to train its staff on the new policies and procedures; and shall submit verification, under oath, of compliance with that training program by all employees of each of the FACILITY

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

within 12 months, and then repeated annually during the term of this judgment;

3.    For attorneys' fees and costs as allowed by law according to proof at the time of trial, including, but not limited to attorneys' fees pursuant to *Code of Civil Procedure* §1021.5 and *Health & Safety Code* §1430(b);

4.    For statutory damages and penalties pursuant to *Health & Safety Code* §1430(b);

5.    For actual damages in a total amount to exceed one thousand dollars pursuant to *Civil Code* §1780(a)(1);

6.    For civil penalties for "senior citizens" and "disabled persons" in the amount of $5,000 for each injured "senior citizen" and "disabled person" pursuant to *Civil Code* §1780(b);

7.    For punitive damages as to the First Cause of Action alone;

8.    For disgorgement of monies illegally gotten as to the First Cause of Action alone;

9.    For treble damages pursuant to *Civil Code* Section 3345; and

10.    For such other and further relief as the Court may deem just and proper.

DATED:  November 15, 2022        **GARCIA & ARTIGLIERE**

By:  /s/ David M. Medby
_____
Stephen M. Garcia
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

DATED:  November 15, 2022        **GARCIA & ARTIGLIERE**

By:  /s/ David M. Medby
_____
Stephen M. Garcia
Attorneys for Plaintiff

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR DAMAGES

M:\Gordon Lane Healthcare, LLC, In Re (22-086)\Pleading\Complaint.docx

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is One World Trade Center, Suite 1950, Long Beach, CA 90831.

On November 15, 2022, I served true copies of the following document(s) described as **FIRST AMENDED COMPLAINT FOR DAMAGES** on the interested parties in this action as follows:

| | |
|---|---|
| David B. Litt, Esq.<br>Petrullo<br>222 N. Pacific Coast Highway, Ste. 1690<br>El Segundo. CA 90245 | Attorneys for Defendants<br><br>Telephone: (213) 627-0400<br>Facsimile: (213) 627-0402 |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 15, 2022, at Long Beach, California.

/s/ Ashley Beers
Ashley Beers

GARCIA & ARTIGLIERE
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR DAMAGES
M:\Gordon Lane Healthcare, LLC, In Re (22-086)\Pleading\Complaint.docx