Kathryn A. Stebner (SBN 121088)
Brian S. Umpierre (SBN 236399)
**STEBNER GERTLER & GUADAGNI**
**A Professional Law Corporation**
870 Market Street, Suite 1285
San Francisco, CA 94102
Tel: (415) 362-9800
Fax: (415) 362-9801
Email: kathryn@sggklaw.com
Email: brian@sggklaw.com

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| GAIL PARRISH by and through Successor in Interest, Monica Parrish; DAVID RODRIGUEZ, by and through Successor in Interest Beverly Rodriguez; JOAN ASHABRANER, by and through her Successor in Interest Susan Ashabraner;<br><br>Plaintiffs,<br><br>vs.<br><br>GORDON LANE HEALTHCARE, LLC; SUN MAR MANAGEMENT SERVICES; IRVING BAUMAN; FRANK JOHNSON; ELI MARMUR; WILLIAM PRESNELL and DOES 1-150, inclusive,<br><br>Defendants. | CASE NO. 8:22-CV-01790-WLH-KES<br>CASE NO. 8:23-CV-00195-WLH-KES<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CONSOLIDATED COMPLAINT FOR DAMAGES**<br><br>1) Violations of the Consumer Legal Remedies Act (Civ. Code § 1750, et seq.)<br>2) Violations of Resident Rights (Health & Saf. Code, § 1430, subd. (b))<br><br><br>**DEMAND FOR JURY TRIAL** |
| ERMA PARKER, by and through her Attorney in Fact, BRUCE PARKER,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTRY OAK PARTNERS, LLC; SUN MAR MANAGEMENT SERVICES; and DOES 1-150, inclusive,<br><br>Defendants. | |

1    Plaintiffs GAIL PARRISH, DAVID RODRIGUEZ, JOAN ASHABRANER,
2    and ERMA PARKER were at all times relevant hereto residents of the State of
3    California.   GAIL PARRISH brings this action by and through his Successor in
4    Interest Monica Parrish individually and on his own behalf; DAVID RODRIGUEZ
5    brings this action by and through his Successor in Interest Beverly Rodriguez; JOAN
6    ASHABRANER brings this action by and through her Successor in Interest Susan
7    Ashabraner; and ERMA PARKER brings this action by and through her Attorney in
8    Fact Bruce Parker. PLAINTIFFS RODRIGUEZ, ASHABRANER, and PARKER
9    assert their claims on behalf of themselves and a class of similarly situated California
10   consumers, based on information and belief and the investigation of counsel, except
11   for information based on personal knowledge, hereby alleges as follows:

## THE PARTIES

1.    Individual Plaintiffs.

a)    Plaintiff GAIL PARRISH was a resident of§ the skilled nursing
facility doing business as Gordon Lane Care Center, who entered into a standard
admission agreement with Defendants GORDON LANE HEALTHCARE LLC and
SUN MAR MANAGEMENT SERVICES in 2021. Plaintiff Parrish was at all times
relevant hereto a "person," and a "consumer" as defined by *Civil Code* §1761 in that
Plaintiff was an individual who sought or acquired, by purchase or lease, services for
personal purposes. Plaintiff Parrish, by and through his Successor in Interest Monica
Parrish, asserts him claims individually and on his own behalf.

b)    Plaintiff DAVID RODRIGUEZ was a resident of the skilled
nursing facility doing business as Gordon Lane Care Center, who entered into a
standard   admission   agreement   with   the   Defendants   GORDON   LANE
HEALTHCARE LLC and SUN MAR MANAGEMENT SERVICES in 2021.
Plaintiff Rodriguez was at all times relevant hereto a "person," and a "consumer" as
defined by Civil Code § 1761 in that Plaintiff was an individual who sought or
acquired, by purchase or lease, services for personal purposes.

2

c)    Plaintiff JOAN ASHABRANER was a resident of the skilled nursing facility doing business as Gordon Lane Care Center who entered into a standard admission agreement with the Defendants GORDON LANE HEALTHCARE LLC and SUN MAR MANAGEMENT SERVICES in 2022. Plaintiff Ashabraner was at all times relevant hereto a "person," and a "consumer" as defined by Civil Code § 1761 in that Plaintiff was an individual who sought or acquired, by purchase or lease, services for personal purposes.

d)    Plaintiff ERMA PARKER was a resident of the skilled nursing facility doing business as Country Oaks Care Center, who entered into a standard admission agreement with Defendant COUNTRY OAKS PARTNERS, LLC and SUN MAR MANAGEMENT SERVICES in 2019. Plaintiff Parker was at all times relevant hereto a "person," and a "consumer" as defined by Civil Code § 1761 in that Plaintiff was an individual who sought or acquired, by purchase or lease, services for personal purposes.

e)    Plaintiff DAVID RODRIGUEZ, by and through his Successor in Interest Beverly Rodriguez, Plaintiff JOAN ASHABRANER, by and through her Successor in Interest Susan Ashabraner, and Plaintiff ERMA PARKER, by and through her Attorney in Fact Bruce Parker, assert their claims on behalf of themselves and a class of similarly situated California consumers as alleged herein.

2.    <u>Plaintiff Class</u>.

The class sought to be represented is defined as follows:

a.    <u>Plaintiff Subclass One: "Gordon Lane Private Pay Residents-CLRA Claim Only."</u>

The first subclass sought to be represented in this action as it relates to the CLRA Claim only, is defined as follows: All persons who resided in (or continue to reside in) the California skilled nursing facility doing business as GORDON LANE CARE CENTER from August 17, 2019 through the final disposition of this action, pursuant to a Standard Admission Agreement, and whose claims are not subject to

arbitration because neither the resident nor the resident's responsible party (as defined in the Standard Admission Agreement) agreed to or accepted the arbitration contract in writing,   wherein the Defendant was reimbursed for services provided to a "class member" by private pay and/or privately acquired insurance and/or any HMO or PPO.

     b.    <u>Plaintiff Subclass Two: "Country Oaks Private Pay Residents – CLRA Claim Only"</u>

The second subclass sought to be represented in this action as it relates to the CLRA Claim only, is defined as follows: All persons who resident in (or continue to reside in) the California skilled nursing facility doing business as COUNTRY OAKS CARE CENTER, from December 22, 2019 through the final disposition of this action, pursuant to a Standard Admission Agreement, and whose claims are not subject to arbitration because neither the resident nor the resident's responsible party (as defined in the Standard Admission Agreement) agreed to or accepted the arbitration contract in writing, wherein Defendant was reimbursed for services provided to a "class member" by private pay and/or privately acquired insurance and/or any HMO or PPO.

     c.    <u>Plaintiff Subclass Three: "Gordon Lane Health & Safety Code Section 1430(b) Violations – 1430(b) Claim Only"</u>

The third subclass sought to be represented in this action as it relates to the Health & Safety Code Section 1430(b) Claim only, is defined as follows: All persons who resided in (or continue to reside in) the California skilled nursing facility doing business as GORDON LANE CARE CENTER from August 17, 2019 through the date of the final disposition of this action, pursuant to a Standard Admission Agreement, regardless of the manner in which Defendants were reimbursed for services, and whose claims are not subject to arbitration because neither the resident nor the resident's responsible party (as defined in the Standard Admission Agreement) agreed to or accepted the arbitration contract in writing.

     f.    <u>Plaintiff Subclass Four: "Country Oaks Health & Safety Code Section 1430(b) Violations – 1430(b) Claim Only"</u>

FIRST AMENDED CONSOLIDATED COMPLAINT FOR DAMAGES

The fourth subclass sought to be represented in this action as it relates to the Health & Safety Code Section 1430(b) Claim only, is defined as follows: All persons who resided in (or continue to reside in) the California skilled nursing facility doing business as COUNTRY OAKS CARE CENTER, from December 22, 2019 through the date of the final disposition of this action, pursuant to a Standard Admission Agreement, regardless of the manner in which Defendants were reimbursed for services, and whose claims are not subject to arbitration because neither the resident nor the resident's responsible party (as defined in the Standard Admission Agreement) agreed to or accepted the arbitration contract in writing.

d.      Exclusions: Each subclass contains the following exclusions: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror selected to hear this case.

3.      <u>Defendants</u>. Defendants GORDON LANE HEALTHCARE LLC and DOES 1 through 50 were at all relevant times in the business of providing long-term custodial care as the licensee of a 24-hour skilled nursing facility under the fictitious name GORDON LANE HEALTHCARE LLC and/or GORDON LANE CARE CENTER and were subject to the requirements of federal and state law regarding the operation of skilled nursing facilities operating in the State of California. GORDON LANE HEALTHCARE LLC, hereinafter "GORDON LANE," reports to the Secretary of State of California that its principal place of business is located at 3580 Wilshire Blvd., Los Angeles, California 90010.

4.      Defendants COUNTRY OAKS PARTNERS, LLC and DOES 51 through 100 were at all relevant times in the business of providing long-term custodial care as a 81-bed, 24-hour skilled nursing facility under the fictitious name COUNRY OAKS CARE CENTER which is located at 215 W. Pearl Street, Pomona, California 91768, and were subject to the requirements of federal and state law regarding the operation of skilled nursing facilities operating in the State of California. COUNTRY

OAKS PARTNERS, LLC, hereinafter "COUNTRY OAKS," lists its principal executive office as 3050 Saturn Street #201, Brea, California 92821.

5. Irving Bauman, Frank Johnson, Eli Marmur, and DOES 101 through 150 each owned at least a 5% or more equity interest in GORDON LANE and COUNTRY OAKS as reported to the California Office of Statewide Health Planning and Development under penalty of perjury.

6. Messrs. Bauman, Johnson, and Marmur are the only listed managers of GORDON LANE as reported to the Secretary of State of California, with all the legal rights and obligations attendant thereto. Messrs. Bauman and Johnson and William Presnell were listed as managers of COUNTRY OAKS as reported to the Secretary of State of California, with all the legal rights and obligations attendant thereto.

7. IRVING BAUMAN, FRANK JOHNSON, WILLIAM PRESNELL, and DOES 101 through 150 are the only listed managers of SUN MAR MANAGEMENT SERVICES as reported to the Secretary of State of California, with all the legal rights and obligations attendant thereto. Frank Johnson and Eli Marmur each own a 5% or more equity interest in SUN MAR MANAGEMENT SERVICES as reported to the California Office of Statewide Health Planning and Development under penalty of perjury.

8. Defendant SUN MAR MANAGEMENT SERVICES, hereinafter "SUN MAR," which lists its principal place executive office as 3050 Saturn Street #201, Brea, California 92821, and DOES 101 through 150, was at all times the owner, operator, parent company, and/or management company of the GORDON LANE and COUNTRY OAKS skilled nursing facilities, and thus provided long-term professional and custodial care as a 24-hour skilled nursing facility.

9. Defendants IRVING BAUMAN, FRANK JOHNSON, ELI MARMUR, WILLIAM PRESNELL, and SUN MAR (hereinafter "MANAGEMENT DEFENDANTS") were at all relevant times the owners, operators, parent company, and/or management company and actively participated and controlled the business of

1  GORDON LANE and COUNTRY OAKS and thus provided long-term professional
2  and custodial care as a 24-hour skilled nursing facility.

3      10.    PLAINTIFFS GAIL PARRISH, DAVID RODRIGUEZ, JOAN
4  ASHABRANER, and ERMA PARKER, through their respective Successors in
5  Interest, are informed and believe and therefore allege that at all times relevant to this
6  Complaint, DOES 1 through 150 were licensed and unlicensed individuals and/or
7  entities, and employees of the DEFENDANTS rendering care and services to each of
8  them, and whose conduct caused or contributed injuries and damages alleged herein.
9  It is alleged that at all times relevant hereto, the DEFENDANTS were aware of the
10  unfitness of DOES 1-150 to perform their necessary job duties and yet employed these
11  persons and/or entities in disregard of the health and safety of GAIL PARRISH,
12  DAVID RODRIGUEZ, JOAN ASHABRANER, and ERMA PARKER.

13      11.    PLAINTIFFS GAIL PARRISH, DAVID RODRIGUEZ, JOAN
14  ASHABRANER, and ERMA PARKER are ignorant of the true names and capacities
15  of those Defendants sued herein as DOES 1 through 150, and for that reason have
16  sued such Defendants by fictitious names. PLAINTIFFS will seek leave of the Court
17  to amend this Complaint to identify said Defendants when their identities are
18  ascertained.

19          **CLASS ACTION ALLEGATIONS**

20      12.    Ascertainable Class.    The proposed class is ascertainable. The
21  litigation of the questions of fact and law involved in this action will resolve the rights
22  of all members of the class and hence will have binding effect on all class members.
23  These class members can be and have been readily identified from residency
24  computer files of the defendants and other means readily available to the defendants,
25  through minimally intrusive discovery. The class is numerous and consists of more
26  than four hundred (400) members. Joinder of all class members is impracticable due
27  to both a reluctance of class members to sue their current caregivers and the relatively
28  small monetary recovery for each class member in comparison to the costs associated

7

with separate litigation. Joinder also is not practicable because of the makeup of the proposed class – many putative class members are disabled, some are elderly, more need a significant level of care and assistance, and others are deceased and represented by family members with no connection to California.

13.    <u>Community of Interest</u>.    The proposed class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. Plaintiffs Rodriguez, Ashabraner, and Parker have claims typical of the class members. Without limitation, as a result of defendants' conduct alleged herein, Plaintiffs Rodgriguez, Ashabraner, Parker, and the class were deprived of the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility."  Plaintiffs Rodriguez, Ashabraner, and Parker can fairly and adequately represent and protect the interests of the class in that there are no conflicts between Plaintiffs' interest and the interests of other class members, this action is not collusive, the named Plaintiffs and Plaintiffs' counsel have the necessary resources to litigate this action, and counsel has the experience and ability required to prosecute this case as a class action.

14.    <u>Superiority of Class Adjudication</u>.      The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue their current nursing home provider, their inability to afford a separate action, and/or their dislocation from California. Finally, equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject

to an order spreading the costs of the litigation among the class members in
relationship to the benefits received.

## ALTER EGO ALLEGATIONS

15.    The DEFENDANTS set forth hereinabove fail to recognize the
uniqueness and independence of each of the DEFENDANTS. That at all times
relevant hereto there was a such a unity of interest and ownership between the
DEFENDANTS such that the individual distinctions between them had ceased and
that the facts as alleged herein are such that an adherence to the fiction of the separate
existence of the DEFENDANTS would, under the particular circumstances alleged
herein, sanction a fraud and/or promote injustice.

16.    At all relevant times, the DEFENDANTS, and each of their tortious acts
and omissions, as alleged herein, were done in concert with one another in furtherance
of their common design and agreement to accomplish a particular result, namely
maximizing profits from the operation of the FACILITY by underfunding and
understaffing the FACILITY. Moreover, the DEFENDANTS aided and abetted each
other in accomplishing the acts and omissions alleged herein. (See Restatement
(Second) of Torts §876 (1979)).

17.    Upon information and belief, it is alleged that the misconduct of the
DEFENDANTS, which led to the violation of the rights of Plaintiffs and the class as
alleged herein, was the direct result and product of the financial and control policies
and practices forced upon the GORDON LANE and COUNTRY OAKS by the
financial limitations imposed upon them by SUN MAR, by and through the officers,
directors and/or managing agents enumerated in herein below and others presently
unknown to PLAINTIFFS and according to proof at time of trial.

18.    The MANAGEMENT DEFENDANTS controlled GORDON LANE
and COUNTRY OAKS to such a degree that each was a "mere instrumentality" of
the MANAGEMENT DEFENDANTS used for an improper purpose.

19.    As alleged hereinabove, Irving Bauman, Frank Johnson, and Eli Marmur

each owned at least a 5% or more equity interest in GORDON LANE as reported to the California Office of Statewide Health Planning and Development under penalty of perjury and are also the only listed managers of GORDON LANE as reported to the Secretary of State of California, with all the legal rights and obligations attendant thereto.

20.    As alleged hereinabove, Irving Bauman, Frank Johnson, and Eli Marmur each owned at least a 5% or more equity interest in COUNTRY OAKS as reported to the California Office of Statewide Health Planning and Development under penalty of perjury. During Plaintiff Parker's residency at COUNTRY OAKS, Irving Bauman, Frank Johnson, and William Presnell were listed as managers of COUNTRY OAKS as reported to the Secretary of State of California, with all the legal rights and obligations attendant thereto.

21.    As alleged hereinabove, Irving Bauman, Frank Johnson, William Presnell and DOES 101 through 150 are the only listed managers of SUN MAR as reported to the Secretary of State of California, with all the legal rights and obligations attendant thereto. As alleged hereinabove, Frank Johnson, and Eli Marmur each owns a 5% or more equity interest in SUN MAR as reported to the California Office of Statewide Health Planning and Development under penalty of perjury.

22.    As alleged hereinabove, SUN MAR effectively operates and controls the operations of GORDON LANE and COUNTRY OAKS as the management company. In addition, SUN MAR MANAGEMENT SERVICES is one of the owners of GORDON LANE and COUNTRY OAKS as reported to the Centers for Medicare & Medicaid Services.

23.    The MANAGEMENT DEFENDANTS direct the expenditures of GORDON LANE and COUNTRY OAKS to affiliated companies so that they can unlawfully profit from the operations of GORDON LANE and COUNTRY OAKS at the expense of the legally mandated care the residents of those facilities, including GAIL PARRISH, DAVID RODRIGUEZ, JOAN ASHABRANER, and ERMA

10

PARKER, required and deserved. Further, the MANAGEMENT DEFENDANTS intentionally hide the multi-tier profiteer effort through manipulation of multiple companies, shell operators and refusal to report all related party transactions to the State of California in violation of applicable rules, laws and regulations.

24.    Accordingly, the MANAGEMENT DEFENDANTS in effect control the operations of GORDON LANE and COUNTRY OAKS.

25.    This includes but is not limited to the legal obligation in the operation of GORDON LANE and COUNTRY OAKS that "any matter relating to the activities of the limited liability company is decided *exclusively* by the managers" pursuant to *Corporations Code* § 17704.07(c)(1) (emphasis added).) And in fact, in effect, only the manager of GORDON LANE and COUNTRY OAKS has the sole capacity to bind the limited liability company and/or execute any instrument on behalf of the limited liability company.

26.    Accordingly any act of the MANAGEMENT DEFENDANTS is imputed to GORDON LANE and COUNTRY OAKS, pursuant to *Corporations Code* § 300(a), 17703.01(b), (c).

27.    Furthermore, the MANAGEMENT DEFENDANTS operate GORDON LANE and COUNTRY OAKS as an alter ego and/or single enterprise, by (1) commingling of funds and other assets; (2) treating the assets of each entity as their own, (3) holding out to lenders that they are personally liable for debts of the entities, (4) failing to maintain minutes or adequate corporate records, owning all of the stock, (5) use of the different entities as mere conduit for a single enterprise, and concealment of financial interests in the companies, and (6) using other mechanisms and according to proof at time of trial.

28.    The "Single Enterprise" formed by the DEFENDANTS can be found by review of the Long-Term Care Facility Integrated Disclosure and Medi-Cal Cost Report submitted under penalty of perjury to the California Office of Statewide Health, Planning, and Development ("OSHPD Report"). Therein, GORDON LANE

and COUNTRY OAKS, respectively, list "related" parties, referring to entities under common ownership or control, to which each funnels cash for non-existent phantom services and obligations which are, in fact, simply efforts by the MANAGEMENT DEFENDANTS to move money, goods and services around from one of their commonly owned and/or controlled entities to another with no regard to their legal separation.

29.    GORDON LANE and others, at the expense of the legally mandated care to be provided to residents in the facility, claimed in the OSHPD Cost Report of GORDON LANE for its reporting period ending December 31, 2019, that SUN MAR provided the GORDON LANE so-called "administrative services" with a paid value of $797,900.00. SUN MAR provides no services which near such value and rather this is a manner in which the "Single Enterprise" siphons off monies for the sole purpose of unjustly enriching the owners of the MANAGEMENT DEFENDANTS and others who mandate the payment from GORDON LANE to the MANAGEMENT DEFENDANTS for these non–existent phantom services. The agreement to pay for such services was not the result of an arm's length negotiation but was rather dictated to GORDON LANE by Irving Bauman and Frank Johnson as the managers and/or officers of GORDON LANE and SUN MAR, and in furtherance of the take from one pocket, place it another mentality of a single enterprise.

30.    GORDON LANE and others, at the expense of the legally mandated care to be provided to residents in the facility, claimed in reporting to the California OSHPD that the FACILITY paid "Various" related parties for "Various" unspecified services with an accumulated paid value of $553,844.00. These various related entities provided no services which near such value and rather this is a manner in which the "Single Enterprise" siphons off monies for the sole purpose of unjustly enriching the owners of the MANAGEMENT DEFENDANTS and others who mandate the payment from the GORDON LANE to the MANAGEMENT DEFENDANTS for these non–existent phantom services.

31.     COUNTRY OAKS and others, at the expense of the legally mandated care to be provided to residents in the facility, claimed in the OSHPD Cost Report of COUNTRY OAKS for its reporting period ending December 31, 2020, that SUN MAR MANAGEMENT SERVICES provided the facility so-called "administrative services" with a paid value of $680,600.00. SUN MAR provides no services which near such value and, rather, this is a manner in which the "Single Enterprise" siphons off monies for the sole purpose of unjustly enriching the owners of the MANAGEMENT DEFENDANTS and others who mandate the payment from COUNTRY OAKS to the MANAGEMENT DEFENDANTS for these non-existent phantom services. The agreement to pay for such services was not the result of an arm's length negotiation but was rather dictated to COUNTRY OAKS by Frank Johnson as the manager, officer and/or director of all DEFENDANTS, and in furtherance of the take from one pocket, place it in another mentality of a single enterprise.

32.     Because the funds that were improperly siphoned to the MANAGEMENT DEFENDANTS for phantom services as alleged in the immediately preceding paragraphs should have instead gone to pay for labor costs to ensure that GORDON LANE and COUNTRY OAKS were sufficiently staffed to meet the needs of the residents, failing to hold DEFENDANTS liable under an alter ego theory would lead to an inequitable result.

33.     Due to the DEFENDANTS' direct conduct, as well as their practice of aiding and abetting the wrongful acts and omissions alleged herein and at the direction of the true owner, operators and directors of GORDON LANE and COUNTRY OAKS, PLAINTIFFS suffered the significant injuries more fully alleged herein as well as other injuries according to proof at trial. These injuries were not the product of isolated failure but rather the result of prolonged neglect and abuse that arose out of four (4) calculated business practices by DEFENDANTS at the direction of the true owners, operators and directors of GORDON LANE and COUNTRY OAKS:

(a) understaffing;

(b) relentless marketing and sales practices to increase resident census despite knowledge of ongoing care deprivation;

(c) ongoing practice of <u>utilizing unqualified and untrained employees</u> who, by law, were forbidden by law to administer nursing care to residents;

(d) ongoing practice of recruiting heavier care residents for which the nursing home received higher reimbursements, despite the dangerous levels of staff who were incapable of meeting the needs of the existing resident population.

Like Plaintiff Parrish, Plaintiffs' Rodriguez, Ashabraner, and Parker too were injured as a result of DEFENDANTS' wrongful conduct alleged herein, including by being forced to reside in a facility with insufficient levels of staff and by DEFENDANTS' failure to disclose that GORDON LANE and/or COUNTRY OAKS was not adequately staffed to meet the needs of all the residents given their collective acuity levels. Had Plaintiffs known that the SUN MAR-managed facility at which they resided was not adequately staffed to meet the needs of the residents, they would not have agreed to enter or to remain as a resident of either GORDON LANE or COUNTRY OAKS.

34.    Critical operational decisions having impact on the revenues and expenditures of GORDON LANE and COUNTRY OAKS were centrally made and controlled by the MANAGEMENT DEFENDANTS. More specifically, the MANAGEMENT DEFENDANTS determined and controlled: the staff allowed to work in their nursing home chain; the staffing expenditures at each nursing home; the revenue targets for each nursing home, the census mix/targets as well as patient recruitment programs for each nursing home. In sum, at all relevant times, all cash management functions, revenues and expenditure decisions at the nursing home level were tightly controlled at the corporate level at the direction of the true owners, operators, and directors of the facilities, the MANAGEMENT DEFENDANTS. This was the case at GORDON LANE and COUNTRY OAKS. Accordingly, decisions as to staffing and census were made irrespective of patient population needs in the facilities, but rather, were determined by the financial needs of the company.

35.    The DEFENDANTS, by and through their corporate officers, directors, and managing agents including IRVING BAUMAN (manager of GORDON LANE HEALTHCARE, LLC and COUNTRY OAKS PARTNERS, LLC and director of SUN MAR MANAGEMENT SERVICES); FRANK JOHNSON (manager of GORDON LANE HEALTHCARE, LLC and COUNRY OAKS PARTNERS, LLC and Director/CEO of SUN MAR MANAGEMENT SERVICES); ELI MARMUR (manager of GORDON LANE HEALTHCARE, LLC); WILLIAM PRESNELL (Secretary of GORDON LANE HEALTHCARE, LLC and COUNTRY OAKS PARTNERS, LLC and Director and CFO of SUN MAR MANAGEMENT SERVICES), and others presently unknown and according to proof at time of trial, ratified the conduct of their co-defendants and GORDON LANE HEALTHCARE, LLC and COUNTRY OAKS PARTNERS, LLC, in that they were aware of the understaffing of GORDON LANE and COUNTRY OAKS in both number and training, the relationship between understaffing and sub-standard provision of care to patients of each skilled nursing facility, including GAIL PARRISH, DAVID RODRIGUEZ, JOAN ASHABRANER, and ERMA PARKER, the rash and truth of lawsuits against the DEFENDANTS' skilled nursing facilities including GORDON LANE and COUNTRY OAKS, and GORDON LANE and COUNTRY OAKS' customary practice of being issued deficiencies by the California DPH as alleged herein.

36.    And the fact of the matter is that by unlawfully siphoning off required funds for resident care, the MANAGEMENT DEFENDANTS and others left insufficient funds to safely and lawfully operate GORDON LANE and COUNTRY OAKS in accordance with applicable regulation. This fact is borne out by the simple fact that in 2019 when the average California nursing facility received only 22 DPH survey deficiencies, GORDON LANE received 43, or double. And in the abysmal performance in care continued thereafter, for in the year 2020, when the average was only 7 DPH survey deficiencies, the FACILITY received 31, or more than 4 times as

many DPH survey deficiencies. Similarly, COUNTRY OAKS received eight (8) Survey Deficiencies and forty-seven (47) Complaints/Reported Incidents in 2021 and 3 Survey Deficiencies and 31 Complaints/Reported Incidents received in 2022. Both GORDON LANE and COUNTRY OAKS continued to receive federal and state survey deficiencies through 2024.

37.    In sum, the MANAGEMENT DEFENDANTS commingled the funds of the GORDON LANE and COUNTRY OAKS with the operations of other skilled nursing facilities operated and controlled by them, siphoning funds from one to the other to cover the fact that the MANAGEMENT DEFENDANTS were unlawfully siphoning off cash from GORDON LANE and COUNTRY OAKS leaving insufficient funds to operate any of their facilities. The intermingling of the finances between GORDON LANE and COUNTRY OAKS and the MANAGEMENT DEFENDANTS is so complete as to render them simply alter egos of one another.

38.    In addition to the aforementioned allegations, it is alleged upon information and belief that the managerial and operational control exerted by the MANAGEMENT DEFENDANTS over GORDON LANE and COUNTRY OAKS is also achieved through the implementation of uniform policies and procedures that the MANAGEMENT DEFENDANTS disseminate to GORDON LANE and COUNTRY OAKS, and with which GORDON LANE and COUNTRY OAKS and its employees and agents are mandated to comply.

39.    While the MANAGEMENT DEFENDANTS exert complete operational control over GORDON LANE and COUNTRY OAKS as set forth in the immediately preceding paragraphs, pursuant to applicable state law GORDON LANE and COUNTRY OAKS also remain responsible to their licensing authority (the Department of Public Health) for their conduct in the exercise of their licenses and each has the "responsibility to see to it that the license is not used in violation of law." *California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295. In fact, Title 22 California *Code of Regulations* §72501 mandates

that, as regulated entities, GORDON LANE and COUNTRY OAKS "shall be responsible for compliance with the licensing requirements and for the organization, management, operation and control of the licensed facility. The delegation of any authority by a licensee shall not diminish the responsibilities of such licensee." Title 22 California *Code of Regulations* § 72501.

## COMMON FACTUAL ALLEGATIONS

40.    In owning, operating, managing, administrating, controlling, and/or supervising Gordon Lane Care Center and Country Oaks Care Center, DEFENDANTS were required to comply with California statutory and regulatory law governing the operation of skilled nursing facilities. In owning, operating, managing, administrating, controlling, and/or supervising Gordon Lane Care Center and Country Oaks Care Center, DEFENDANTS were also subject to the authority of licensing and other governmental agencies, including but not limited to the California Department of Public Health ("DPH"), the California Department of Health Care Services ("DHCS"), and the federal Centers for Medicare & Medicaid Services ("CMS").

41.    It is alleged that Plaintiffs and each class member was admitted to GORDON LANE or COUNTRY OAKS pursuant to the utilization of the "California Standard Admission Agreement"[1] as mandated by Title 22 of the California *Code of Regulations*, §72516. *Health & Safety Code* §1599.74 mandates that every California skilled nursing facility admission agreement shall contain a complete copy of the statutory and regulatory bill of rights in legible print of no less than 12-point type and that every resident shall sign a separate written acknowledgement that the resident has been informed of the Resident Bill of Rights.[2] California *Health & Safety Code*

---

[1] A true and correct copy of an exemplar of the "California Standard Admission Agreement for Skilled Nursing Facilities and Intermediate Care Facilities" obtained from the California Department of Public Health's website at the self-authenticating link http://www.cdph.ca.gov/pubsforms/forms/CtrldForms/cdph327.pdf.

[2] A true and correct copy of an exemplar of the Resident Bill of Rights (Attachment

§1599.74 mandates in relevant part:

> (b)    Every contract of admission shall contain a complete copy of both the statutory and regulatory Patients' Bill of Rights. Notwithstanding any other provision of law, the text of the Patients' Bill of Rights shall be in legible print of no less than 12-point type. If a translation has been provided by the department, the text given to non-English-speaking residents shall be in their language.

> (c)    The contract shall also contain a separate written acknowledgement that the resident has been informed of the Patients' Bill of Rights. Written acknowledgement by the resident or the resident's representative must be made either on a separate document or in the agreement itself next to the clause informing the resident of these regulatory rights. Written acknowledgement by use of the signature on the agreement as a whole does not meet this requirement.

California *Health & Safety Code* §1599.74(b)–(c).

42.    Pursuant to this uniform representation that the services provided by DEFENDANTS would meet the particularized standards as set forth in the Resident Bill of Rights attached to the uniform Admission Agreement, DEFENDANTS were to provide all residents of GORDON LANE and COUNTRY OAKS services consistent with the mandatory requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations* §72527(a)(25). Specifically, the services represented by the DEFENDANTS that they would provide to each resident, via the contractual Admission Agreement arrangement with each resident, was explicitly stated by the DEFENDANTS to include the obligation, and representation as to the standard of care to be provided, that GORDON LANE and/or COUNTRY OAKS would ensure the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility"

---

F to the Standard Admission Agreement) obtained from the California Department of Public Health website at the self-authenticating link http://www.cdph.ca.gov/pubsforms/forms/CtrldForms/cdph327-Attachment-F.pdf at 32–37.

including, and as to that which this lawsuit references, "Direct Caregivers" as that term is defined in "Direct Caregivers", as the term "Direct Caregivers" is defined 22 *Code of Regulations* §72038.[3] These uniform representations of the DEFENDANTS in the Admission Agreement as to the nature of their services in this regard as to "Direct Caregivers" as defined in 22 *Code of Regulations* §72038, while performing nursing services as described in Sections 72309, 72311, and 72315 of Title 22 of the California *Code of Regulations*, as those sections read as of July 1, 2017 were false and actually known to be false when made by the DEFENDANTS when made. And in fact, the allegations in this action are specifically limited to an analysis of the failure to comply with applicable regulations and laws as to "Direct Caregivers" as defined in 22 *Code of Regulations* §72038, only.

43.    Pursuant to requirements of law and the provisions of the standard Admission Agreement, DEFENDANTS were to provide Plaintiffs and each class member with services consistent with the mandatory requirements of Title 22 *Code of Regulations* §72527 and California *Health & Safety Code* §1599.1(a), as specifically referenced in Title 22 *CODE OF REGULATIONS* §72527(a)(25). Specifically, DEFENDANTS were required to ensure the rights afforded to Plaintiffs, members of the class, and all residents of skilled nursing facilities under *Health &*

---

[3] Throughout this Complaint when the term "Direct Caregiver" is referenced it is meant to be as that term is defined in 22 *Code of Regulations* §72038 which is as follows:

> "Direct caregiver" means a registered nurse, as referred to in Section 2732 of the Business and Professions Code, a licensed vocational nurse, as referred to in Section 2864 of the Business and Professions Code, a psychiatric technician, as referred to in Section 4516 of the Business and Professions Code, and a certified nurse assistant, or a nursing assistant participating in an approved training program, as defined in Section 1337 of the Health and Safety Code, while performing nursing services as described in sections 72309, 72311 and 72315. A person serving as the director of nursing services in a facility with 60 or more licensed beds cannot be a direct caregiver.

*Safety Code* §1599.1(a) and *Code of Regulations* §72527(a)(25), most specifically, the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility," in this lawsuit meaning "Direct Caregivers", as the term "Direct Caregivers" is defined 22 *Code of Regulations* §72038, pursuant to Health & Safety Code §1599.1(a) (as expressly incorporated by Title 22 *Code of Regulations* §72527(a)(25). As to "Direct Caregivers" these DEFENDANTS failed miserably in this regard. The analysis of *Health & Safety Code* §1599.1 is accomplished in part by assessing the compliance of the DEFENDANTS with, as to this lawsuit "Direct Caregivers", as the term "Direct Caregivers" is defined 22 *Code of Regulations* §72038, consistent with the requirements of 22 *Code of Regulations* §72329.1.

44. During the admissions process and prior to becoming residents of Gordon Lane Care Center and Country Oaks Care Center, representatives of GORDON LANE and COUNTRY OAKS presented Plaintiffs and each class member, and/or each's legal representative, with a standard Admission Agreement containing the Resident Bill of Rights as an attachment to the Admission Agreement as mandated by *Health & Safety Code* §1599.74. Plaintiffs and each member of the class, and/or each's legal representative, read and understood the standard Admission Agreement and relied upon the material terms contained therein. In reliance on the terms of the standard Admission Agreement, Plaintiffs and each member of the class, and/or each's legal representative, decided that Plaintiffs and each member of the class would become residents of GORDON LANE or COUNTRY OAKS, and signed the Admission Agreement and became residents of GORDON LANE or COUNTRY OAKS. Each and every putative class member, and most specifically Plaintiffs, and/or their legal representatives acting on their behalf, justifiably relied on these false written representations in agreeing to the terms and obligations of the written Admission Agreement to their detriment and as more fully set forth below.

45. Before, during, and after the admissions processes of Plaintiffs and each

class member, DEFENDANTS actively and intentionally concealed from Plaintiffs and class members that at all times relevant hereto GORDON LANE and/or COUNTRY OAKS did not employ "an adequate number of "Direct Caregivers", as the term "Direct Caregivers" is defined 22 *Code of Regulations* §72038, to carry out all of the functions of the facility" in violation of Health & Safety Code §1599.1(a) (as expressly incorporated by Title 22 *Code of Regulations* §72527(a)(25)).

46.    It is alleged that the concealments by DEFENDANTS alleged in the immediately preceding paragraph were intended to deceive Plaintiffs and members of the class into believing that GORDON LANE and COUNTRY OAKS were properly operated and staffed according to applicable regulations. Plaintiffs and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, were unsophisticated and unknowledgeable in the operation of skilled nursing facilities in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status. Had the concealed facts been disclosed to Plaintiffs and members of the class and/or their legal representatives, they would not have become residents of GORDON LANE or COUNTRY OAKS and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing care at either facility.

47.    Before, during, and after the admissions processes of Plaintiffs and each class member, DEFENDANTS actively and intentionally concealed from Plaintiffs and class members and/or each's legal representatives that DEFENDANTS did not devote sufficient financial resources to the proper operation of GORDON LANE and/or COUNTRY OAKS so as to ensure the sufficiency of "Direct Caregivers, and instead diverted those resources to create ill-begotten profits for DEFENDANTS. It is alleged that this concealment by DEFENDANTS was intended to deceive Plaintiffs and members of the class and/or each's legal representative into believing that GORDON LANE and/or COUNTRY OAKS were properly operated with sufficient

"Direct Caregivers" to induce Plaintiffs and class members into becoming residents of either facility. Plaintiffs and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, and/or each's legal representatives, were unknowledgeable and unsophisticated in the operation of skilled nursing facilities in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status. Had the concealed facts been disclosed to Plaintiffs and members of the class and/or their legal representatives, they would not have become residents of GORDON LANE or COUNTRY OAKS and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing care at either facility.

48.    Before, during, and after the admissions processes of Plaintiffs and each class member, DEFENDANTS actively and intentionally concealed from Plaintiffs and class members and/or each's legal representative that DEFENDANTS chronically understaffed GORDON LANE and/or COUNTRY OAKS with an inadequate number of "Direct Caregivers" to carry out the function of the FACILITY as more fully alleged herein, and in so doing and as a result thereof, the DEFENDANTS have violated the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of 'Direct Caregivers' to carry out all of the functions of the facility." It is alleged that this concealment by DEFENDANTS was intended to deceive Plaintiffs and members of the class and/or each's legal representative into believing that GORDON LANE and/or COUNTRY OAKS was properly staffed to induce Plaintiffs and class members into becoming residents of either facility. Plaintiffs and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, were unknowledgeable and unsophisticated in the operation of skilled nursing

22

facilities in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status. Had the concealed facts been disclosed to Plaintiffs and members of the class and/or their legal representatives, they would not have become residents of GORDON LANE or COUNTRY OAKS and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing care at either facility.

49.    In reality, in direct contradiction to the representation in their uniform admission agreement that GORDON LANE and COUNTRY OAKS would "employ an adequate number of qualified personnel to carry out all functions of the facility" and to meet the needs of their residents, DEFENDANTS chronically understaffed both facilities as to "Direct Caregivers" and chronically failed to meet the particularized standards as set forth in the Resident Bill of Rights relating to the mandatory requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations* §72527(a)(25), in the requirements of Title 22 *Code of Regulations* §72329.1 as is more fully alleged herein below. Thus, DEFENDANTS have misrepresented in their Admission Agreement that entering into the Admission Agreement with DEFENDANTS conferred or involved rights, remedies, or obligations which the transaction did not have or involve, or which was prohibited by law, in violation of *Civil Code* §1770(a)(14).

50.    Plaintiffs and class members, as persons unknowledgeable and unsophisticated in the operation of skilled nursing facilities in the State of California and having no knowledge of the material concealments by DEFENDANTS alleged herein, justifiably relied on the material terms of, and the representations set forth in, the DEFENDANTS' uniform Admission Agreement in entering into the Admission Agreement and becoming residents of GORDON LANE and COUNTRY OAKS, thereby assuming the obligation of payment to the DEFENDANTS. Plaintiffs and class members relied on the following material term of the California Standard

23

Admission Agreement relating to resident rights:

> **IV. Your Rights as a Resident**.  Residents of this Facility keep all their basic rights and liberties as a citizen or resident of the United States when, after, they are admitted. Because these rights are so important, both federal and state laws and regulations describe them in detail, and state law requires that a comprehensive Resident Bill of Rights be attached to this Agreement.
>
> Attachment F, entitled "Resident Bill of Rights," lists your rights as set forth in State and Federal law. For your information, the attachment also provides the location of your rights in statute.
>
> You should review the attached "Resident Bill of Rights" very carefully. To acknowledge that you have been informed of the "resident Bill of Rights," please sign here: _____.

In requiring their residents to specifically and separately acknowledge receipt of DEFENDANTS' representations regarding the minimum standards of care as set forth in the Resident Bill of Rights, DEFENDANTS knew, or should have known, that their residents were reasonably and justifiably relying on said representations.

51.    It is alleged that Plaintiffs and members of the class suffered injury in fact and concrete harm in that they relied on the representations of DEFENDANTS that they would be provided with minimum standards of care consistent with the requirements of *Health & Safety Code* §1599.1(a) as incorporated into Title 22 *Code of Regulations* §72527(a)(25), yet did not receive this promised standard of care and suffered pecuniary harm by being deprived of the value of payments made for skilled nursing services when these services were not actually rendered consistent with DEFENDANTS' representations.

52.    In addition, these class members made monetary payments to DEFENDANTS in return for skilled nursing services of the standard promised by DEFENDANTS in the uniform Admission Agreement and its attachments which are incorporated into the Admission Agreement as alleged above. The class has suffered pecuniary harm in that DEFENDANTS did not provide such services of the standard represented. In addition, Plaintiffs and class members have suffered pecuniary harm in that DEFENDANTS misrepresented that entering into an Admission Agreement

with DEFENDANTS conferred the statutory resident right under *Health & Safety Code* §1599.1 of Plaintiffs and class members to reside in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" when in fact the transaction of entering into an admission agreement with DEFENDANTS did not confer such right.

53.     That is, simply by entering into an Admission Agreement with a resident, DEFENDANTS represent in writing as an exhibit or addendum attached to the Admission Agreement of Plaintiffs, and all others similarly situated, that DEFENDANTS will provide services of the standard and quality consistent with the Resident Bill of Rights as set forth in Title 22 California *Code of Regulations* §72527(a)(25) to wit, California *Health & Safety Code* §1599.1.

54.     In addition, by entering into an Admission Agreement with a resident, DEFENDANTS represent in writing as an exhibit or addendum attached to the Admission Agreement of Plaintiffs, and all others similarly situated, that the transaction conferred the statutory resident rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" as to "Direct Caregivers" when in fact the transaction of entering into an Admission Agreement with DEFENDANTS did not confer such right in direct violation of *Civil Code* §1770(a)(14).

55.     The representations of DEFENDANTS as incorporated into their admissions contracts are false and known by DEFENDANTS to be false when made. Plaintiffs and the class relied on these misrepresentations into becoming residents of the FACILITY. In reliance of these misrepresentations, Plaintiffs and the class made payments to DEFENDANTS in return for these services as promised. Plaintiffs and the class suffered pecuniary harm in the form of lost payments and lost services when DEFENDANTS actually failed to provide these promised skilled nursing services as

represented.

56.    It is alleged that DEFENDANTS' representations set forth in their uniform resident Admission Agreements that they would ensure their residents' right to live in an adequately staffed facility were false because, instead of providing the represented standard of care, at all times herein relevant DEFENDANTS intentionally concealed from Plaintiffs and members of the class that the MANAGEMENT DEFENDANTS conceived and implemented a plan to wrongfully increase business profits at the expense of the rights and health of residents such as Plaintiffs, and others similarly situated through the chronic understaffing of "Direct Caregivers" which prevented GORDON LANE and COUNTRY OAKS from ensuring their residents' statutory rights to live in an adequately-staffed facility as to "Direct Caregivers" that would meet the needs of the residents, rendering the representations of DEFENDANTS as to the nature and quality of their services as false.

57.    It is alleged that federal and California regulations require skilled nursing facilities to provide adequate, qualified staffing to meet resident needs and to carry out all functions at the facility, regardless of whether adequate staffing would require more staff than any required bare numeric ratios. Specifically, as it relates to federal law, 42 *Code of Federal Regulations* § 483.30 states that a skilled nursing facility "must have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care." 42 *Code of Federal Regulations* §483.30 further states that a skilled nursing facility "must provide services by sufficient numbers of each of the following types of personnel on a 24-hour basis to provide nursing care to all residents in accordance with resident care plans: (i) Except when waived under paragraph (c) of this section, licensed nurses; and (ii) Other nursing personnel." 42 *Code of Federal Regulations* § 483.30(a)(1).

58.    It is specifically alleged that the regulations enacted pursuant to the

26

California *Health and Safety Code*[4] also require that a skilled nursing facility maintain staffing at levels sufficient to meet the needs of residents, even if that required staffing level is more than the bare minimum numeric ratio of 3.2 NHPPD required by *Health & Safety Code* §1276.5 through July of 2017 and thereafter, pursuant to *Health & Safety Code* §1276.65, 3.5 NHPPD. "Nursing service personnel shall be employed and on duty in at least the number and with the qualifications determined by the Department to provide the necessary nursing services for patients admitted for care. The staffing requirements required by this section are minimum standards only. Skilled nursing facilities shall employ and schedule additional staff as needed to ensure quality resident care based on the needs of individual residents and to ensure compliance with all relevant state and federal staffing requirements." Title 22 *California Code of Regulations* § 72329.1(a).

59.    It is alleged that minimum staffing of personnel at GORDON LANE and COUNTRY OAKS is dependent by law upon the acuity (need) level of the residents of each facility, respectively. As alleged more fully below, resident acuity levels during the class period at GORDON LANE and COUNTRY OAKS were such that the "minimum" staffing ratios exceeded the numeric minimum of *Health & Safety Code* §1276.5 and *Health & Safety Code* §1276.65 pursuant to the provisions of Title 22 *California Code of Regulations* §§72515(b), 72329.1 and 42 C.F.R. §483.30.

60.    Thus, it is specifically alleged that DEFENDANTS, as operators of skilled nursing facilities must, pursuant to statutes and regulations with which DEFENDANTS are required to comply, know that sufficient nursing staff is required

---

[4] These regulations set the standard of care with which a skilled nursing facility must comply. *See* Cal. *Health & Saf. Code* §1276(a) ("The building standards published in the State Building Standards Code by the Office of Statewide Health Planning and Development, and the regulations adopted by the state department shall, as applicable, prescribe standards of adequacy, safety, and sanitation of the physical plant, of staffing with duly qualified licensed personnel, and of services, based on the type of health facility and the needs of the persons served thereby.").

to meet the needs of residents and to ensure the health and safety of residents. Conversely, DEFENDANTS, as operators of skilled nursing facilities must also know that a failure to maintain sufficient staffing to meet the needs of residents will endanger the health and safety of residents of GORDON LANE and COUNTRY OAKS. DEFENDANTS, as operators of skilled nursing facilities, cannot claim ignorance of these regulatory requirements without endangering their very licensure. Skilled nursing facilities have the "responsibility to see to it that the license is not used in violation of law." (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295); see also *California Code of Regulations*, §72501, subd. (a) (skilled nursing facilities "shall be responsible for compliance with the licensing requirements and for the organization, management, operation and control of the licensed facility.").

61.    It is alleged that at all times relevant hereto, in addition to mandating minimum staffing, the California Legislature also has specifically recognized and declared that failing to maintain sufficient staffing may result in death or serious physical harm to residents. As specifically alleged hereinabove, operators of skilled nursing facilities such as DEFENDANTS are required to comply with (and hence have knowledge of) these statutes and regulations. California *Health and Safety Code* §1276.65, which requires the development of regulations setting forth staffing ratios as explained above, also provides that "[a] violation of the regulations developed pursuant to this section may constitute a class "B," "A," or "AA" violation pursuant to the standards set forth in Section 1424." (*Health & Saf. Code*, §1276.65, subd. (g)(2)) That is, simply understaffing a facility may constitute a class "B," "A," or "AA" citation. In turn, Section 1424, subdivisions (c), (d), and (e), defines the classifications of citations in relevant part as follows:

    (c)    Class "AA" violations are violations that meet the criteria for a class "A" violation and that the state department determines to have been a *direct proximate cause of death of a patient or resident* of a long-term health care facility.

(d)    Class "A" violations are violations which the state department determines present either (1) *imminent danger that death or serious harm* to the patients or residents of the long-term health care facility would result therefrom, or (2) *substantial probability that death or serious physical harm to patients or residents* of the long-term health care facility would result therefrom.

(e)    Except as provided in paragraph (4) of subdivision (a) of Section 1424.5, class "B" violations are violations that the state department determines have a *direct or immediate relationship to the health, safety, or security of long-term health care facility patients or residents*, other than class "AA" or "A" violations.

California *Health & Safety Code* §1424 (emphasis added).

62.    Thus, it is alleged that at all times relevant hereto, DEFENDANTS were required to know pursuant to applicable statues and regulations (or risk forfeiture of licensure) that understaffing GORDON LANE and/or COUNTRY OAKS creates a high risk of harm to residents of those facilities. At all times relevant hereto DEFENDANTS consciously disregarded that knowledge and continued to maintain insufficient staffing levels.

63.    The analysis of whether a skilled nursing facility provides adequate staffing entails three basic steps: a) determining the collective acuity level of the residents at the facility; b) determining the staffing levels at the facility; and c) comparing the collective acuity and staffing levels at the facility in light of recognized minimum staffing requirements. It is alleged that a facility's acuity level is based upon the average resident acuity in the population for whom care is being provided. It is alleged that it is not necessary to determine whether all residents individually receive a certain number of hours of nursing care per day, but rather whether the facility – as a whole – is adequately staffed to account for the facility's collective acuity level. It is alleged that although a facility's acuity level can vary from day to day, the acuity rates can be determined by taking the average facility acuity over the course of several months. This process provides a reliable index of a facility's average patient nursing needs, a key for determining adequate staffing requirements.

64.    And in fact GORDON LANE HEALTHCARE LLC has itself testified

29

under penalty of perjury confirming this reality and as follows:

Q   How does the facility determine whether there's enough staff on duty to -- to meet the needs of its residents?

A   All right. So we have a schedule of our nursing for our residents, and based on that schedule and our daily census and our acuity of our patients, we make a determination how much staff we need.

Q   Okay. So your facility doesn't just throw out a number and say based upon this census we're going to meet mandatory minimums or something like that, correct?

A   Correct.

Q   You looked at the -- you look at the acuity of the residents to determine sufficiency of staff, correct?

A   Correct.

Q   In other words, you don't look at individual residents and say that person needs 1.5 nursing hours per patient day, do you?

A   Correct.

Q   What you do is use your education, your training, your experience and the input of the department heads and the like, which you see on a daily basis, and you say the totality of the building has a census which we feel requires X number of staff, right?

A   Among other factors.

Q   Including acuity, correct?

A   Correct.

Q   What I'm saying is, is when you -- as the facility to determine the needs of all the residents in the facility, you got to determine what the needs of all the residents are in the facility to determine sufficiency of staff, right?

A   Correct.

Q   You don't look at individual residents one on one to determine the sufficiency of the staff in the facility, you look at all of the needs of all

30

of the resident, correct?

A  That is correct.

65.    COUNTRY OAKS testified to the same effect:

Q. The question is this: Can you tell me the name of a document which reflects, on a daily basis, your facility determining how many nursing hours per patient day each patient requires?

…

THE WITNESS: No.

BY MR. GARCIA:

Q. That's because one does not exist; correct?

A. Correct.

…

Q. Sure. What happens in the real work is your director of nursing or her designee, in conjunction with her department heads, utilizes these documents that we've discussed, the MDSs, the 802 forms, the Roster/Sample Matrix, and the CASPER reports, and she is competent to then make sure there's enough staff to meet the needs of the residents based on those acuity reports; correct?

A. Correct.

66.    SUN MAR MANAGMENET SERVICES has confirmed that determining staffing based on facility-wide acuity levels is a common feature at skilled nursing facilities it manages. For example, a Director of Operations for SUN MAR testified in similar litigation as follows:

Q Effectively that says you've got to look at the

need for the residents to make sure there is enough

people to care for them, yes?

A Yes.

Q And that determination is made by your director

1    of nursing in the facility and their department heads,

2    yes?

3    A Yes.

4    Q And they're qualified to do that at the facility

5    level -- make sure there is enough staff to meet the

6    needs of residents, yes?

7    A Yes.

8                …

9    [Q]    You believe, as the regional administrator, that

10    your personnel at the facility level are qualified to

11    look at the acuity or need level of residents on a

12    facility-wide basis to determine how much staff is

13    necessary to meet their needs, are you not?

14    A Yes. Correct.

15    67.    The staffing analysis described above is done at a facility-level. Thus, it

16    does not require any individualized inquiry into how many hours of direct nursing

17    care any specific resident received on any given day. Rather, the proper analysis is

18    whether the *facility as a whole* employed an adequate number of qualified staff to

19    competently care for the collective needs of its residents. It is specifically alleged that

20    the United States Centers for Medicare & Medicaid Services ("CMS") has already

21    developed a methodology for determining the level of staffing required to meet the

22    needs of residents based on the collective acuity levels of the residents via the CMS

23    Agency Patient-Related Characteristics Report (formerly the Case Mix Report),

24    which is the average resident need score based on resident assessment data that CMS

25    *has already collected and calculated*. A self-authenticating link to a portion of this

26    staffing information is at:

27    http://www.cms.gov/Medicare/Provider-Enrollment-and-

28    Certification/CertificationandComplianc/Downloads/staffingdatafile.zip.

68.    It is specifically alleged that if a skilled nursing facility's staffing levels are lower than the level of staffing of "Direct Caregivers" required to meet the needs of residents as determined by their collective acuity, that facility has violated its residents' statutory, affirmative and actionable right to reside in a skilled nursing facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility." California *Health & Safety Code* §1599.1(a). Upon information and belief, it is alleged that GORDON LANE and COUNTRY OAKS were inadequately staffed in violation of *Health & Safety Code* §1599.1(a).

69.    However, contrary to DEFENDANTS' representations contained within the standard Admission Agreement, DEFENDANTS did not devote sufficient financial resources to the proper operation of GORDON LANE and COUNTRY OAKS, did not devote sufficient financial resources to protect the health and safety of residents and ensure resident rights were not violated, and instead diverted those resources to create ill-begotten profits for DEFENDANTS. DEFENDANTS chronically understaffed GORDON LANE and COUNTRY OAKS with an inadequate number of "Direct Caregivers" to carry out the functions of GORDON LANE and COUNTRY OAKS, as more fully alleged herein, and in so doing and as a result thereof, DEFENDANTS have violated the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25).

70.    In reality, in direct contradiction to the representation in their uniform Admission Agreements that GORDON LANE and COUNTRY OAKS each would "employ an adequate number of qualified personnel to carry out all functions of the facility" and to meet the needs of their respective residents, DEFENDANTS chronically understaffed GORDON LANE and COUNTRY OAKS as to "Direct Caregivers" and chronically failed to meet the particularized standards as set forth in the Resident Bill of Rights relating to the mandatory requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations*

§72527(a)(25), in the requirements of Title 22 *Code of Regulations* §72329.1 during the residencies of Plaintiffs in GORDON LANE and COUNTRY OAKS, as well as during the residencies of members of the class.

71.    In fact, the reported hours and staffing ratios by DEFENDANTS are a complete and intended fraud in two ways. First, this intended fraud to be perpetrated upon the public and the government by these DEFENDANTS is illustrated by the staffing records of GORDON LANE and COUNTRY OAKS that are used by each facility to report hours to the DPH, in which DEFENDANTS include non-direct caregivers in violation of 22 *Code of Regulations* §§ 72329.1(g) and §72038 in their computation of staffing ratios reported to the public and the government. That is, DEFENDANTS artificially and fraudulently inflate the reported nursing staff ratios by unlawfully and fraudulently including the hours of employees not providing direct nursing care, including but not limited to administrative, supervisory, and/or maintenance employees who do not provide direct patient care.

72.    Second, the fraud perpetrated on the public and the government can be seen from DEFENDANTS' own time-keeping records which do not take into account rest breaks required by *Labor Code* §226.7 and 8 *California Code of Regulations* §§ 11010-11150, ¶ 12 and §11160, ¶ 11. Thus, for example, for a nurse working an eight-hour shift, the DEFENDANTS report the full eight hours to DPH even though in reality that nurse was only on the floor providing direct patient care for seven hours and forty minutes (7.66 hours) due to taking the two 10-minute breaks required by the *Labor Code*. While the fraudulent reporting of eight hours as opposed to 7.66 hours may seem inconsequential with only one nurse involved, when it is extrapolated on a facility wide-basis, its effects are dramatic.

73.    For example, if on a given day a skilled nursing facility had 40 nurses working eight-hour shifts with a total patient census of 100 for that day, the facility has a systemic policy and practice reports a total of 320 hours worked for that day,

divided by 100 residents for a total of 3.2 nursing hours per patient day ("NHPPD"), which is the bare minimum numeric staffing ratio required by Health & Safety Code §1276.5. However, in reality and contrary to the fraudulent reporting of DEFENDANTS to DPH, each of the 40 nurses worked only 7.66 hours due to taking two required 10-minute breaks for a total of 306.4 hours actually worked. 306.4 hours divided by 100 residents results in a total of 3.064 NHPPD, well *below* the minimum numeric ratio of 3.2 hours required by Health & Safety Code §1276.5.

74.    It is alleged that at all relevant times hereto, DEFENDANTS as a systemic policy and practice always reported to DPH total nursing hours and NHPPD ratios which did not take into account the rest breaks required by Labor Code §226.7 and 8 California Code of Regulations §§ 11010–11150, ¶ 12 and §11160, ¶ 11. It is further alleged that at all times relevant hereto DEFENDANTS failed to take into account required rest breaks in determining the amount of staff GORDON LANE and COUNTRY OAKS required to ensure the rights afforded to Plaintiffs, members of the class, and all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically, the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" pursuant to Health & Safety Code §1599.1(a) (as expressly incorporated by Title 22 *Code of Regulations* §72527(a)(25). That in failing to take into account the required rest breaks, DEFENDANTS failed to adequately staff GORDON LANE and COUNTRY OAKS to meet the needs of the residents, thereby violating Plaintiffs' and each class member's rights set forth in *Health & Safety Code* §1599.1(a) and 22 CODE OF REGULATIONS §72527(a)(25).

75.    These reality of this understaffing and fraud perpetrated by the DEFENDANTS upon CMS will be proven by review of a few simple and available documents and as follows:

- The Facility CDPH "612 Form";
- The "Facility Assessment" prepared pursuant to 42 Code of Federal

Regulations § 483.70(e);

- The Facility form as to actual hours;

- Staff Assignment Sheets;

- CMS 671 and 672 forms;

- Payroll Based Journal;

- The Facility RUGS (Resident Utilization Group) and HIPPS scores;

- Facility Staffing Ladders;

- Medicare and Medicaid Cost Reports; and

- The time cards of each individual the DEFENDANTS claim were providing "direct nursing services" (as that term is defined in *Health & Safety Code* §1276.5) during the relevant time period.[5]

76.    The methodology for determining DEFENDANTS' violations and knowledge regarding the intentional fraudulent misrepresentations is easily provable on a facility-wide basis, as follows:

a)    DEFENDANTS' Medicare & Medicaid annual cost reports submitted under penalty of perjury and at the risk of criminal prosecution for inaccuracy, establishes what was spent on a

---

[5] The concern of course is that the defendant will now destroy the records to hide the truth of their deception and fraud from being exposed. Such an effort in spoliation would, at a minimum, clearly violate the provisions of 22 *Code of Regulations* §72329.1(h) which mandates as follows:

h) The facility shall retain the staff assignment record that it employs to comply with subsection (i) for each shift, the licensing and/or certification status of the staff, and the patient census for each shift. Records documenting staffing, including staff assignment records and payroll records, shall be retained for a minimum of three years. Unless the request is made by Department staff who are present at the facility, in which case it must be provided immediately, documentation of staffing shall be provided to the Department within ten days of the Department's request for the documentation. If the facility is unable to provide the documentation requested by the Department, it shall cease admitting new patients until it demonstrates to the Department that it has the staff necessary to provide the care needed by the patients by submitting the requested documentation. The facility shall also comply with the provisions of Section 1429.1 of the Health and Safety Code.

facility-wide basis.

b)    The first step in the analysis is to determine the collective resident acuity and care needs using resident assessment data and overall resident care plans. Data are available from the sources described above, including (1) facility assessments of the staffing resources needed to provide care; (2) data from aggregate Minimum Data Set ("MDS" resident assessments); (3) RUG scores; (4) CMS Form 672 summary of resident needs and costs reports; (5) resident ADL summaries; and (6) new Patient-Driven Payment Model ("PDPM") scores.

c)    The second step is to determine the actual staffing levels for Registered Nurses ("RN"), Licensed Practical Nurses ("LPN"), and Certified Nurse Aides ("CNA"). This step involves analyzing data from facility internal staffing reports and payroll data, payroll-based journal ("PBJ") data that facilities submit to CMS (since 2017 to replace CMS Form 671 data), and Medicare and Medicaid cost report data.

d)    The third step is to determine appropriate nurse staffing levels based on resident acuity. Sources of information include: (1) research studies, expert opinions, and professional recommendations on the minimum staffing levels; (2) CMS 1995 to 1997 staff time measurement study ("STM") study; (3) CMS expected staffing based on resident acuity and staffing time; and (4) new research to calculate minimum CNA staffing.

e)    The fourth step is to examine the empirical evidence regarding whether the facility staffing is adequate including federal and state deficiencies and complaints; accurate quality measures such as hospital readmission rates; missed or omitted care and staff turnover rates; adverse events/sentinel events; and other care problems.

f)    The fifth step is to compare the actual facility staffing to the appropriate nursing staffing levels based on acuity for each facility to identify gaps. The goal of the guide is to assist directors or nursing and administrators in nursing homes to ensure adequate nursing home staffing levels to protect resident health, safety, and well-being.

77.    It is alleged that at all relevant times hereto, DEFENDANTS as a systemic policy and practice always reported to DPH total nursing hours and NHPPD ratios which did not take into account the rest breaks required by Labor Code §226.7 and 8 California Code of Regulations §§ 11010–11150, ¶ 12 and §11160, ¶ 11. It is further alleged that at all times relevant hereto DEFENDANTS failed to take into account required rest breaks in determining the amount of staff GORDON LANE and COUNTRY OAKS required to ensure the rights afforded to Plaintiffs, members of

the class, and all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically, the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" pursuant to Health & Safety Code §1599.1(a) (as expressly incorporated by Title 22 *Code of Regulations* §72527(a)(25). That in failing to take into account the required rest breaks, DEFENDANTS failed to adequately staff GORDON LANE and COUNTRY OAKS to meet the needs of the residents, thereby violating Plaintiffs' and each class member's rights set forth in *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25).

### FIRST CAUSE OF ACTION

**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (Civ. Code, 1750, ET SEQ.)**
**[BY PLAINTIFF PARRISH INDIVIDUALLY AGAINST DEFENDANTS GORDON LANE AND THE MANAGEMENT DEFENDANTS]**

78.    As more specifically set forth in paragraphs 15 through 39 hereinabove, the liability of DEFENDANTS GORDON LANE and the MANAGEMENT DEFENDANTS under *Civil Code* § 1750, *et seq.* arises from the DEFENDANTS joint enterprise in that there was a such a unity of interest and ownership between the DEFENDANTS such that the individual distinctions between them had ceased and that the facts as alleged herein are such that an adherence to the fiction of the separate existence of the DEFENDANTS would, under the particular circumstances alleged herein, sanction a fraud and/or promote injustice. The MANAGEMENT DEFENDANTS controlled GORDON LANE to such a degree that it was a "mere instrumentality" of the MANAGEMENT DEFENDANTS used for an improper purpose.

79.    At all relevant times, GORDON LANE and the MANAGEMENT DEFENDANTS, and each of their tortious acts and omissions, as alleged herein, were done in concert with one another in furtherance of their common design and agreement to accomplish a particular result, namely maximizing profits from the

operation of GORDON LANE by underfunding and understaffing GORDON LANE despite the mandates of law in violation of Plaintiff Parrish's resident's rights.

80.    Upon information and belief, it is alleged that the misconduct of GORDON LANE and the MANGEMENT DEFENDANTS, which led to the violation of the rights of Plaintiff as alleged herein, was the direct result and product of the financial and control policies and practices forced upon GORDON LANE by the financial limitations imposed upon the facility by the MANAGEMENT DEFENDANTS, by and through the officers, directors and/or managing agents enumerated in hereinabove and others presently unknown to Plaintiff and according to proof at time of trial.

81.    GORDON LANE and the MANAGEMENT DEFENDANTS make representations to prospective residents and their families via their uniform admission agreements as set forth more fully hereinabove. Pursuant to this uniform representation that the services provided by DEFENDANTS GORDON LANE and SUN MAR would meet the particularized standards as set forth in the Resident Bill of Rights attached to the uniform Admission Agreement, DEFENDANTS GORDON LANE and SUN MAR were to provide all residents of GORDON LANE, including Plaintiff Parrish, services consistent with the mandatory requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations* §72527(a)(25). Specifically, the services represented by the DEFENDANTS that they would provide to each resident, including Plaintiff Parrish, via the contractual Admission Agreement arrangement with each resident, was explicitly stated by the DEFENDANTS to include the obligation, and representation as to the standard of care to be provided, that GORDON LANE would ensure the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" as to "Direct Caregivers." DEFENDANTS' uniform

39

representations in the Admission Agreement as to the nature of their services in this regard as to "Direct Caregivers" were false and actually known to be false when made by the DEFENDANTS.

82.    DEFENDANTS' representations were intended to induce and lure elderly and infirm residents (and their representatives) into agreeing to be admitted to GORDON LANE based on false and misleading representations without disclosing that DEFENDANTS cannot and do not provide the represented level and quality of care to residents. Before, during, and after Plaintiff Parrish's admissions process, DEFENDANTS actively and intentionally concealed from Plaintiff and/or his legal representative that DEFENDANTS have a long history of being serial violators of skilled nursing industry laws.

83.    It is alleged that the concealments by DEFENDANTS alleged in the immediately preceding paragraph were intended to deceive Plaintiff Parrish and/or his legal representative into believing that GORDON LANE was properly operated to induce Plaintiff into becoming a resident of the facility. Plaintiff, in infirm health, elderly and in need of skilled nursing care, and  a member of one of the most vulnerable segments of our society, and/or his legal representative, was unsophisticated and unknowledgeable in the operation of skilled nursing facilities in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, his extremely vulnerable status. Had the concealed facts been disclosed to Plaintiff and/or his legal representative, he would not have become a resident of GORDON LANE and would not have paid, or had monies paid on his behalf, for the substandard skilled nursing care at GORDON LANE.

84.    The representations GORDON LANE and the MANAGEMENT DEFENDANTS made in their uniform Admission Agreement as to "Direct Caregivers" were false and known to be false when made as set forth more fully hereinabove.

FIRST AMENDED CONSOLIDATED COMPLAINT FOR DAMAGES

85.    Plaintiff and/or his legal representative relied on these misrepresentations in becoming a resident of GORDON LANE. In reliance of these misrepresentations, Plaintiff made payments to the DEFENDANTS in return for these services as promised. Plaintiff suffered pecuniary harm in the form of lost payments and lost services when DEFENDANTS actually failed to provide these promised skilled nursing services as represented.

86.    As a result, GORDON LANE and the MANAGEMENT DEFENDANTS have violated and continue to violate the Consumer Legal Remedies Act, *Civil Code* §1770 et seq. ("CLRA") in at least the following respects:

  a.  In violation of section 1770(a)(5), the defendants' acts and practices constitute misrepresentations that the skilled nursing care that they purport to provide had characteristics, standards, performance and level of quality which it did not have; and

  b.  In violation of section 1770(a)(7), the defendants have misrepresented that the skilled nursing care that they purport to provide is of a particular standard, quality and/or grade, when it is not.

  c.  In violation of section 1770(a)(9), the defendants have misrepresented the nature of their skilled nursing services with the intent not to sell them as represented.

  d.  In violation of section 1770(a)(14), the defendants have misrepresented that the transaction of entering into admission agreement with Defendants conferred or involved rights, remedies, or obligations which the transaction did not have or involve, or which was prohibited by law.

87.    On May 13, 2022, pursuant to Section *Civil Code* § 1782, Plaintiff Parrish notified GORDON LANE and SUN MAR, and on August 15, 2022, IRVING BAUMAN, FRANK JOHNSON, ELI MARMUR, and WILLIAM PRESNELL in writing of the asserted violations of Section 1770 and demanded that DEFENDANTS rectify the conduct described above. Plaintiff is informed and believes that DEFENDANTS took no corrective action thereafter.

88.    Plaintiff suffered injury in fact and concrete harm in that he and/or his legal representative relied on the representations of the DEFENDANTS that he would be provided with minimum standards of care consistent with the requirements of

*Health & Safety Code* §1599.1(a) as incorporated into Title 22 *Code of Regulations* §72527(a)(25), yet did not receive this promised standard of care and suffered pecuniary harm by being deprived of the value of payments made for skilled nursing services when these services were not actually rendered consistent with the DEFENDANTS' representations.

89.     Plaintiff was a "senior citizen" as defined by Section 1761(f) and meets the requirements of Section 1780(b) to be entitled to an award of $5,000 in addition to the other remedies available under the CLRA.

90.     DEFENDANTS' conduct as alleged in this cause of action was, and is, malicious, oppressive and/or fraudulent.

## SECOND CAUSE OF ACTION

### VIOLATION OF RESIDENT RIGHTS (Health & Saf. Code §1430(b)) [BY PLAINTIFF PARRISH INDIVIDUALLY AGAINST DEFENDANTS GORDON LANE and THE MANAGEMENT DEFENDANTS]

91.     Plaintiff Parrish refers to, and incorporates herein by this reference, all paragraphs hereinabove, as though fully set forth herein.

92.     *Health & Safety Code* §1430(b) creates a private right of action for any resident or patient of a skilled nursing facility against the licensee of the facility that violates any rights of the resident or patient as set forth in the Patients' Bill of Rights.

93.     *Health & Safety Code* §1430(b) also provides that "a current or former resident or patient of a skilled nursing facility as defined in subdivision (c) of section 1250 may bring a civil action against the licensee of a facility who violates any applicable regulatory  rights of the resident or patient here to include the right to sufficient staff to meet the residents needs as required by 22 *Code of Regulations* §§72329 and 72329.1.

94.     As more specifically set forth in paragraphs 15 through 39 hereinabove, the liability of DEFENDANTS GORDON LANE and the MANAGEMENT DEFENDANTS under *Health & Safety Code* §1430(b) arises from the

42

DEFENDANTS joint enterprise in that there was a such a unity of interest and ownership between the DEFENDANTS such that the individual distinctions between them had ceased and that the facts as alleged herein are such that an adherence to the fiction of the separate existence of the DEFENDANTS would, under the particular circumstances alleged herein, sanction a fraud and/or promote injustice. The MANAGEMENT DEFENDANTS controlled GORDON LANE to such a degree that it was a "mere instrumentality" of the MANAGEMENT DEFENDANTS used for an improper purpose.

95.    At all relevant times, GORDON LANE and the MANAGEMENT DEFENDANTS, and each of their tortious acts and omissions, as alleged herein, were done in concert with one another in furtherance of their common design and agreement to accomplish a particular result, namely maximizing profits from the operation of GORDON LANE by underfunding and understaffing GORDON LANE despite the mandates of law in violation of Plaintiff Parrish's resident's rights.

96.    Upon information and belief, it is alleged that the misconduct of GORDON LANE and the MANAGEMENT DEFENDANTS, which led to the violation of the rights of Plaintiff as alleged herein, was the direct result and product of the financial and control policies and practices forced upon GORDON LANE by the financial limitations imposed upon the facility by the MANAGEMENT DEFENDANTS, by and through the officers, directors and/or managing agents enumerated in hereinabove and others presently unknown to Plaintiff and according to proof at time of trial.

97.    GORDON LANE and the MANAGEMENT DEFENDANTS systematically and systemically violated 22 *Code of Regulations* §§72329 and 72329.1 by failing to have "Direct Caregivers" Nursing service personnel employed and on duty in at least the number to provide the necessary nursing services for patients admitted for care. In doing so the DEFENDANTS have run afoul of the provisions of *Health & Safety Code* §1430(b).

98.    As a result of the systematic and systemic violations of 22 *Code of Regulations* §§72329 and 72329.1 by failing to have Nursing service personnel employed and on duty in at least the number to provide the necessary nursing services for patients admitted for care, Plaintiff Parrish failed to receive the care he was required to receive pursuant to California law and would not have entered the facility but for the above alleged reasonable reliance upon the representations of the Admission Agreement as to the Patient's Bill of Rights and suffered personal and real harm as the result of this misrepresentation and subsequent violations.

99.    Among other remedies, *Health & Safety Code* §1430(b) authorizes the recovery of statutory damages up to $500.00 per cause of action, attorneys' fees and costs. *Health & Safety Code* §1430(b). These remedies are cumulative to any other remedies provided by law. *Health & Safety Code* §1430(c). Given that the violation involves an elderly resident, the statutory damage award is subject to trebling under *Civil Code* §3345.

## THIRD CAUSE OF ACTION

**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (Civ. Code, 1750, ET SEQ.)**
**[BY PLAINTIFFS ROGDRIGUEZ, ASHARBRANER, and PARKER ON BEHALF OF THEMSELVES AND THE PROPOSED CLASS AGAINST ALL DEFENDANTS]**

100.    Plaintiffs refer to, and incorporate herein by this reference, all paragraphs hereinabove, as though fully set forth herein.

101.    As more specifically set forth in paragraphs 15 through 39 hereinabove, the liability of DEFENDANTS under *Civil Code* § 1750, *et seq.* arises from the DEFENDANTS joint enterprise in that there was a such a unity of interest and ownership between the DEFENDANTS such that the individual distinctions between them had ceased and that the facts as alleged herein are such that an adherence to the fiction of the separate existence of the DEFENDANTS would, under the particular circumstances alleged herein, sanction a fraud and/or promote injustice. The

MANAGEMENT DEFENDANTS controlled GORDON LANE and COUNTRY OAKS to such a degree that each facility was a "mere instrumentality" of the MANAGEMENT DEFENDANTS used for an improper purpose.

102. At all relevant times, DEFENDANTS, and each of their tortious acts and omissions as alleged herein, were done in concert with one another in furtherance of their common design and agreement to accomplish a particular result, namely maximizing profits from the operation of GORDON LANE and COUNTRY OAKS by underfunding and understaffing GORDON LANE and COUNTRY OAKS despite the mandates of law in violation of Plaintiffs resident's rights.

103. Upon information and belief, it is alleged that DEFENDANTS misconduct, which led to the violation of the rights of Plaintiffs as alleged herein, was the direct result and product of the financial and control policies and practices forced upon GORDON LANE and COUNTRY OAKS by the financial limitations imposed upon the facility by the MANAGEMENT DEFENDANTS, by and through the officers, directors and/or managing agents enumerated in hereinabove and others presently unknown to Plaintiff and according to proof at time of trial.

104. DEFENDANTS make representations to prospective residents and their families, and others similarly situated, via their uniform Admission Agreements as set forth more fully hereinabove. Pursuant to this uniform representation that the services provided by DEFENDANTS would meet the particularized standards as set forth in the Resident Bill of Rights attached to the uniform Admission Agreement, DEFENDANTS were to provide all residents of GORDON LANE and COUNTRY OAKS services consistent with the mandatory requirements of California *Health & Safety Code* §1599.1(a) as set forth in Title 22 *Code of Regulations* §72527(a)(25). Specifically, the services represented by DEFENDANTS that they would provide to each resident, via the contractual Admission Agreement arrangement with each resident, was explicitly stated by DEFENDANTS to include the obligation and representation as to the standard of care to be provided that GORDON LANE and

COUNTRY OAKS would ensure the rights afforded to all residents of skilled nursing facilities under *Health & Safety Code* §1599.1(a) and 22 *Code of Regulations* §72527(a)(25), most specifically the right to live in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" as to "Direct Caregivers." DEFENDANTS' uniform representations in the Admission Agreement as to the nature of their services in this regard as to "Direct Caregivers" were false and actually known to be false when made by DEFENDANTS.

105.  DEFENDANTS' representations were intended to induce and lure elderly and infirm residents (and their representatives) into agreeing to be admitted to GORDON LANE and COUNTRY OAKS based on false and misleading representations without disclosing that DEFENDANTS cannot and do not provide the represented level and quality of care to residents. Before, during, and after the admissions processes of Plaintiffs and each class member, DEFENDANTS actively and intentionally concealed from Plaintiffs and class members, and/or each's legal representative, that DEFENDANTS have a long history of being serial violators of skilled nursing industry laws.

106.  It is alleged that the concealments by DEFENDANTS alleged in the immediately preceding paragraph were intended to deceive Plaintiffs and members of the class, and/or each's legal representative, into believing that GORDON LANE and/or COUNTRY OAKS was properly operated to induce Plaintiffs and class members into becoming residents of either facility. Plaintiffs and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, and/or each's legal representative, were unsophisticated and unknowledgeable in the operation of skilled nursing facilities in the State of California and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status. Had the concealed facts been disclosed to Plaintiffs and members of the class, they would not have become

residents of GORDON LANE or COUNTRY OAKS and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing care at either facility.

107.    The representations DEFENDANTS made in their uniform Admission Agreement as to "Direct Caregivers" were false and known to be false when made as set forth more fully hereinabove.

108.    Plaintiffs and the class relied on these misrepresentations into becoming residents of the GORDON LANE and COUNTRY OAKS. In reliance of these misrepresentations, Plaintiffs and the class made payments to the DEFENDANTS in return for these services as promised. Plaintiffs and the class suffered pecuniary harm in the form of lost payments and lost services when DEFENDANTS actually failed to provide these promised skilled nursing services as represented.

109.    As a result, DEFENDANTS have violated and continue to violate the Consumer Legal Remedies Act, *Civil Code* §1770 et seq. ("CLRA") in at least the following respects:

a.  In violation of section 1770(a)(5), the defendants' acts and practices constitute misrepresentations that the skilled nursing care that they purport to provide had characteristics, standards, performance and level of quality which it did not have; and

b.  In violation of section 1770(a)(7), the defendants have misrepresented that the skilled nursing care that they purport to provide is of a particular standard, quality and/or grade, when it is not.

c.  In violation of section 1770(a)(9), the defendants have misrepresented the nature of their skilled nursing services with the intent not to sell them as represented.

d.  In violation of section 1770(a)(14), the defendants have misrepresented that the transaction of entering into admission agreement with Defendants conferred or involved rights, remedies, or obligations which the transaction did not have or involve, or which was prohibited by law.

110.    On May 13, 2022, pursuant to Section *Civil Code* § 1782, Plaintiff Parrish notified GORDON LANE and SUN MAR, and on August 15, 2022 IRVING BAUMAN, FRANK JOHNSON, ELI MARMUR, and WILLIAM PRESNELL, in writing of the asserted violations of Section 1770 and demanded that DEFENDANTS

rectify the conduct described above. Plaintiffs are informed and believe that DEFENDANTS took no corrective action thereafter.

111. It is alleged that Plaintiffs and members of the Class suffered injury in fact and concrete harm in that they relied on the representations of DEFENDANTS that they would be provided with minimum standards of care consistent with the requirements of *Health & Safety Code* §1599.1(a) as incorporated into Title 22 *Code of Regulations* §72527(a)(25), yet did not receive this promised standard of care and suffered pecuniary harm by being deprived of the value of payments made for skilled nursing services when these services were not actually rendered consistent with DEFENDANTS' representations.

112. In addition, these class members made monetary payments to DEFENDANTS in return for skilled nursing services of the standard promised by DEFENDANTS in the uniform Admission Agreement and its attachments which are incorporated into the Admission Agreement as alleged above. The class has suffered pecuniary harm in that DEFENDANTS did not provide such services of the standard represented. In addition, Plaintiffs and class members have suffered pecuniary harm in that DEFENDANTS misrepresented that entering into an Admission Agreement with DEFENDANTS conferred the statutory resident right under *Health & Safety Code* §1599.1 of Plaintiffs and class members to reside in a facility that employs "an adequate number of qualified personnel to carry out all of the functions of the facility" when in fact the transaction of entering into an admission agreement with DEFENDANTS did not confer such right.

113. Plaintiffs and members of the class are "senior citizens" as defined by Section 1761(f) and meet the requirements of Section 1780(b) to each be entitled to an award of $5,000 in addition to the other remedies available under the CLRA.

114. DEFENDANTS' conduct as alleged in this cause of action was, and is, malicious, oppressive and/or fraudulent.

/ / /

# FOURTH CAUSE OF ACTION

## VIOLATION OF RESIDENT RIGHTS (Health & Saf. Code §1430(b)) [BY PLAINTIFFS RODRIGUEZ, ASHABRANER, and PARKER ON BEHALF O F THEMSELVES AND THE PROPOSED CLASS AGAINST ALL DEFENDANTS]

115.   Plaintiffs refer to, and incorporate herein by this reference, all paragraphs hereinabove, as though fully set forth herein.

116.   *Health & Safety Code* §1430(b) creates a private right of action for any resident or patient of a skilled nursing facility against the licensee of the facility that violates any rights of the resident or patient as set forth in the Patients' Bill of Rights.

117.   *Health & Safety Code* §1430(b) also provides that a current or former resident or patient of a skilled nursing facility as defined in subdivision (c) of section 1250 may bring a civil action against the licensee of a facility who violates any applicable regulatory  rights of the resident or patient here to include the right to sufficient staff to meet the residents needs as required by 22 *Code of Regulations* §§72329 and 72329.1.

118.   As more specifically set forth in paragraphs 15 through 39 hereinabove, the liability of all DEFENDANTS under *Health & Safety Code* §1430(b) arises from DEFENDANTS' joint enterprise in that there was a such a unity of interest and ownership between the DEFENDANTS such that the individual distinctions between them had ceased and that the facts as alleged herein are such that an adherence to the fiction of the separate existence of the DEFENDANTS would, under the particular circumstances alleged herein, sanction a fraud and/or promote injustice. The MANAGEMENT DEFENDANTS controlled GORDON LANE and COUNTRY OAKS to such a degree that it was a "mere instrumentality" of the MANAGEMENT DEFENDANTS used for an improper purpose.

119.   At all relevant times, DEFENDANTS, and each of their tortious acts and omissions, as alleged herein, were done in concert with one another in furtherance of

their common design and agreement to accomplish a particular result, namely maximizing profits from the operation of GORDON LANE and COUNTRY OAKS by underfunding and understaffing GORDON LANE and COUNTRY OAKS despite the mandates of law in violation of Plaintiffs' and the class' resident rights.

120. Upon information and belief, it is alleged that the misconduct of DEFENDANTS, which led to the violation of the rights of Plaintiffs and the class as alleged herein, was the direct result and product of the financial and control policies and practices forced upon GORDON LANE and COUNTRY OAKS by the DEFENDANTS and their officers, directors and/or managing agents enumerated in hereinabove and others presently unknown to Plaintiffs and according to proof at time of trial.

121. DEFENDANTS systematically and systemically violated 22 *Code of Regulations* §§72329 and 72329.1 by failing to have "Direct Caregivers" Nursing service personnel employed and on duty in at least the number to provide the necessary nursing services for patients admitted for care. In doing so DEFENDANTS have run afoul of the provisions of *Health & Safety Code* §1430(b).

122. As a result of the systematic and systemic violations of 22 *Code of Regulations* §§72329 and 72329.1 by failing to have Nursing service personnel employed and on duty in at least the number to provide the necessary nursing services for patients admitted for care, DAVID RODRIGUEZ, JOAN ASHABRANER, and ERMA PARKER, as well as others similarly situated, failed to receive the care to which they were required to receive pursuant to California law and would not have entered GORDON LANE or COUNTRY OAKS but for the above alleged reasonable reliance upon the representations of the Admission Agreements as to the Patient's Bill of Rights and suffered personal and real harm as the result of this misrepresentation and subsequent violations.

123. Among other remedies, *Health & Safety Code* §1430(b) authorizes the recovery of statutory damages up to $500.00 per cause of action, attorneys' fees and

costs. *Health & Safety Code* §1430(b). These remedies are cumulative to any other remedies provided by law. *Health & Safety Code* §1430(c). Given that the violation involves elderly residents, the statutory damage award is subject to trebling under *Civil Code* §3345.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1.    For a Court order certifying that the action may be maintained as a class and/or representative action as proposed herein;

2.    For statutory damages and penalties pursuant to *Health & Safety Code* §1430(b);

3.    For actual damages in a total amount to exceed one thousand dollars pursuant to *Civil Code* §1780(a)(1);

4.    For civil penalties for "senior citizens" and "disabled persons" in the amount of $5,000 for each injured "senior citizen" and "disabled person" pursuant to *Civil Code* §1780(b);

5.    For punitive damages;

6.    For disgorgement of monies illegally gotten as to the First and Fourth Causes of Action alone;

7.    For treble damages pursuant to *Civil Code* Section 3345;

8.    For attorneys' fees and costs as allowed by law according to proof at the time of trial, including, but not limited to attorneys' fees pursuant to *Code of Civil Procedure* §1021.5 and *Health & §Safety Code* §1430(b); and

9.    For such other and further relief as the Court may deem just and proper.

DATED: November 25, 2024              **STEBNER GERTLER & GUADAGNI**


By: _____
    Kathryn A. Stebner
    Brian S. Umpierre

    Attorneys for Plaintiff and the Proposed
    Class

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands trial by jury.


DATED: November 25, 2024              **STEBNER GERTLER & GUADAGNI**


By: _____
    Kathryn A. Stebner
    Brian S. Umpierre

    Attorneys for Plaintiff and the Proposed
    Class

FIRST AMENDED CONSOLIDATED COMPLAINT FOR DAMAGES