UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAIL PARRISH, by and through Successor in Interest, Monica Parrish, et al., | Case No. 8:22-cv-01790-WLH-KESx |
| Plaintiffs, | REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| v. | |
| GORDON LANE HEALTHCARE, LLC, et al., | |
| Defendants. | |

This Report and Recommendation ("R&R") is submitted to the Honorable Wesley L. Hsu, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

On March 19, 2026, Plaintiffs filed a notice for an informal discovery conference ("IDC") seeking for discovery spoliation sanctions against Defendants Gordon Lane Healthcare, LLC ("Gordon Lane") and Country Oaks Partners, LLC ("Country Oaks").  (Dkt. 149.)  Plaintiffs contend that Defendants spoliated

1

electronically stored information ("ESI") in the form of documents called Facility Assessments ("FAs") and paper documents used to direct staff assignments called 530 Forms.  Plaintiffs request a recommendation that the trial judge instruct the jury "that it may infer that the spoiled evidence identified herein would have been unfavorable to Defendants."  (Dkt. 151 at 5.)

The parties submitted letter briefs with evidence (Dkt. 151, 154) and participated in an IDC with the magistrate judge on April 6, 2026 (Dkt. 157).

## II.

## DISCUSSION

### A.      The Facility Assessments.

### 1.      ESI Spoliation Law.

The law imposes upon litigants "a duty to preserve evidence which [they] know[] or reasonably should know is relevant to" pending or reasonably anticipated litigation.  In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006).  Federal Rule of Civil Procedure 37(e) governs the spoliation of ESI.  If (1) ESI "that should have been preserved" is (2) lost "because a party failed to take reasonable steps to preserve it;" (3) the ESI "cannot be restored or replaced through additional discovery;" and (4) the loss causes prejudice to the other party, then the district court can "order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  Certain sanctions, including an adverse inference instruction, are available only "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e)(2).

### 2.      Relevant Facts.

Federal regulations for skilled nursing facilities such as Defendants require that they create and update FAs, as follows:

> The facility must conduct and document a facility-wide assessment to
> determine what resources are necessary to care for its residents

competently during both day-to-day operations (including nights and weekends) and emergencies. The facility must review and update that assessment, as necessary, and at least annually. The facility must also review and update this assessment whenever there is, or the facility plans for, any change that would require a substantial modification to any part of this assessment.

42 C.F.R. § 483.71.  Per this same regulation, the FA must address certain topics, including (1) the number of residents; (2) the facility's resident capacity; (3) the care required by the resident population; (4) the staff competencies and skill sets that are necessary to provide the level and types of care needed; (5) services provided, such as physical therapy, pharmacy, behavioral health, and rehabilitation therapies; (6) all personnel, including managers, nursing and other direct care staff; and (7) technology resources, such as systems for electronically managing patient records.  42 C.F.R. § 483.71(a) and (b).  Facilities must retain and use the FA to "inform staffing decisions to ensure that there are a sufficient number of staff with the appropriate competencies and skill sets necessary to care for its residents" and for other purposes.  42 C.F.R. § 483.71(c).

At both Defendants' facilities, staff members create the FA using an electronic template that allows for data to be entered into fields.  (Dkt. 154 at 4; Dkt. 151-22 (sample template).)  The facility administrator is responsible for maintaining and updating the FA on a computer.  (Dkt. 151 at 3.)  When updating the FA, it was Defendants' standard practice to pull up the prior FA file and type in new data, thereby overwriting the old data.  (Dkt. 154 at 4.)  As explained at the IDC, when regulators conducted annual surveys, Defendants gave a hard copy of the current FA to the surveyor.

The lawsuit against Gordon Lane was originally filed in state court in August 2022.  (Dkt. 1 at 18.)  Gordon Lane appeared and removed the case to federal court in September 2022.  (Dkt. 1.)  The original complaint against Country

Oaks was filed in state court in December 2022.  (Case no. 8:23-cv-00195-WLH-KES, Dkt. 3 at 5.)  Country Oaks removed the case to federal court in February 2023.  (Id., Dkt. 3.)

There is no evidence that upon being served with this lawsuit, counsel asked the facility administrators to save hard copies of the FAs or stop overwriting old versions.  At the IDC, counsel Ms. Ho represented that the facility administrators were now doing so, having been told by counsel that saving each version was a "better practice."  Ms. Ho spoke with Defendants' IT staff who informed her that prior versions of the FAs could not be recovered electronically.  Ms. Ho also represented that Defendants had spoken to regulators to try to obtain copies, but they were not able to get them, and it was unclear why.  No one has yet subpoenaed state regulators to try to obtain copies.

**3.      Analysis as to Gordon Lane.**

a.      Fed. R. Civ. P. 37(e)(1).

As explained at the IDC, Gordon Lane produced a FA dated April 2024.  That document states that earlier updates were made in March, July, and December of 2023 and in February 2024.  Plaintiffs seek those four versions, which Gordon Lane concedes it does not have.  (Dkt. 151 at 3.)

First, these versions of the FA should have been preserved.  They were all created after Gordon Lane appeared in this lawsuit.  They speak directly to the subject of the lawsuit, i.e., whether Gordon Lane had sufficient staffing levels.

Second, these versions were lost because Gordon Lane failed to take reasonable steps to preserve them.  No one instructed Gordon Lane's employees to save each new version as a separate file without overwriting older versions, although that is now being done and could have been done in 2023 and 2024.  (Dkt. 151 at 3-4.)

Third, it is unclear whether this ESI can be replaced through additional discovery.  At least once a year, Gordon Lane provided a hard copy of the FA to

4

state regulators who may (or may not) have retained it.  While informal inquiries have not been sufficient to find the missing FAs, a subpoena might be.

Fourth, Plaintiffs have been prejudiced by Gordon Lane's failure to preserve these FAs.  The FA "sets forth Defendants' views of the resources necessary to provide sufficient staffing based on residents' assessed care needs." (Dkt. 151 at 4.)  They would document significant changes in patient population levels and care needs.  (Id.)  Data and potential admissions in the FA would be highly relevant.

This R&R, therefore, recommends that (1) Gordon Lane bear the cost of sending a subpoena to the appropriate regulators to determine if any of the missing FAs can be located by such means; and (2) the discovery cutoff date (which is April 19, 2026) be extended for this purpose.  Gordon Lane should file a status report in 45 days advising what response and what documents (if any) it received in response to such subpoenas.

> b.    Fed. R. Civ. P. 37(e)(2).

There is no evidence that the employees who overwrote the old versions of the FA did so with the intent to deprive Plaintiffs of use of the information in this litigation.  On the contrary, the employees continued to do as they had always done because they were not instructed by counsel to do something different.  This R&R, therefore, does not recommend imposing a sanction, such as an adverse inference instruction for lost ESI, that requires a finding of intent to deprive.

### 4.    Analysis as to Country Oaks.

The FAs missing for Country Oaks are the FAs from 2022 and 2023.[1] (Dkt. 151 at 3.)

Plaintiffs have not shown that Country Oaks had a duty under Rule 37(e) to

---

[1] Initially Plaintiffs also sought the 2025 FA, but at the IDC, Defendants represented that 2025 would be produced.

preserve the 2022 FA.[2]  It is unclear when that was prepared, and Plaintiffs did not sue Country Oaks until December 2022.  Country Oaks did, however, have a duty to preserve the 2023 FA, which was created post-litigation and relevant to the claims in this lawsuit.

As for the 2023 FA, it was lost due to the failure to take reasonable steps to preserve it, i.e., the failure to instruct staff to stop overwriting old versions of the FA.  Counsel has confirmed that it cannot be recovered from computer memory.  Its loss is prejudice to Plaintiffs for the same reasons discussed above.

But like the missing Gordon Lane FAs, this Country Oaks FA may be in the possession of state regulators.  This R&R, therefore, recommends that (1) Country Oaks bear the cost of sending a subpoena to the appropriate regulators to determine if the 2023 FA can be located; and (2) the discovery cutoff date be extended for this purpose.  Country Oaks should file a status report in 45 days advising what response and what documents (if any) it received in response to such subpoenas.

**B.     The 530 Forms.**

**1.     Non-ESI Spoliation Law.**

Because, as discussed below, the 530 Forms are not ESI, a different legal standard for spoliation applies.  "A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence."  Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).  This power includes the power to sanction the responsible party by instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party.  Id.  In deciding what sanction, if any, to impose, district courts should consider whether the litigant who lost the

---

[2] Whether Defendants had a duty to preserve these documents imposed by government regulations is beyond the scope of this R&R, which addresses only Defendants' request for discovery spoliation sanctions.

6

relevant evidence acted in bad faith or merely inadvertently, and whether the lost information was available through alternative sources.  See Med. Lab. Mgmt. Consultants v. ABC, 306 F.3d 806, 823 (9th Cir. 2002) (holding district court did not abuse its discretion in declining to issue an adverse inference instruction). "When relevant evidence is lost accidentally or for an innocent reason, an adverse evidentiary inference from the loss may be rejected." Id. at 824.  On the other hand, a finding of bad faith is not a "prerequisite" to giving an adverse inference instruction. Glover, 6 F.3d at 1329.

### 2.  Relevant Facts.

Skilled nursing facilities, like Defendants, use 530 Forms "to record daily staffing assignments for purposes of documenting nursing hours worked by direct caregivers that are not otherwise captured in payroll records, or by caregivers whose primary duties do not consist of nursing services." (Dkt. 154 at 5.)  Because the creation of the form depends on operational needs, on some days, no 530 Form may be created.  On other days, multiple 530 Forms for multiple shifts may be created.  (Id.)  At the IDC, Plaintiffs' counsel represented that for the months when Defendants produced 530 Forms, there was typically at least one form per day. The forms are used to document the DHPPD (Direct Care Service Hours Per Patient Day) required for compliance with minimum staffing requirements, facts relevant to this lawsuit.  (Dkt. 151 at 3.)  The forms may be reviewed by auditors. (Dkt. 151-21 at 6 (guidelines published by California Department of Public Health.)  These are paper forms filled out by hand.  After a certain volume accumulates, they are placed in a binder, and the binders are stored in a secure location at each facility until moved to off-site storage.  (Id. at 4.)

### 3.  Analysis as to Gordon Lane.

The 530 Forms that Plaintiffs contend were spoliated are: "August 17-31, 2019; all of 2020; January-February 2021; October-December 2022; October 27, 2024; and January 4-11, 24- 27, 2025." (Dkt. 151 at 4.)

Gordon Lane had appeared in this lawsuit by September 2022. (Dkt. 1.) The 530 Forms that would have been created after the duty to preserve relevant evidence arose are October-December 2022; October 27, 2024; and January 4-11, 24-27, 2025.

As to when or how these documents were lost, the parties have no evidence. At the IDC, Ms. Ho represented that her client simply does not know why the missing 530 Forms are not where they are supposed to be. It is undisputed that it was Gordon Lane's standard practice to keep these documents, even before being sued. It is unclear if the documents were intentionally removed by an employee, misplaced by someone who meant to store them securely, accidentally discarded, or some other scenario.

As for October 27, 2024, little or no prejudice results from the loss of this document. It may have never existed. The parties have data from October 26 and 28. This R&R, therefore, declines to recommend any spoliation sanction based on October 27, 2024.

As for the January 2025 dates (12 days), it is unclear what prejudice, if any, stems from the loss of these documents. The parties have data from more than half of the dates in January 2025, as well as the months before and after. Nothing in the moving papers discusses anything unusual happening in January 2025. This R&R, therefore, declines to recommend any spoliation sanction based on the January 2025 days.

The October-December 2022 period, however, is more worrisome. These documents were created very shortly after litigation commenced. They should have been the subject of a litigation hold, but apparently, they were not (although this is not the reason why they are unavailable). It is unclear how, if at all, the parties could reconstruct the details of staffing assignments for these dates. Ultimately, Plaintiffs bear the burden of proving entitlement to spoliation sanctions. Plaintiffs have not explained whether some other documents, like

payroll records or employee timecards, could be used to determine staffing assignments for these dates.  This R&R, therefore, declines to recommend any spoliation sanction based on the October-December 2022 period.  This R&R does not recommend that the issue be re-briefed after additional discovery because the fact discovery cutoff date (April 19, 2026) is only about 10 days away.

### 4.   Analysis as to Country Oaks

In the letter briefs, Plaintiffs contended that the following 530 Forms were missing: "February-June 2020; January-February 2021; January-April 2022; July 2022; October-December 2023; April-September 2025." (Dkt. 151 at 4.)  At the IDC, Ms. Ho represented that some or all of these had been produced.  After the IDC, Plaintiffs' counsel sent an email identifying the following 530 Forms as still missing: February-March 2020; April 28-29, 2022; and October 2023.

Country Oaks was not sued until December 2022.  The only missing documents that might qualify for spoliation sanctions, therefore, are from October 2023.  As to those documents, again, there is no evidence as to how or why they were lost.  The parties have data from the months before and after.  It may be that staffing assignments can be recreated from other discovery, such as payroll records or employee timecards.  This R&R declines to recommend any spoliation sanction for the missing October 2023 530 Forms.

## C.   Shortened Objections Period.

Although 28 U.S.C. § 636(b)(1) generally provides parties with 14 days to object to R&Rs, the district court "need not afford the parties the full amount of time allotted in the statute," which "is a maximum not a minimum." Tripati v. Drake, 908 F.2d 977 (9th Cir. 1990).  A shortened objections period is appropriate, for example, where a party will be "irrevocably prejudiced." Esco Marine Inc. v. SS Pacific Star, No. 11-1353, 2011 WL 5026192, at *1 n.1, 2011 U.S. Dist. LEXIS 122245m at *1-2 n.1 (E.D. Cal. Oct. 21, 2011).

Here, all parties are represented by counsel, and counsel agreed to resolve

9

this dispute via the summary IDC process. The discovery cutoff date is only 10 days away. This R&R, therefore, sets a shortened objections period. The parties may file any objections to this R&R no later than **Monday, April 13, 2026**.

## III.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this R&R; (2) extending the discovery cutoff date to allow Defendants to subpoena state regulators who might have a copy of missing FAs; (3) requiring Defendants to file a status report within 45 days describing what they received in response to these subpoenas; and (4) otherwise DENYING the motion for spoliation sanctions.

DATED: April 9, 2026

_Karen E. Scott_
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE