JENNIFER STEEVE, ESQ. (SBN 308082)
KATHLEEN A. STIMELING, ESQ. (SBN 209226)
BRIAN O. WATSON, ESQ., *PRO HAC VICE*
MADELINE HOOKS, ESQ. (SBN 363768)
**RILEY SAFER HOLMES & CANCILA LLP**
100 Spectrum Center Drive, Suite 650
Irvine, California 92618
Office: (949) 359-5500
Fax: (949) 359-5501
E-mail: jsteeve@rshc-law.com
          mhooks@rshc-law.com
          docketdept@rshc-law.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| GAIL PARRISH by and through Successor in Interest, Monica Parrish; DAVID RODRIGUEZ, by and through Successor in Interest Beverly Rodriguez; JOAN ASHABRANER, by and through her Successor in Interest Susan Ashabraner;<br><br>Plaintiffs,<br><br>vs.<br><br>GORDON LANE HEALTHCARE, LLC; SUN MAR MANAGEMENT SERVICES; IRVING BAUMAN; FRANK JOHNSON; ELI MARMUR; WILLIAM PRESNELL and DOES 1-150, inclusive,<br><br>Defendants. | CASE NO. 8:22-CV-01790-WLH-KES (Lead)<br>CASE NO. 8:22-CV-00195-WLH-KES<br>*[Assigned to the Honorable Wesley L. Hsu – Dept. 9B]*<br>(Orange County Superior Court Case No. 30-2022-01276234-CU-MC-CXC)<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – JOINT OPENING BRIEF**<br><br>Date: September 4, 2026<br>Time: 11:00 AM<br>Courtroom: Dept. 9B<br><br>**Action Filed:** August 17, 2019<br>**Trial Date:** January 4, 2027 |
| ERMA PARKER, by and through her Attorney in Fact, BRUCE PARKER,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTRY OAKS PARTNERS, LLC; SUN MAR MANAGEMENT SERVICES; and DOES 1-150, inclusive,<br><br>Defendants. | |

## TABLE OF CONTENTS

I. Introduction...................................................................................................1

    A. Moving Parties' Introduction.................................................................1

    B. Opposing Parties' Introduction .............................................................2

II. Statement of Facts..........................................................................................5

    A. Moving Parties' Statement of Facts.......................................................5

    B. Opposing Party's Statement of Facts.....................................................8

III. Legal Standard .............................................................................................10

IV. Analysis........................................................................................................10

    A. Moving Parties' Argument 1 ...............................................................10

        1. Summary Judgment Should Be Granted on the Section 1430(b) Claim Because Plaintiffs Have Not Established a Violation of the Patient Bill of Rights. ................................................................10

            a. The Section 1430(b) Subclasses Are Limited to a Section 1599.1 Claim. .......................................................................11

            b. A Section 1276.5 Regulatory Violation Does Not Make a Section 1430(b) Claim. ......................................................12

            c. Plaintiffs' Section 1599.1 Claim Here Fails Because Plaintiffs' Experts Concede They Have Not Performed an Adequacy-of-Staffing Analysis Under Section 1599.1...13

        2. Opposing Party's Response – The Violation of an Enumerated Right in the Patients' Bill of Rights is Not Required to Pursue a Claim Under § 1430(b).........................................................................18

            a. Plaintiffs' § 1430(b) claim seeks to enforce the right of California skilled nursing residents to a baseline minimum level of direct nursing staffing.........................18

            b. Mandatory minimum direct nursing staffing levels are the baseline measure of "adequate" under HSC §1599.1. ....22

            c. In this case the staffing "adequacy" determination under HSC § 1599.1 does not require an examination of resident acuity. ................................................................................22

    B. Moving Parties' Argument 2 ...............................................................26

        1. Summary Judgment Should Be Granted on Both Claims Because Class Members Were Not Injured and Incurred No Damages...............................................................................................26

a. Summary Judgment Is Warranted. ...................................26

2. Opposing Party's Response – All Subclass Members Were Injured and Suffered Damage as a Result of Defendants' Wrongdoing. ..................................................................29

a. Plaintiffs and Subclass Members satisfy Article III standing by virtue of the payment of money...................29

b. Plaintiffs satisfy *Healy v. Milliman*...............................30

C. Moving Parties' Argument 3 ................................................30

1. Summary Judgment Should Be Granted for Sun Mar Because It Made No Representation and Is Not a Facility Licensee. .........30

a. Sun Mar Made No Misrepresentation. ...............................30

b. Sun Mar Is Not the Licensee Under Section 1430(b). ....31

2. Opposing Party's Response – Defendants Are a Single Enterprise Subject to Joint and Several Liability .....................31

a. Sun Mar is subject to liability under the CLRA and §1430(b). ...........................................................................34

D. Moving Parties' Argument 4 ................................................34

1. Summary Judgment Should Be Granted Without Admissible Plaintiffs' Expert Evidence..........................................................35

2. Opposing Party's Response ....................................................35

E. Moving Parties' Argument 5 ................................................35

1. Summary Judgment Should Be Granted on the CLRA Claim Because Plaintiffs Have Not Established Any CLRA Element.35

a. Misrepresentation ............................................................35

b. Reliance ............................................................................36

c. Damages ...........................................................................38

2. Opposing Party's Response – Defendants' Motion for Summary Judgment Regarding Plaintiffs' CLRA Claim Should Be Denied Because There Are Triable Issues of Fact ................................39

a. Applicable legal standards ...............................................39

b. There are triable issues of fact regarding Defendants' misrepresentations and concealments. .............................40

c. Defendants' Misrepresentations and Concealments Were Material and Give Rise to An Inference of Classwide

- ii -

Reliance ........................................................................................41

d.    Defendants Have Not Rebutted the Inference of Classwide Reliance.............................................................42

e.    Defendants May Not Assert a "Benefit of the Bargain" Defense ....................................................................44

f.    Plaintiffs Have Suffered "Damage" Under the CLRA ...45

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bingham v. Holder*
  637 F.3d 1040 (9th Cir. 2011)...................................................................................43

*Brazil v. Dell Inc.*
  585 F. Supp. 2d 1158 (N.D. Cal. 2008).....................................................................38

*Cohen v. Trump*
  303 F.R.D. 376 (S.D. Cal. 2014).................................................................................43

*Daniel v. Ford Motor Co.*
  806 F.3d 1217 (9th Cir. 2015).....................................................................................42

*Favell v. Univ. of S. Cal.*
  No. CV 23-846-GW-MARx, 2023 WL 10406551 (C.D. Cal. July 5,
  2023).............................................................................................................................44

*Gonzaga Univ. v. Doe*
  536 U.S. 273 (2002) .............................................................................................19, 20

*Healy v. Milliman, Inc.*
  164 F.4th 701 (9th Cir. 2026)...........................................................................passim

*Heredia v. Sunrise Senior Living, Inc.*
  No. 8:18-cv-01974-JLS-JDE, 2021 WL 6104188 (N.D. Cal. 2021) ...............42

*Heredia v. Sunrise Senior Living, LLC*
  No. 22-55332, 2023 WL 4930840 (9th Cir. Aug. 2, 2023)...............................30

*Hinojos v. Kohl's Corp.*
  718 F.3d 1098 (9th Cir. 2013).....................................................................38, 44, 45

*Horti v. Nestle HealthCare Nutrition, Inc.*
  No. 21-CV-09812-PJH, 2022 WL 2441560 (N.D. Cal. July 5, 2022).............38

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod.
Liab. Litig.*
  295 F. Supp. 3d 927 (N.D. Cal. 2018).......................................................................29

*In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*
  54 F.4th 28 (1st Cir. 2022) .........................................................................................30

*In re Nat'l Western Life Ins. Deferred Annuities Litig.*
  No. 3:05-cv-1018-GPC-WVG, 2013 WL 593414 (S. D. Cal. Feb.
  14, 2013)......................................................................................................................43

*In re Sony PS3 Other OS Litig.*
  551 Fed. Appx. 916 (9th Cir. 2014) ..........................................................................39

*Krueger v. Wyeth*
  396 F. Supp. 3d 931 (S.D. Cal 2019) ........................................................................39

*Low v. Trump University LLC*
  No.: 3:10-cv-00940-GPC-WVG, 2016 WL 6647793 (S.D. Cal.
  Nov. 10, 2016)............................................................................................................44

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) ...................................................................................................26

*Lytle v. Nutramax Lab.'s, Inc.*

114 F.4th 1011 (9th Cir. 2024).................................................................................42

*MacRae by & through Watters v. HCR Manor Care Svcs., LLC*
691 Fed.Appx. 476 (9th Cir. 2017) ............................................................4, 41

*Marolda v. Symantec Corp.*
672 F. Supp. 2d 992 (N.D. Cal. 2009)................................................................35

*McGee v. S-L Snacks Nat'l*
982 F.3d 700 (9th Cir. 2020) .............................................................................39

*Molly v. RK Netmedia, Inc.*
No. CV 09-02614 MMM (AGRx), 2009 WL 10669608 (C.D. Cal. Oct. 8, 2009) ....................................................................................................43

*Noohi v. Johnson & Johnson Consumer, Inc.*
146 F.4th 854 (9th Cir. 2025)......................................................................41, 42

*Pac. Fruit Express Co. v. Akron, Canton & Youngstown R.R. Co.*
524 F.2d 1025 (9th Cir. 1975)............................................................................10

*Parth v. Pomona Valley Hosp. Med. Ctr.*
630 F.3d 794 (9th Cir. 2010)..............................................................................10

*PetConnect Rescue, Inc. v. Salinas*
656 F. Supp. 3d 1131 (S.D. Cal. 2023) .............................................................34

*Plascencia v. Lending 1st Mortg.*
No. C 07-4485 CW, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011) ...............43

*Rojas-Lozano v. Google, Inc.*
159 F. Supp. 3d 1101 (N.D. Cal. 2016)..............................................................31

*Ruiz v. Celsius Holdings, Inc.*
2021 WL 5811264 (S.D. Cal. Jul. 28, 2021)......................................................29

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) ...........................................................................................27

*Stearns v. Ticketmaster Corp.*
655 F.3d 1013 (9th Cir. 2011))...........................................................................43

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007) .............................................................................31

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) ......................................................................................27, 29

*United States v. $133,420.00 in U.S. Currency*
672 F.3d 629 (9th Cir. 2012)..............................................................................27

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011) ...........................................................................................13

*Walsh v. Kindred Healthcare*
798 F. Supp. 2d 1073 (N.D. Cal. 2011)....................................................12, 13, 21

*Wehlage v. EmpRes Healthcare, Inc.*
791 F. Supp. 2d 774 (N.D. Cal. 2011).........................................................passim

*Wiener v. Dannon Co., Inc.*
255 F.R.D. 658 (C.D. Cal. 2009) .......................................................................36

*Williams v. Gerber Prods. Co.*
552 F.3d 934 (9th Cir. 2008)..............................................................................39

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Yastrab v. Apple Inc.*
  No. 5:14–cv–01974–EJD, 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ....................................................................................................... 35

**STATE CASES**

*Alvarado v. Selma Convalescent Hosp.*
  153 Cal.App.4th 1292 (2007) ........................................................... 12, 13, 21

*Bower v. AT&T Mobility, LLC*
  196 Cal. App. 4th 1545 (2011) .................................................................. 27

*Collins v. eMachines, Inc.*
  202 Cal. App. 4th 249 (2011) .................................................................... 40

*Daugherty v. Am. Honda Motor Co., Inc.*
  144 Cal. App. 4th 824 (2006) .................................................................... 40

*Durell v. Sharp Healthcare*
  183 Cal. App. 4th 1350 (2010) ............................................................. 36, 38

*Hansen v. Newegg.com Americas, Inc.*
  25 Cal. App. 5th 714 (2018) ..................................................................... 45

*In re Vioxx Class Cases*
  180 Cal. App. 4th 116 (2009) .................................................................... 36

*Jarman v. HCR ManorCare, Inc.*
  10 Cal. 5th 375 (2020) ............................................................................. 31

*Kwikset Corp. v. Sup. Ct.*
  51 Cal. 4th at 332-33 (2011) ............................................................... 44, 45

*Las Palmas Associates v. Las Palmas Center Associates*
  235 Cal.App.3d 1220 (1991) ..................................................................... 32

*Meyer v. Sprint Spectrum L.P.*
  45 Cal.4th 634 (2009) .......................................................................... 27, 38

*New Commune DTLA LLC v. City of Redondo Beach*
  115 Cal.App.5th 111 (2025) ...................................................................... 24

*Sevidal v. Target Corp.*
  189 Cal. App. 4th 905 (2010) ............................................................ 28, 37, 38

*Shuts v. Covenant Holdco LLC*
  208 Cal. App. 4th 609 (2012) ............................................................... passim

*Sonora Diamond Corp. v. Superior Court*
  83 Cal.App.4th 523 (2000) ....................................................................... 32

**STATE STATUTES**

Cal. Civ. Code § 1761(c) ............................................................................ 34

Cal. Civ. Code § 1770(a) ...................................................................... 31, 34

Cal. Civ. Code § 1780(a) ............................................................................ 34

Cal. Health & Safety Code § 1276.5(a) ....................................................... 14

Cal. Health & Safety Code § 1276.65 ..................................................... 21, 24

Cal. Health & Safety Code § 1276.7(b) ............................................... 19, 22, 24

Cal. Health & Safety Code § 1430(b)......................................................................11, 19, 31
Cal. Health & Safety Code § 1599.1 ................................................................passim
Cal. Health & Safety Code § 1599.61(a)......................................................................8

## RULES AND REGULATIONS

22 § CCR 72329.2(a)......................................................................24
22 CCR § 72329.1(a)......................................................................21, 23, 24
22 CCR § 72329.1(f) ......................................................................21
22 CCR § 72329.1(g)......................................................................22
22 CCR § 72501 ......................................................................31
22 CCR § 72516 ......................................................................8
22 CCR § 72516(a)......................................................................40
22 CCR § 72527(a)(25) ......................................................................11
42 C.F.R. § 483.35......................................................................15, 24
Fed. R. Civ. P. 56(a) ......................................................................10
Fed. R. Civ. P. 9(b) ......................................................................31

## OTHER AUTHORITIES

Jud. Council of Cal. Civ. Jury Instruction 4700 ......................................................................39
Use of Nursing Home Compare Website Appears Limited By Lack of Awareness and Initial Mistrust of the Data. *Health Affairs* 35(4) ..................37

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.   Introduction

### A.   Moving Parties' Introduction

Plaintiffs assert class claims of alleged understaffing at two skilled nursing facilities operated by Defendants Gordon Lane Healthcare, LLC and Country Oaks Partners, LLC.  Plaintiffs, on behalf of four certified subclasses comprising former and current residents of those facilities, seek relief under California Health & Safety Code Section 1430(b) and the Consumer Legal Remedies Act ("CLRA") (Civ. Code § 1750, *et seq.*).  Plaintiffs allege that the California Standard Admission Agreement given to residents upon admission, including the Resident Bill of Rights, uniformly represents that those facilities would "employ an adequate number of qualified personnel to carry out all functions of the facility," and that Defendants' provision of this Bill of Rights constitutes a false representation.  First Am. Cons. Compl. ("FACC"), ¶ 49 (Dkt. 121).  Based on this theory, Plaintiffs bring their Section 1430(b) and CLRA claims against Gordon Lane, Country Oaks, and Sun Mar Management Services.  (Plaintiffs have agreed to dismiss the other defendants.)

The record has crystallized after exhaustive discovery on Plaintiffs' theory, confirming that:

(1)   Plaintiffs did not perform the required analysis, and therefore have no admissible evidence, to prove up a violation of Section 1430(b);

(2)   Plaintiffs have suffered no articulable injury under either claim;

(3)   non-facility Sun Mar made no alleged representation nor can it violate the Patient Bill of Rights;

(4)   Plaintiffs' expert testimony fails under Rule 702 and *Daubert*, without which they cannot proceed; and

(5)   Plaintiffs have not satisfied all elements of their CLRA claim.

As a result, because Plaintiffs cannot establish the elements of their claims with admissible evidence, Defendants are entitled to summary judgment.

**B.     Opposing Parties' Introduction**

Plaintiffs and Class Representatives Rodriguez, Ashabraner, and Parker are pursuing claims on behalf of the certified subclasses for violations of their collective right to reside in an adequately staffed skilled nursing facility. At trial, Plaintiffs will prove that Defendants violated two separate legal requirements contained at 22 CCR §§ 72392, 72392.1, and 72329.2(a), and Health & Safety Code (HSC) § 1599.1. The former require skilled nursing facilities to provide a minimum of 3.5 and 2.4 hours per patient day (HPPD) of direct nursing time as a floor for what is "adequate" to carry out the nursing function. The latter requires skilled nursing facilities to provide adequate staffing of qualified personnel to carry out the functions of the facility. Defendants' violations of these separate legal requirements are the predicates for the class claims under HSC § 1430(b) and the Consumer Legal Remedies Act ("CLRA"), Civ. Code, §1750, *et seq.*

Plaintiffs' expert Christopher Cherney describes the universal acceptance within the California skilled nursing industry of the mandatory minimums as the floor for direct care nursing staffing necessary to care for frail, dependent adults who tend to comprise the skilled nursing population. JAF 31, 52, 56 (Umpierre Dec., Ex. 5 at ¶¶ 17, 19, 21, 36; Ex. 1 at 25:10-17, 36:22-37:11, 39:9-18, 49:25-50:16, 51:6-12, 59:23-60:7, 117:14-118:3). As Mr. Cherney testified, "That is what the community of California nursing home operators, licensees, administrators, directors of nursing, we all understand that you have to meet the minimums if you're going to be in the conversation about sufficient" staffing. JAF 31 (Umpierre Decl., Ex. 1 at 50:17-21).  All skilled nursing residents in California are informed of their right to an adequate number of staff by operation of the Resident Bill of Rights appended to the standard Admission Agreement that is used by skilled nursing facilities in California. JAF 3 (Umpierre Decl., Ex. 33 at ¶ 34 ).

When it certified the four subclasses currently represented by Ms. Rodriguez, Ms. Ashabraner, and Mr. Parker, the Court concluded that §1599.1 provided class

- 2 -

members a right to an "adequate number of qualified personnel to carry out all of the functions of the facility" (*see id.* at 10:6-14 (quoting HSC § 1599.1 and citing *Shuts v. Covenant Holdco LLC,* 208 Cal. App. 4th 609, 620 (2012)). The Court also determined that Plaintiffs' expert Dr. Harrington proposed an acceptable methodology to make that determination with regard to staffing at Gordon Lane and Country Oaks. *See* DE-66 at 9:6-11:14; JAF 15, 45 (Umpierre Decl., Ex. 24 & DE-143 at 9-10).

Dr. Harrington and Mr. Cherney agree that skilled nursing facilities in California must provide a baseline minimum level of 3.5/2.4 direct nursing HPPD to their residents. The 3.5/2.4 HPPD requirements set the floor from which resident acuity is *thereafter* considered to account for the time needed to assist residents above and beyond the minimum level required by law. JAF 18, 20, 23, 28 (Umpierre Decl., Ex. 2 at ¶ 31 (Harrington Decl.); *id.* at Ex. 5 at ¶¶ 21, 36 & 37 (Cherney Rule 26 Report); *see also* 22 CCR § 72329.1(a) ("The staffing requirements required by this section are *minimum standards only.* Skilled nursing facilities shall employ and schedule *additional staff as needed to ensure* quality resident care based on the needs of individual residents and to ensure compliance with all relevant state and federal staffing requirements.") (emphasis added).

Since class certification was granted, Plaintiffs' expert Valerie Gray, utilizing the method employed by California's Department of Health in AFL 21-11 and based on Defendants own staffing records obtained in discovery, calculated the number of days Gordon Lane and Country Oaks direct nursing staffing levels were above or below California's mandatory minimum levels of 3.5 hours per patient day (HPPD) of total nursing time and 2.4 HPPD of CNA time during the respective subclass periods. As set forth in her Rule 26 Reports and supporting materials, Gordon Lane and Country Oaks were chronically staffed below the mandatory minimums during that time – Gordon Lane averaging nearly 46% and Country Oaks almost 60% of days for which data are available below the 3.5 total HPPD

- 3 -

mandatory minimum; and Gordon Lane averaging nearly 50% and Country Oaks over 80% of days for which data are available below the 2.4 total CNA HPPD mandatory minimum during the subclass periods.  JAF 17, 43, 44, 47 (Umpierre Decl., Ex. 4 at ¶¶ 51, 53 (Gray Rule 26 Report); Ex. 49 at ¶¶ 11, 13).

The common proof set forth in Ms. Gray's current analysis reflects the same beginning point Dr. Harrington proposed at class certification to determine the adequacy of direct nursing staffing, *i.e.*, does it comply with CA minimum standards. JAF at 18, 20, 23, 29-31, 39, 42, 52 (Umpierre Decl., Ex. 2 at ¶31 ("I will determine whether the facility met the minimum staffing requirements established by California. California imposes a bare numeric minimum of 3.5 nursing hours per patient day. (Cal. Code Regs., tit. 22, § 72329.2.) Since this standard is the absolute minimum, falling below this standard is inadequate.")).

Because direct nursing staffing levels at Gordon Lane and Country Oaks were chronically below the mandatory minimum levels set forth above, resident acuity analysis is unnecessary.  Rather, by routinely understaffing their facilities at below the bare minimum level of direct nursing staffing HPPD required in §§72329.1 and 72329.2(a), Defendants violated California law.   In the same vein, the mandatory minimum HPPD sets the floor for the additional requirement in HSC §1599.1 imposed on facilities to employ an "adequate number" of qualified nursing staff to carry out the nursing function. By definition, therefore, the failure to meet the bare minimums violates both §72329.1 and §1599.1, making them actionable under HSC §1430(b) and the CLRA.  JAF 44, 46, 47 (Umpierre Decl., at Ex. 4); *See also MacRae by & through Watters v. HCR Manor Care Svcs., LLC,* 691 Fed.Appx. 476, 477 (9th Cir. 2017) ("Although skilled nursing facilities must always maintain a staffing level of 3.2 [HPPD], [HSC] 1276.5(a), facilities must also "employ and schedule additional staff as needed to ensure quality resident care based on individual residents.") (citations omitted).

Defendants' Motion is largely based on a meritless proposition. Specifically,

- 4 -

whether individual residents received skilled nursing services and were physically harmed is not germane to Plaintiffs' claims under § 1430(b) or the CLRA to establish inadequate staffing, as this Court concluded when granting class certification. DE-143 at 8-13. Rather, Plaintiffs and subclass members seek redress for injuries resulting from Defendants violation of their rights to a minimum level of adequate direct nursing staffing at Gordon Lane and Country Oaks, as well as Defendants' misrepresentations and failures to disclose their unlawful staffing practices, to which all class members were exposed through Defendants use of California's Standard Admission Agreement that contains the Patients' Bill of Rights incorporating the right to an adequately staffed facility under HSC §1599.1. Those injuries are tangible in lost dollars, failed expectations, and missed opportunities, as reflected in resident ledger information produced by Defendants that shows, by class member, the amounts paid by them or on their behalf to Gordon Lane and Country Oaks, and Class Representative testimony concerning their experiences with Defendants. JAF 8-10, 46-48 (Umpierre Decl., Ex. 7 (Rodriguez Subclasses Decl.) at ¶8; Ex. 8 (Ashabraner Subclasses Decl.) at ¶ 9; Ex. 9 (Parker Subclasses Decl.) at ¶10; Ex. 43 (Rodriguez Decl.); Ex. 44 (Ashabraner Decl.); Ex. 45 (Parker Decl.); *see also id.*, Ex. 46 (class member Pareya Decl.)). Plaintiffs' expert Lindsay Petitte sets forth in her Rule 26 Reports a methodology to assist the trier of fact in determining whether, assuming CLRA liability, the economic harm class members suffered as a result of Defendants' misrepresentations and omissions of material fact about nursing staffing was substantial. JAF 40, 48, 49 (Umpierre Decl., Ex. 29 at ¶¶ 11-13; Ex. 30 at ¶¶ 14-18).

## II.    Statement of Facts

### A.    Moving Parties' Statement of Facts

As licensees of skilled nursing facilities, Defendants Country Oaks and Gordon Lane provide their residents with the California Standard Admission

Agreement and Resident Bill of Rights required for California skilled nursing facility admissions, pursuant to Health & Safety Code Section 1599.74. Joint Appendix of Facts ("JAF") 1. The Bill of Rights obligates the facilities to "employ an adequate number of qualified personnel to carry out all of the functions of the facility" under California Health & Safety Code Section 1599.1(a). JAF 2. But the California Standard Admission Agreement, Bill of Rights, and Health & Safety Code Section 1599.1 do not require or say anything about staff-resident ratios. JAF 3.

Monica Parrish-Lopez, successor in interest to Gail Parrish, testified that Gail Parrish resided at Gordon Lane from March 28, 2021 to April 29, 2021; that he had not resided there before and did not return after that stay; and that she was not aware whether he ever reviewed the admission paperwork during his stay. JAF 8. According to Parrish-Lopez, a hospital case manager gave her a limited list of skilled nursing facilities, she researched the facilities by reviewing ratings, and she selected Gordon Lane from the available options. JAF 9. Parrish-Lopez testified that she did not seek out information about staff-resident ratios. JAF 10. Meanwhile, public sources, including Care Compare and an acuity-adjusted quality metric, were available to consumers assessing Gordon Lane's staffing numbers. JAF 11.

As the person most knowledgeable for Gordon Lane, Grace Rivera testified that she had been Gordon Lane's Director of Nursing for 11 years. JAF 12. As Director of Nursing, Ms. Rivera was responsible for determining how much resident staffing was required, and she testified that, when performing this function, she considered the totality of resident acuity at the facility. JAF 13. (Resident acuity refers to the medical needs of the resident. JAF 14.) The resident staffing process included reviewing daily staffing forms, time cards, sign-in sheets, communications with staff about changes in resident condition and new resident admissions, monitoring a change-in-condition list shift to shift, considering matters such as abnormal labs, changes in behavior, skin tears, and new medications. JAF 15.

Plaintiffs have no resident-level or acuity evidence. JAF 16. Plaintiffs'

alleged understaffing rests solely on facility-wide numerical nursing staff-resident ratio calculations, including Direct Hours Per Patient Day ("DHPPD") metrics, rather than a resident-by-resident analysis of care needs, care delivered, or claimed harm. JAF 17.  Both Plaintiffs' expert Christopher Cherney and Defendants' expert Dr. John Bowblis agree, however, that staffing adequacy must account for resident acuity. JAF 18.  Plaintiffs' expert Valerie Gray also did not use resident acuity data and therefore did not answer whether Gordon Lane or Country Oaks had an adequate number of qualified personnel for residents' needs.  JAF 19.  Indeed, none of the materials cited by Plaintiffs and their experts use California's staffing ratios as the standard for determining whether a facility was adequately staffed to carry out all of its functions.  JAF 20.

As Dr. Kimberli Poppe-Smart explains, and Plaintiffs' administrator expert Christopher Cherney conceded, a reliable resident-rights analysis requires review of individual resident acuity, MDS assessments, care plans, diagnoses, ADL needs, nursing notes, medication and treatment records, wound care, fall risk, behavioral needs, supervision needs, and actual care delivery.  JAF 23.  In short, California's DHPPD minimum staffing metrics do not define whether a facility is adequately staffed.  JAF 24.

Minimum staffing ratios do not reflect resident acuity, and generate "false positives" by identifying an adequately staffed facility as understaffed.  JAF 25.  For example, California's waiver process and COVID-19 suspension of minimum staffing regulations show that a facility can fall below a minimum staffing number while still being adequately staffed based on resident needs.  JAF 26.[1]  In other words, the 3.5/2.4 DHPPD requirement is an administrative number that does not ensure a

---

[1] Plaintiffs' expert Valerie Gray testified that there was a California COVID-19 waiver period of roughly 100 days when the DHPPD requirement did not apply, but she did not remove those days from her calculations.  JAF 21.  She also admitted that removing those days would decrease her purported number of violation days.  *Id.*

resident is receiving adequate staffing.  JAF 27.  Conversely, Plaintiffs' experts readily admit that you can also be above the minimum staff-resident ratio and not provide adequate staffing to a resident based upon that resident's particular needs. JAF 28.

Plaintiffs also have no evidence of damages from residents.  JAF 46.  Instead, Plaintiffs claim they are entitled to damages based on facility-wide staffing ratio data alone.  JAF 47.  But money paid by or on behalf of a resident does not, standing alone, establish a compensable loss, out-of-pocket loss, economic damage, or loss of protected assets, because the analysis must determine who paid, the source of funds, whether the resident incurred an economic loss or benefit (and if so, how much), and whether the claimed loss was caused by the alleged violation.  JAF 48.  In fact, Ms. Parrish-Lopez testified that Parrish's stay was paid through Medicare and insurance, and that the family did not pay out of pocket.  JAF 49.

### B.      Opposing Party's Statement of Facts

Gordon Lane and Country Oaks are skilled nursing facilities located in Fullerton and Pomona, California, respectively. JAF 53-55 (Umpierre Decl., Exs. 36 & 37); *see also* JAF 47 (Umpierre Decl., Exs. 31-34).  Plaintiff David Rodriguez was a resident at Gordon Lane from January to February 2021, and Plaintiff Joan Ashabraner was a resident at Gordon Lane from February 2022 to January 2023. JAF 46-48 (Umpierre Decl., Ex. 7 at ¶ 1; Ex. 8 at ¶ 1; Exs. 43 & 44). Plaintiff Erma Parker was a resident at Country Oaks from May 2019 through June 2022.  JAF 46-48 (Umpierre Decl., Ex. 9 at ¶ 2; Ex. 45).

Gordon Lane and Country Oaks use the Standard Admission Agreement developed for skilled nursing facilities by the California Department of Public Health (CDPH) when admitting residents, as required by Cal. Health & Safety Code § 1599.61(a) and 22 CCR § 72516. JAF 13, 15, 44, 45 (Umpierre Decl., Ex. 10 (Rivera Depo) at 48:2-23); JAF 47 (Umpierre Decl., Exs. 31-34). The Standard Admission Agreement includes the Resident Bill of Rights, (*see* JAF 13, 15, 44, 45

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(Umpierre Decl., Ex. 10 at 48:2-23); JAF 53-55 (Umpierre Decl., Ex. 33)), which by operation of HSC § 1599.1 requires facilities to "employ an adequate number of qualified personnel to carry out all of the functions of the facility." JAF 53-55 (Umpierre Decl., Ex. 33). The right to live in a facility that employs an adequate number of qualified personnel to carry out all of its functions, as provided by HSC § 1599.1 and the Resident Bill of Rights, includes the right to the minimum levels of direct nursing staffing set by HSC §§ 1276.5 and 1276.65 and 22 §§ CCR 72329.1 and 72329.2(a).

The Standard Admission Agreement includes an acknowledgement form indicating that the resident was informed of the Resident Bill of Rights. *Id.* Each of the Plaintiffs and Class Representatives signed the Standard Admission Agreement on behalf of a loved one when they were admitted to Gordon Lane or Country Oaks, and each signed the acknowledgment form for the Resident Bill of Rights. *See* JAF 46-48 (Umpierre Decl., Ex. 7 at ¶ 3; Ex. 8 at ¶ 3;Exs. 31-32; Ex. 45 at ¶¶ 8-9). Class members (or their representatives) received and signed the same Standard Admission Agreement when they were admitted to Gordon Lane or Country Oaks. JAF 13, 15, 44, 45 (Umpierre Decl., Ex. 10 (Rivera Depo) at 48:2-23); Umpierre Decl., Ex. 46 at ¶ 5). Plaintiffs and class members all paid (or had paid on their behalf) out-of-pocket for room and board and care to Gordon Lane and Country Oaks. JAF 46 (Umpierre Decl., Ex. 27; Ex. 44 at ¶ 6; Ex. 45 at ¶ 6).

Gordon Lane and Country Oaks both failed to comply with the California staffing minimums of 3.5 direct care hours per patient day ("DHPPD") and 2.4 CNA DHPPD in each year during the subclass periods. JAF 47 (Umpierre Decl., Ex. 4 at ¶¶ 50-64; Ex. 49 at ¶¶ 7-16). Plaintiffs and Class Representatives have testified that Defendants' chronic understaffing of Gordon Lane and Country Oaks below the mandatory minimums resulted in negative outcomes, such as enduring insufficient care for their incontinence needs and frequently having to remain in soiled diapers and soiled beds without staff to timely assist them (*see* Umpierre

Decl., Ex. 43 at ¶ 9; Ex. 45 at ¶ 11; Ex. 46 at ¶ 7) and regularly having to wait long periods of time after calling for help from staff. (Umpierre Decl., Ex. 43 at ¶¶ 9-10; Ex. 45 at ¶ 11; Ex. 46 at ¶¶ 7-8). Plaintiffs and class members also endured missed treatments, pressure sores, and lack of care for oral hygiene. (Umpierre Decl., Ex. 43 at ¶ 11; Ex. 44 at ¶ 13; Ex. 45 at ¶¶ 12-14; Ex. 46 at ¶ 9).

Gordon Lane and Country Oaks never disclosed to Plaintiffs and class members that they do not staff the facilities in compliance with the DHPPD minimums set by California law. JAF 48 (Umpierre Decl., Ex. 43 at ¶ 5; Ex. 44 at ¶¶ 8-9; Ex. 45 at ¶¶ 8-9). If Gordon Lane and Country Oaks had disclosed this failure, Plaintiffs and class members would never have allowed themselves (or their loved ones) to be placed in or to remain as a resident of these facilities. JAF 48 (Umpierre Decl., Ex. 43 at ¶ 13; Ex. 44 at ¶ 16; Ex. 45 at ¶ 16). They would have opted for a different skilled nursing facility and would not have agreed to pay the charges assessed. *Id.*

## III.   Legal Standard

Courts grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798–99 (9th Cir. 2010).  The Court may summarily adjudicate any particular claim, material fact, or defense under these standards.  *See Pac. Fruit Express Co. v. Akron, Canton & Youngstown R.R. Co.*, 524 F.2d 1025, 1029–30 (9th Cir. 1975).

## IV.   Analysis

### A.   Moving Parties' Argument 1

#### 1.   **Summary Judgment Should Be Granted on the Section 1430(b) Claim Because Plaintiffs Have Not Established a Violation of the Patient Bill of Rights.**

Plaintiffs' Section 1430(b) claim fails as a matter of law. As pleaded and certified here, Plaintiffs assert a Section 1430(b) claim that the defendant facilities violated the class member residents' rights "as set forth" in the Patient Bill of Rights. Cal. Health & Safety Code § 1430(b). The certified subclasses claim no other violation of Section 1430(b); they instead allege that the facilities violated number 25 of the Patient Bill of Rights, as specified in Health & Safety Code Section 1599.1, to reside in a facility that "employ[s] an adequate number of qualified personnel to carry out all of the functions of the facility." FACC ¶ 13 (quoting Cal. Health & Safety Code § 1599.1(a)); *see also* 22 C.C.R.§ 72527(a)(25). Plaintiffs' experts concede that they have not analyzed the adequacy or sufficiency of staffing under Section 1599.1. As a result, Defendants are entitled to summary judgment on the Section 1430(b) claim.

### a.    The Section 1430(b) Subclasses Are Limited to a Section 1599.1 Claim.

In obtaining certification, Plaintiffs proposed defining the Section 1430(b) subclasses as persons who resided in Gordon Lane or Country Oaks "pursuant to a Standard Admission Agreement," because that document purportedly contained the Patient Bill of Rights for each eligible class member. DE-143 at 4. The Court focused on Plaintiffs' allegations that "upon admission to the Gordon Lane and Country Oaks facilities, residents received an agreement stating the facilities would provide 'an adequate number of personnel to carry out all of the functions of the facility' consistent with California law." DE-143 at 8–9 (quoting Compl. ¶ 42; Health & Safety Code § 1599.1(a)). The Court certified the 1430(b) subclasses based on *the* common question of whether Gordon Lane and Country Oaks violated the residents' rights *under Section 1599.1* to have the facilities "employ an adequate number of qualified personnel to carry out all of the functions of the facility." DE-143 at 10 (quoting Health & Safety Code § 1599.1(a)). The Court therefore defined the certified subclasses, as Plaintiffs had proposed, as persons who resided in the

- 11 -

facilities "pursuant to a Standard Admission Agreement," which purportedly promised that the facility would comply with the resident's right to reside in a facility with an "adequate number of qualified personnel to carry out all of the functions of the facility." DE-143 at 12.

### b.      A Section 1276.5 Regulatory Violation Does Not Make a Section 1430(b) Claim.

Plaintiffs cannot prevail on their Section 1430(b) claim without proving a violation of Section 1599.1 because Plaintiffs obtained certification based on a common question of violating Section 1599.1 and nothing else.  Plaintiffs cannot point to stray references to 22 C.C.R. 72329 (or 72329.1) in their Complaint as a new, separate basis for a Section 1430(b) claim.  Plaintiffs pleaded and certified a Section 1430(b) claim premised on a violation of Section 1599.1 only—and can now invoke Section 1276.5 solely to the extent it *may* be relevant to proving a Section 1599.1 violation.

Moreover, even if Plaintiffs had obtained certification for a claim premised on violation of Section 1276.5 or its implementing regulations, such a claim would not be actionable without also proving a violation of Section 1599.1.  Section 1430(b) creates a private right of action for the Patient Bill of Rights and other resident rights, and Section 1276.5 is not a right.  Section 1276.5 "does not confer a right upon nursing home residents which is [directly] enforceable through Section 1430(b)." *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1088 (N.D. Cal. 2011);

"The language and statutory context of section 1276.5(a), according to *Alvarado*, demonstrate that it 'is a regulatory statute, which the Legislature intended the [Department of Health Services] to enforce.'" *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 785 (N.D. Cal. 2011) (quoting *Alvarado v. Selma Convalescent Hosp.*, 153 Cal.App.4th 1292, 1304 (2007)). *Wehlage* observed that a Section 1276.5 claim may "provide[] an objective measure of what constitutes 'adequate'" under Section 1599.1, *id.* at 788, and thus at the pleading stage allowed

- 12 -

a Section 1430(b) claim to proceed based on potential violations of Section 1599.1, *id.* at 789.

The California Court of Appeal, First District, similarly held that Section 1430(b) "confers a private right of action with a specific monetary entitlement for the violation of the rights of a resident of a skilled nursing facility *as set forth in the Patient's Bill of Rights*," including "the right to reside in a facility with an adequate number of qualified personnel to carry out all of the functions of the facility" under Section 1599.1, and *at most* Section 1276.5 "may inform what the definition is of 'adequate' qualified personnel under Section 1599.1 with respect to nurses." *Shuts v. Covenant Holdco LLC*, 208 Cal.App.4th 609, 620 (2012) (quoting *Walsh*, 798 F. Supp. 2d at 1088 n.8) (emphasis added).

Taken together, *Alvarado*, *Walsh*, *Wehlage*, and *Shuts* are clear that Section 1276.5 is not a right, and Section 1276.5 only has relevance here to the extent it "may inform" whether Section 1599.1 was violated for a resident. *See, e.g.*, *Shuts*, 208 Cal.App.4th at 620 (quoting *Walsh*, 798 F. Supp. 2d at 1088 n.8). But that minimal relevance is not sufficient for Plaintiffs to overcome summary judgment. The staff-resident ratios are not dispositive of any element of Plaintiffs' claims, let alone that their "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

         **c.**      **Plaintiffs' Section 1599.1 Claim Here Fails Because Plaintiffs' Experts Concede They Have Not Performed an Adequacy-of-Staffing Analysis Under Section 1599.1**

Because this is a class action, Plaintiffs must establish that all class members had their right to "an adequate number of qualified personnel" violated under Section 1599.1. *See Healy v. Milliman, Inc.*, 164 F.4th 701, 705 (9th Cir. 2026). No other statute or minimum numerical requirement determines the outcome of a Section 1599.1 claim. As explained below, Plaintiffs' experts concede that they have performed no analysis of sufficiency or adequacy of staffing under Section 1599.1.

- 13 -

Instead, Plaintiffs rely on the novel and impermissible assumption that a violation of Section 1276.5 is—in and of itself—an automatic violation of Section 1599.1.

**Methodology for a 1599.1 Sufficient Staffing Analysis.** Plaintiffs pleaded in their operative complaint that to determine whether a facility was adequately or sufficiently staffed under Section 1599.1 "entails three basic steps: a) determining the **collective acuity level of the residents** at the facility; b) determining the staffing levels at the facility; and c) **comparing the collective acuity and staffing levels** at the facility in light of recognized minimum staffing requirements." FACC ¶ 63 (emphasis added). And at certification, the Court relied on Plaintiffs' promise that they would employ this sufficient staffing methodology that accounted for the "collective acuity" of the residents at each facility—meaning the level of medical needs of all patients at each facility in a given time—as proof of classwide staffing insufficiency under Section 1599.1(a). (Dkt. 143 at 17-18.) Plaintiffs' nursing administrator expert Christopher Cherney conceded that a sufficient staffing analysis requires these "necessary component[s]"—"individual resident acuity, overall resident acuity and nursing competency." JAF 30. But at the evidentiary stage, Plaintiffs and their experts did no such thing.

**Methodology for Section 1276.5 DHPPD.** Instead, Plaintiffs solely relied on the separate regulatory provisions for numeric staff-resident ratios, which do not account for resident acuity at all. Section 1276.5(a) provides that the California Department of Public Health ("CDPH") "shall adopt regulations setting forth the minimum number of equivalent nursing hours per patient required in skilled nursing and intermediate care facilities." Cal. Health & Safety Code § 1276.5(a). The parties agree that the CDPH staff-residential requirements are solely limited to Registered Nurses, Licensed Vocational Nurses, and Certified Nursing Assistants—not any non-nursing personnel. JAF 4. From 2000 to 2018, the minimum total nursing staff-patient ratio required was 3.2 DHPPD. JAF 5. In 2018, the CDPH raised the total nursing staff-patient ratio to 3.5, and implemented a new requirement that of the 3.5

- 14 -

total DHPPD requirement, 2.4 of those hours would be provided by CNAs.  JAF 6. The parties' experts agree that the DHPPD is calculated by dividing the actual number of hours worked by direct nursing caregivers by the average census within a given 24-hour period.  JAF 7.

**No Evidence of Acuity.** As Plaintiffs' nursing administrator expert, Mr. Cherney, conceded in his deposition:

"Q: [The DHPPD is] just straight math?

A. Simple math.

Q. There's no acuity considered in that numerical calculation; right?

A. That's correct.

Q. And you did not, in fact, analyze the resident acuity at Gordon Lane Healthcare?

A. That's correct.

Q. And you did not analyze the resident acuity at Country Oaks Partners?

A. That's correct."

JAF 34.  Because Plaintiffs did not perform any resident acuity analysis whatsoever, or look at whether the staff the facilities provided were sufficient, and compare those qualified personnel to the specific resident acuity of the facilities, their analysis fails by their own standard.

**A 1276.5 Ratio Is Not a 1599.1 Violation.**  As noted above, Section 1599.1 requires that a facility provide "an adequate number of qualified personnel to carry out all of the functions of the facility."  Section 1599.1 mirrors the federal mandate for skilled nursing facilities to have sufficient staffing.  *See, e.g.*, 42 C.F.R. § 483.35; FACC ¶ 57.  When asked whether a facility could be staffed below the 3.5 DHPPD requirement—for example, prior to 2018 when the standard was 3.2—but still in fact "provid[e] sufficient quality clinical care" to its residents, Plaintiffs' expert Mr. Cherney said, "Yes, it's possible."  JAF 29.  He also agreed that no decision could be made about whether or not the residents were in fact provided sufficient staffing

without looking at "individual resident acuity, overall resident acuity and nursing competency." JAF 30. Specifically, "meeting the needs of the individual residents based on their assessments and care plans, based on the competency of the nursing staff, and based on the overall acuity of all facility residents based on a thorough analysis of their needs as set forth in the facility assessment which must include a nursing staffing plan." JAF 30.

The fact that staffing to the 3.5/2.4 staffing minimums does not by itself determine sufficient staffing is also illustrated by the fact that a facility could be providing 3.5 total DHPPD but not meeting the 2.4 CNA minimum. This means that, despite a technical violation of the staff-resident ratio DHPPD requirements, nursing personnel with *higher* qualifications than CNAs (RNs and LVNs) could still be providing sufficient care and meeting the needs of the residents—something Mr. Cherney admitted was possible. JAF 31.

The COVID waiver period further demonstrates the inability to do a sufficient staffing analysis under Section 1599.1 by only looking at the regulatory staff-resident ratio minimums. Mr. Cherney admitted that the CDPH suspended the 3.5 DHPPD ratio requirement during COVID, but the facilities were still required to provide sufficient staffing because "sufficient nursing staffing is an issue separate and distinct from minimum nursing staffing." JAF 32.

Mr. Cherney's report also acknowledges that the CDPH similarly suspended the DHPPD ratio requirement in 2018 due to a workforce shortage, and to this day facilities can still seek a facility-specific waiver of that same minimum. JAF 33. And yet whenever the minimum is suspended, Mr. Cherney concedes that "[w]hat you call adequate, what I call sufficiency requirement remains; okay? You still have to provide sufficient staff and that is a separate determination." JAF 41.

And it is undisputed that, unlike 1276.5 staffing ratios, a Section 1599.1 sufficiency of staffing analysis must look beyond nursing personnel. Unlike 1276.5 staff-resident ratios, a Section 1599.1 sufficiency analysis looks at whether the needs

- 16 -

of the residents were met by a whole plethora of staff, including "Administration, Physician(s), Medical Director, Director of Nurses, nurses with administrative responsibilities, Director of Staff Development, Assistant Director of Staff Development, Social Worker or Social Services Designee/Assistant, Activities Director and assistants, Hospice services (if appropriate), Physical, Occupational Respiratory and Speech therapist and assistants, other clinicians and consultants, Dietitian, Culinary and Dining Staff, Medical Records, Business Office personnel, Reception, Admissions, Central Supply, Environmental Services, volunteers, entertainers, and activity providers. While these supportive services may not constitute direct nursing care, they substantially enhance overall quality and care environment and are qualified personnel and resources to meet the needs of the residents in a facility." JAF 42.

Although the burden is Plaintiffs' (not Defendants'), Defendants produced evidence that they provided their residents an adequate number of qualified personnel. As established by Defendants' expert and Licensed Nursing Home Administrator Ellen Blys, Defendants "maintained staffing systems that complied with applicable California and federal requirements during the relevant period." JAF 43. As support, Ms. Blys relied on the testimony of Ms. Rivera, Director of Nursing at Gordon Lane, who said that she "overstaff[ed] most of the time or, actually, all of the time. I make sure I'm overstaffed just in case we need more nurses or if there's call offs. So I'm always overstaffing just to make sure my patients' safety and needs are met." JAF 44. Moreover, as relied upon by Dr. Bowblis, Ms. Rivera testified that she relied on specific information in making her staffing decisions, including daily staffing forms, time cards, sign-in sheets, and internal communications about new admissions and condition changes. JAF 45.

Defendants' evidence is unrebutted. For example, Plaintiffs' expert Mr. Cherney stated he did not do a staffing sufficiency analysis because he was under the false impression that "this case is about meeting minimum, state minimum,

- 17 -

requirements *not about nursing staffing sufficiency*." JAF 34 (emphasis added). Plaintiffs' other expert Valerie Gray admitted that her only task in this case was to calculate the staffing levels from the facilities' data and compare them to the state minimum requirements. JAF 35. Ms. Gray conceded that she could "never testify about the sufficiency or whether somebody received adequate care." *See* JAF 36. Consistent with this admission, Ms. Gray testified that she has no opinion about the Resident Bill of Rights—the document that Plaintiffs allege is a misrepresentation— and that she only looked at whether Defendants violated the state minimum requirements. *See* JAF 37. Ms. Gray did not review any resident acuity measure, medical record, resident care plans, or MDS assessment. JAF 38. She also testified that the Section 1276.5 minimum requirement does not account for acuity, "meaning meeting the minimum doesn't automatically mean you're staffing to acuity." JAF 39. Plaintiffs' final expert, Lindsey Petitte, opined on the substantiality of "potential economic harm" to the class members, and did not purport to perform any acuity analysis. JAF 40.

Given Plaintiffs' failure to perform any resident acuity analysis whatsoever, they have failed to carry their burden to show insufficient staffing under Section 1599.1—on an individual or classwide basis. Defendants are entitled to summary judgment on Plaintiffs' Section 1430 claim.

### 2. Opposing Party's Response – The Violation of an Enumerated Right in the Patients' Bill of Rights is Not Required to Pursue a Claim Under § 1430(b)

#### a. Plaintiffs' § 1430(b) claim seeks to enforce the right of California skilled nursing residents to a baseline minimum level of direct nursing staffing.

Plaintiffs' certified §1430(b) claim is not limited to the rights specifically identified in the Patients' Bill of Rights. MSJ at 6:6-19. Section 1430(b) expressly permits a private right of action to enforce "any other right provided for by federal

or state law or regulation," including but not limited to adequate direct nursing staffing in California skilled nursing facilities. Cal. Health & Safety Code (HSC) § 1430(b). Plaintiffs' claim under §1430(b) is based on Defendants' failure to comply with the mandatory minimum levels of direct nursing staffing set forth in California statutes and regulations that apply to skilled nursing facilities.

The "right" of skilled nursing residents in California to a baseline level of direct nursing staffing available on a facility-wide basis, specifically to 3.5 DHPPD of RN and LVN time and 2.4 of CNA time, is based in California law, enforced in California regulations, and recognized by courts in this State. California has determined it is necessary to "establish sufficient staffing levels required to provide quality skilled nursing care" in this State. HSC §1276.7(b), In so doing, California established a "minimum number of direct care nursing hours per patient day" that "are required to provide California nursing home residents with a safe environment and quality skilled nursing care." *Id.* Through implementing regulations under Title 22, the minimum HPPD requirement was originally set at 3.2 HPPD in 2000. JAF 5, 6, 18, 20, 23, 42 (Umpierre Decl., Ex. 5 at ¶36). This regulation was amended effective July 1, 2018, when the 3.2 HPPD minimum requirement was changed to the current 3.5/2.4 minimum requirements. *Id.* Thus, because minimum staffing requirements were clearly enacted for the benefit and protection of skilled nursing residents (*see* HSC § 1276.7(b)), their codification in California statutes and regulations created independently enforceable rights under §1430(b). *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

Defendants' argument that Plaintiffs' § 1430(b) claim is premised solely on the allegation that the facilities violated section 25 of the Patient Bill of Rights is incorrect. MSJ at 6:11-16, citing FAC, ¶13. The basis for the § 1430(b) class claim are Title 22 regulations at §§72329 and 72329.1 and the nursing staffing minimum specified therein. *See, e.g.*, FAC, ¶121 (DEFENDANTS systematically and systemically violated 22 Code of Regulations §§72329 and 72329.1 by failing to

- 19 -

have "Direct Caregivers" Nursing service personnel employed and on duty in at least the number to provide the necessary nursing services for patients admitted for care. In doing so DEFENDANTS have run afoul of the provisions of Health & Safety Code §1430(b).).[2] And while the Court's certification Order cites § 1599.1 when analyzing Plaintiffs' § 1430(b) claim, the Court concluded: "Plaintiffs allege that Gordon Lane and Country Oaks violated this right by understaffing their facilities based not on their individual needs, but on the needs of the facility as a whole." JAF 15, 45 (Umpierre Decl., Ex. 24 & DE-143 at 10:14-16; 11:9-10). The Court's conclusion is consistent with Plaintiffs' claims, the gravamen of which has not changed since class certification– California's mandatory minimum nursing staffing requirements are imposed upon skilled nursing facilities as a facility-wide obligation owed to all the residents in the building to ensure basic care and resident safety.  In failing to provide at least the baseline minimum level of nursing staffing to those residents, Defendants' violated the residents' rights to live in an adequately staffed facility. *See* JAF 15, 45 (Umpierre Decl., Ex. 24 & DE-143 at 10:6-22).

Defendants next contend the mandatory minimums contained in HSC §1276.5 provide no independent basis for § 1430(b) liability and instead are only "marginally relevant" to a § 1599.1 claim (which Defendants contend can only be proven with resident-specific acuity evidence). *See* MSJ at 6:22-8:27. That position directly conflicts with controlling law.

Whether a statute or regulation creates an enforceable private right of action is an issue of law. *See Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 787 (N.D. Cal. 2011) citing *Gonzaga, supra*, at 285. Here, *Shuts,* 208 Cal. App. 4th 609, is the sole California appellate decision on the issue presented. *Shuts* rejected the contention that § 1276.5 cannot be enforced through § 1430(b). *Id.* at 625. In reaching that conclusion, *Shuts* makes the following statements that control the

[2] Indeed, the FAC includes numerous references to California's mandatory nursing staffing minimums and the regulations implementing them. *See* FAC, ¶¶ 43, 56, 58, 59, 64, 70, 71.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

analysis here:

- *Shuts* rejects Defendants' reliance on the prior decision in *Alvarado* for multiple reasons, including that *Alvarado* did not include a § 1430(b) claim. *See Shuts*, 208 Cal. App. 4th at 619.

- *Shuts* relies heavily upon and adopts the "analytic framework" in *Wehlage*, which post-dates both *Alvarado* and *Walsh* (*see id.* at 620), including *Wehlage's* holding that § 1276.5 is enforceable through § 1430(b). *Id.*; *see also Wehlage*, 791 F. Supp. 2d at 788.

- *Shuts* rejects Defendants' argument that § 1276.5 cannot be enforced under § 1430(b) because it has an "aggregate facility-wide focus." *See Shuts* at 620-21; *Wehlage* at 789. Indeed, in reaching that conclusion, *Shuts* notes that § 1599.1 and other resident rights are "expressed as aggregate facility-wide obligations." *Shuts* at 620. *See also, e.g.*, 22 CCR §72329.1(a) (Skilled nursing facilities shall employ and schedule additional staff …"); §72329.1(f) ("Each facility shall employ …"); HSC § 1276.65 ("skilled nursing facilities … shall have a minimum number of direct care service hours …").

- *Shuts* rejects Defendants' contention that applying minimum staffing requirements to determine adequate facility staffing is "novel." *Shuts* at 621.

Defendants place great weight on *Walsh*'s statement that § 1276.5 does not create an enforceable right. MSJ at 7:27-8:27. But *Walsh* reached that conclusion based on the (incorrect) assumption that § 1276.5 was a "regulatory statute" and thus unenforceable in a private action. *See Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1088 (N.D. Cal. 2011). As *Wehlage* subsequently clarified, a "regulatory statute" can still be enforceable depending on the "intent underlying the law." *Wehlage*, 791 F. Supp. 2d at 789. *Wehlage* concluded the legislative history

- 21 -

supports the position that § 1276.5 is enforceable through a § 1430(b) action. *Id.* *Shuts* agreed with the *Wehlage* analysis. *Shuts*, 208 Cal. App. 4th at 620-621.

> **b.      Mandatory minimum direct nursing staffing levels are the baseline measure of "adequate" under HSC §1599.1.**

The provision of direct nursing staffing levels below the statutory minimums is nevertheless not "adequate" to carry out the nursing functions of Gordon Lane and Country Oaks pursuant to HSC §1599.1(a). Defendants' experts admit that one "function" of a skilled nursing facility is the delivery of nursing services to residents. As *Shuts* and *Wehlage* concluded, the mandatory minimums set forth in HSC §1276.5 are an "objective measure" of "adequate." *Shuts*, 208 Cal. App. 4th at 620; *Wehlage*, 791 F. Supp. 2d at 788. "The 3.2 NHPPD standard set out in section 1276.5, subdivision (a) helps define this enforceable right." *Shuts* at 620. In this way, the direct nursing staffing requirements define the baseline minimum level of direct nursing staff determined by California to be necessary to provide a baseline level of quality care and safety to skilled nursing residents in this State. *See* HSC § 1276.7(b).

> **c.      In this case the staffing "adequacy" determination under HSC § 1599.1 does not require an examination of resident acuity.**

Defendants' argument that Plaintiffs' claims fail because their "experts concede they have not performed an adequacy-of-staffing analysis under section 1599.1" is without merit. MSJ at 9:1-11. The California regulations and interpretive guidance from the CDPH provide a detailed description of the steps that must be followed in order to evaluate whether a facility is in compliance with the mandatory minimum requirements for direct nursing staffing. *See, e.g.*, 22 CCR § 72329.1(g); JAF 4, 7, 18, 23, 28 (Umpierre Decl., Ex. 3 (AFL 21-11); Ex. 4 (Gray Rule 26

- 22 -

Report) at ¶ 23; Ex. 5 (Cherney Rule 26 Report) at App'x A, ¶ 11; Ex. 7 (Gray Depo.) at 12:5-20). Plaintiffs' experts have carefully followed the methodology required by California law in analyzing whether Defendants' have met the mandatory minimums. JAF 35 (Umpierre Decl., Ex. 6 at 12:5-14:19).

The acuity analysis Defendants contend is necessary is not required when the question is whether a skilled nursing facility provided the mandatory minimum level of direct nursing staffing that the state of California has determined is the baseline level of "adequate" necessary to provide nursing services to the facility's residents. JAF 18 (Umpierre Decl., Ex. 1 (Cherney Depo.) at 47:2-14; 48:4-9; Ex. 5 (Cherney Rule 26 Report) at ¶37; Ex. 2 (Harrington Subclasses Decl.) at ¶¶ 25, 29, 31); JAF 4, 7, 18, 23, 28 (Umpierre Decl., Ex. 3). Defendants' contrary argument only holds where a facility is providing at least the bare minimum level of staffing. Only after first reaching the bare minimum is the requirement to provide "additional staff" based on resident needs triggered. 22 CCR § 72329.1(a) ("The staffing requirements required by this section are *minimum standards only*. Skilled nursing facilities shall employ and schedule *additional staff as needed to ensure quality resident care based on the needs of individual residents* and to ensure compliance with all relevant state and federal staffing requirements.") (emphasis added). Indeed, Dr. Harrington's staffing methodology explicitly includes a preliminary step before considering acuity – compliance with the mandatory minimums. *See* JAF 11, 18, 20, 23, 29, 31, 39, 42, 52 (Umpierre Decl., Ex. 2 at ¶¶31-32). Defendants' insistence that an acuity analysis is required in this case ignores this crucial distinction.

Defendants erroneously argue that they need only provide enough staffing to meet residents' individual levels of acuity without regard to mandatory direct nursing staffing minimums. MSJ at 14-17. Defendants have not, and cannot, cite any authority for this proposition. Defendants' interpretation contradicts the plain language of the relevant statutes and regulations implementing the mandatory

minimum nursing staffing requirements.  Moreover, Defendants admit they do not, and cannot, determine direct nursing staffing based on consideration of individual residents' needs. *See* JAF 15, 45 (Umpierre Decl., Ex. 24 & DE-143 at 10:25-11:6).

Attempting to evade California's baseline requirements, Defendants elide the distinction between California and federal staffing requirements. *See* MSJ at 11:1-15. However, the staffing sufficiency inquiry under federal law (42 CFR § 483.35) is made without reference to any baseline minimum level of staffing. Staffing surveys and Facility Assessments that consider staffing sufficiency consistent with federal standards only account for resident acuity. JAF 52 (Umpierre Decl., Ex. 1 (Cherney Depo.) at 56:9-25, 117:14-118:3; Umpierre Decl., Ex. 5 (Cherney Rule 26 Report) at ¶¶37-41). In contrast, California law sets a floor for what the facility-wide level of direct nursing staffing must be. HSC § 1276.65(c); 22 § CCR 72329.2(a); *see also Shuts*, 208 Cal. App. 4th at 620-21; *New Commune DTLA LLC v. City of Redondo Beach*, 115 Cal.App.5th 111, 130 (2025) ("Courts consistently interpret a statutory 'minimum' as a floor below which something cannot go."). Whether the minimum level of nursing staffing was provided is determined by a simple mathematical calculation based on actual hours worked and resident census and not acuity because California has determined the minimum level of nurse staffing that must be provided (absent a waiver) to ensure basic care and safety. *See* 22 CCR § 72329.1(a); HSC § 1276.7(b). Under California law, facility-level acuity is only considered to determine the "additional staff as needed to ensure quality resident care" based on resident needs. *See id.* In this case, that issue does not arise because Defendants have provided far less than the mandatory minimum level of staffing under California law. JAF 44, 46, 47 (Umpierre Decl., Ex. 4).

Defendants' cherry-picked quotes from Mr. Cherney's deposition are misleading. *See, e.g.*, MSJ at 11:5-15. Mr. Cherney testified about the principal staffing requirement of skilled nursing facilities in California – to provide the baseline level of direct nursing staffing required by law – in the context of the

- 24 -

overall obligation to provide staffing of qualified personnel adequate to carry out the functions of the facility under federal or certain state standards. JAF 52 (Umpierre Decl., Ex. 1 (Cherney Depo.) at 25:10-17, 36:22-37:11, 39:9-18, 117:14-118:3). Thus, there is no contradiction in Mr. Cherney's testimony. For example, the suspension of minimum nursing staffing requirements during Covid did not obviate the requirement to provide sufficient staffing. *See* MSJ at 11:25-28; JAF 26 (Umpierre Decl., Ex. 1 (Cherney Depo.) at 61:21-62:1).

In a further effort to avoid liability for their flagrant failure to staff their facilities in compliance with the California minimum requirements for nursing hours, Defendants argue that a Section 1599.1 analysis "must look beyond nursing personnel." MSJ a 12:7-8. However, while Defendants identify staff who may be relevant to determining whether the staffing of the *other* functions of the facility were adequate (*see* HSC § 1599.1(a) ("adequate number of qualified personnel to carry out all of the functions of the facility")), this case concerns only the nursing function.

Defendants' experts admit that the provision of nursing services is a "function" of a skilled nursing facility. JAF 20 (Umpierre Decl., Ex. 25 (Bowblis Depo.) at 72:5-14, 73:14-19, 85:2-11; Ex. 28 (Blys Depo.) at 74:25-75:10). To properly determine the minimum level of nursing staffing that must be provided to carry out the nursing function, only the following job positions may be considered: registered nurse, licensed vocational nurse, licensed psychiatric technician, certified nurse assistant, nurse assistants participating in an approved training program, licensed MDS nurse, and certain hours worked by the Director of Nursing. *See* JAF 4 (Umpierre Decl., Ex. 4 at ¶26); JAF 4, 7, 18, 23, 28 (Umpierre Decl., Ex. 3 at (F)(1-2)). The 3.5/2.4 DHPPD baseline defines the minimum necessary to carry out the nursing function. As a result, Defendants' "evidence" that they "provided an adequate number of qualified personnel" (MSJ at 12:22-24) is of no moment.

For example, Defendants' expert Ellen Blys' concluded that Defendants

"maintained staffing systems that complied with applicable California and federal requirements during the relevant period." That conclusion is based on unreliable testimony about the individual nature of Defendants' purported staffing methods, some of which was discredited by the Court at class certification. *Id.* at 13:3-6; *compare* DE-134 at 10:25-11:6. Further, Ms. Blys did nothing to confirm Gordon Lane's unsubstantiated testimony that it is consistently "overstaffed", notwithstanding the ample evidence set forth in Ms. Gray's Reports of chronic, widespread direct nursing staffing below mandatory minimum levels at both Gordon Lane and Country Oaks. JAF 17, 43, 44, 46, 47 (Umpierre Decl., Ex. 4 at ¶51, 53; Ex. 28 at 58:24-59:19, 163:10-164:19).

**B.     Moving Parties' Argument 2**

**1.     <u>Summary Judgment Should Be Granted on Both Claims Because Class Members Were Not Injured and Incurred No Damages.</u>**

**a.     Summary Judgment Is Warranted.**

Plaintiffs pursue relief for hundreds of class members who suffered no injury or damage—an outcome that would defy standing requirements in both this Court and state court. Plaintiffs have not established standing for either of their two statutory claims because they have not shown that class members suffered injury, nor have they presented evidence of damages on a class-wide basis.

To establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). "To withstand a motion for summary judgment on the ground that the plaintiff lacks standing, a plaintiff cannot rely on mere allegations but rather must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *United States v. $133,420.00 in U.S.*

*Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (internal quotation marks and citation omitted).  "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).  The Supreme Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  "As the Court emphasized in *Spokeo*, Article III standing requires a concrete injury even in the context of a statutory violation."  *TransUnion*, 594 U.S. at 426 (internal quotation marks omitted).

In the context of a class action, Plaintiffs' duty to establish standing extends to all class members.  "Every class member must have Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."  *TransUnion*, 594 U.S. at 431 (internal quotation marks and citation omitted).  The Ninth Circuit "requires unnamed members of a certified class for money damages to demonstrate standing at summary judgment."  *Healy*, 164 F.4th at 705. Pursuant to *Healy* and its application of *TransUnion*, "[e]very class member must have Article III standing in order to recover individual damages," and "*TransUnion* requires unnamed class members to demonstrate evidence of standing after class certification at summary judgment."  *Id.* at 706; see also *id.* at 708 (same).

Plaintiffs' statutory claims also require proof of injury.  "A plaintiff bringing a CLRA cause of action must not only be exposed to an unlawful practice but also have suffered some kind of damage."  *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) (internal quotation marks and citation omitted); *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 646 (2009) (affirming appellate court's decision that a plaintiff's CLRA claim did not allege a cause of action because the plaintiff could not show damages).  To prevail in a class action, CLRA plaintiffs must

show that "both the named plaintiff and unnamed class members must have suffered some damage *caused by* a practice deemed unlawful under Civil Code section 1770." *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 929 (2010) (citation omitted).

Here, Plaintiffs have not established that class members suffered any damages at all. This case is at the same juncture articulated in *Healy*—after class certification but prior to trial—and Plaintiffs cannot escape their burden to show that their absent class members suffered a concrete injury, incurred damages, and have standing.

Plaintiffs argue each alleged "violation" is an injury because "§ 1430(b) was enacted to ensure regulatory compliance and prevent injury to residents." Dkt. 104 at 11. But Plaintiffs' own experts do not show that any, much less all, class members suffered an injury. Dr. Charlene Harrington[3] admitted that she did not "know anything about the acuity" of residents when presenting her opinion, as she was "not looking at individual patients" in her methodology. JAF 50. She also agreed that, pursuant to CMS surveyor guidance, a staffing deficiency may or may not be directly related to an adverse outcome. JAF 51. Similarly, Plaintiffs' expert on minimum staffing requirements, Mr. Cherney, admitted that a sufficient staffing analysis requires looking at individual patient needs, but that he did not analyze whether any specific resident's clinical care needs were met or unmet due to staffing levels, and he did not even talk with any Plaintiff, or review any Plaintiff's statements, about their experience at the facilities. JAF 52.

Plaintiffs can point to no evidence that any, much less all, class members suffered a cognizable injury. The Court permitted Defendants to send questionnaires to absent class members as part of absent class member discovery. Defendants expect that the results of these questionnaires will show that absent class members did not

---

[3] Plaintiffs relied on Dr. Harrington's methodology to obtain class certification, but they changed their methodology post-certification and did not submit a Rule 26 report from Dr. Harrington, as explained in Defendants' motion for decertification.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

suffer an injury caused by alleged understaffing.[4]  Plaintiffs' evidence may, at best, support regulatory violations of the staffing-resident ratios, but it will not show that *any* particular resident suffered an actual, resident-specific injury or damages. Plaintiffs' lack of injury entitles Defendants to summary judgment.

**2.   <u>Opposing Party's Response – All Subclass Members Were Injured and Suffered Damage as a Result of Defendants' Wrongdoing.</u>**

**a.   Plaintiffs and Subclass Members satisfy Article III standing by virtue of the payment of money.**

Plaintiffs easily satisfy Article III and statutory standing requirements on both class claims. Plaintiffs and all subclass members paid money to Defendants for purposes of Article III standing and thereby sustained a concrete injury. *See TransUnion v. Ramirez,* 594 U.S. 413, 425 (2021) (payment of money "readily qualif[ies] as [a] concrete injur[y]").

Coupled with the payment of money, all Section 1430(b) subclass members suffered concrete, actual injury when they were deprived of a reasonably expected material attribute of skilled nursing and a right provided by law – namely a minimum level of direct nursing staffing – while they resided at Defendants' skilled nursing facilities. *See, e.g., Ruiz v. Celsius Holdings, Inc.,* 2021 WL 5811264, at *3 (S.D. Cal. Jul. 28, 2021) ("Plaintiffs here allege monetary harm in the form of overpayment, a form of injury that the *TransUnion* court noted would confer standing"); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 947 (N.D. Cal. 2018) ("Even if Plaintiffs' claims were tied to EPA and CARB emission standards ... Plaintiffs allege that they paid

---

4 Due to the Court reopening fact discovery for Defendants to serve questionnaires on 30 randomized absent class members before July 31, 2026, but not extending the summary judgment motion deadline, Defendants reserve the right to supplement the evidentiary record once those questionnaire responses are received. JAF 22.

- 29 -

money for the Class Vehicles that they would not have otherwise spent but for Defendants' misrepresentations and concealment of material facts."). In this way, CLRA subclass members have constitutional standing under Article III. *See Heredia v. Sunrise Senior Living, LLC,* No. 22-55332, 2023 WL 4930840, at *2 (9th Cir. Aug. 2, 2023); *In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 54 F.4th 28, 35 (1st Cir. 2022).

> **b.      Plaintiffs satisfy *Healy v. Milliman*.**

At summary judgment, class plaintiffs must present enough direct or circumstantial evidence that a "rational trier of fact could reasonably infer that there was class-wide standing." *Healy v. Milliman, Inc.,* 164 F.4th 701, 709 (9th Cir. 2026). Here, Plaintiffs have presented evidence sufficient to comply with *Healy*, given proof that all class members contracted with Defendants for skilled nursing services without being informed that Defendants fail to meet facility wide staffing requirements. *See* JAF 46-47 (Umpierre Decl., Ex. 34); JAF 8-10, 46, 47, 49 (Umpierre Decl., Ex. 7 at ¶4); JAF 8-10, 46-49 (Umpierre Decl., Ex. 8 & DE 133-4 at ¶4); JAF 8-10, 46-49 (Umpierre Decl., Ex. 9 at ¶4; Exs. 43-46; Ex. 49 (Dec 2025 class lists with admission/discharge dates); Ex. 4 (Gray Rule 26 Report and annual workbooks identifying specific days below minimum staffing requirements at Gordon Lane and Country Oaks during subclass periods); Ex. 49 (Further Supplemental Gray Rule 26 Report and workbooks identifying same for Country Oaks for 2020-2022); Ex. 49 (same re matching class member days with below minimum days); Ex. 27 (class member ledger information produced in discovery evidencing amounts paid by class members).

> **C.      Moving Parties' Argument 3**
>
> > **1.      <u>Summary Judgment Should Be Granted for Sun Mar Because It Made No Representation and Is Not a Facility Licensee.</u>**
> >
> > > **a.      Sun Mar Made No Misrepresentation.**

- 30 -

A CLRA claim requires evidence that the defendant made a misrepresentation on which Plaintiffs relied. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1112 (N.D. Cal. 2016); Cal. Civ. Code § 1770(a). Because the claim sounds in fraud, Plaintiffs must show that each defendant personally participated in the misrepresentation. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007); Fed. R. Civ. P. 9(b). Plaintiffs offer no such evidence as to Sun Mar.

It is undisputed that only Gordon Lane and Country Oaks—not Sun Mar—furnished Plaintiffs the Resident Bill of Rights on which Plaintiffs misrepresentation allegation depends. JAF 53. Sun Mar's corporate designee confirmed that Sun Mar's role is limited to back-office and consulting services and that Sun Mar has no control over resident-facing documents: "Gordon Lane would have control of that document. Not Sun Mar." JAF 54. Sun Mar's ability to access facility operating accounts for payroll and bookkeeping reflects that back-office role; it is not evidence of a misrepresentation to any resident.

### b.     Sun Mar Is Not the Licensee Under Section 1430(b).

Section 1430(b) creates a private right of action exclusively against "the licensee of a facility who violates any rights of the resident." Cal. Health & Safety Code § 1430(b); *Jarman v. HCR ManorCare, Inc.*, 10 Cal. 5th 375, 381 (2020). The licensee alone bears responsibility for the facility's organization, management, and operation, and delegation of authority does not diminish that responsibility. 22 C.C.R. § 72501.

Plaintiffs have no evidence that Sun Mar held any license for the facilities. The Facility Management Agreement's requirement that Sun Mar assist in maintaining the facility's license does not make Sun Mar a licensee—it is a contractual support obligation, not a grant of licensure. JAF 55. Summary judgment is warranted on the § 1430(b) claim as to Sun Mar.

### 2.     <u>Opposing Party's Response – Defendants Are a Single Enterprise Subject to Joint and Several Liability</u>

- 31 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Under Plaintiffs' "single-enterprise" theory, all Defendants herein are jointly and severally liable for their violations of Section 1430(b) and the CLRA. Under the single-enterprise rule, liability can be found among affiliated companies that act jointly, as a single enterprise. *See Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal.App.3d 1220, 1249 (1991). Defendants act jointly as a single enterprise if: (1) there is such a unity of interest and ownership between defendants that their separate identities no longer exist, and (2) an inequitable result will follow from treating each defendant's acts as its own. *Sonora Diamond Corp. v. Superior Court,* 83 Cal.App.4th 523, 539 (2000). With respect to the second requirement, "it is sufficient that it appear" that treating each defendant's acts as its own will produce inequitable results.

Here, Plaintiffs have established that Defendants acted as a singled enterprise and are subject to joint liability. Further, Plaintiffs have shown that an inequitable result will follow from treating each Defendant's acts as its own.

Defendants' form Management Agreement reflects the control authorized in Sun Mar to conduct the day-to-day activities of Gordon Lane and Country Oaks. JAF 53-55 (Umpierre Decl., Ex. 36 at p.4;[5] Ex. 37, p.4.[6]); *see also* JAF 13, 44, 46 (Umpierre Decl., Ex. 18 at 56:19-57:1, 59:4-60:3, 60:7-13, 62:15-20, 68:17-69:3). The Management Agreement obligates Sun Mar to ensure that Gordon Lane and Country Oaks comply with pertinent laws and regulations, and Sun Mar is required to act in a way that is consistent with Gordon Lane and Country Oaks keeping their respective SNF licenses. Umpierre Decl., Ex. 18 at 86:7-86:19; Exs. 36 & 37.

Sun Mar provides direction to each individual facility under management on every facet of the skilled nursing business, including clinical/nursing, accounting,

---

[5] Gordon Lane Management Agreement: "MANAGER shall at all times be solely responsible for the operation and management of the Facility, subject to the duties and responsibility of OPERATOR as the licensee. OPERATOR shall have no role in or responsibility for the management or operation of the Facility and shall not be responsible for compliance with any requirements contained in any applicable state or federal statute or regulation, except as may be required for licensing purposes."

[6] Country Oaks Management Agreement re same.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

and human resources. JAF 13, 44, 46 (Umpierre Decl., Ex. 11 at 49:9-18, 60:7-13, 86:7-19, 87:12-88:10, 120:4-124:21, 127:2-128:15, 133:14-25). For example, Sun Mar's Director of Nursing informs her counterparts at the facility level, including Gordon Lane and Country Oaks, about the nursing functions at each facility. *Id.* at 49:9-50:2. Senior VP of Operations, John Bowen provides direct support to the Administrators of Gordon Lane and Country Oaks regarding the day-to-day operations of those facilities. *Id.* at 17:23-18:23, 20:4-8, 89:7-90:5.

Moreover, it is highly significant that Sun Mar controls two key aspects of these facilities – the flow of money to and from the facility and the Administrator who runs it. Facility employees including the Administrator are not allowed to make withdrawals or deposits from the facility operating accounts without prior approval from Sun Mar. *Id.* at 76:22-78:16. Sun Mar thus controls the resources available for staffing at Gordon Lane and Country Oaks. Further, Sun Mar hires and is the final arbiter of who is the Administrator at each facility it manages. *Id.* at 144:25-145:10, 145:23-146:3. The Administrator, including at Gordon Lane and Country Oaks, reports to Sun Mar and Sun Mar conducts the Administrator's performance review. *Id.* at 104:18-23, 108:10-109:5, 109:13-110:4. In turn, the Sun Mar leadership team meets weekly to discuss the operations of the facilities under management, including about individual facility census and financials. *Id.* at 133:22-133:23.

In addition to the financial and structural controls identified above, a unity of interest and ownership among Defendants is evidenced by overlapping and interlocking shareholders and executives. During the subclass periods, Frank Johnson, Irving Bauman, Eli Marmur, and William Presnell were shareholders of Sun Mar who also held interests in Gordon Lane and Country Oaks. *Id.* at 34:21-35:12, 41:2-43:7, 46:10-47:17, 54:13-55:1, 58:6-17; JAF 53-55 (Umpierre Decl., Ex. 38 (Cost Report indicating equity interests in Gordon Lane and Sun Mar)); Ex. 39; Ex. 36 (GL Management Agreement executed by Presnell and Bauman)); Ex.

- 33 -

37 (CO Management Agreement)); Ex. 40 (Statement of No Change re Presnell/Sun Mar)); Ex. 41 (Statement of No Change re Bauman/Gordon Lane)).

### a. Sun Mar is subject to liability under the CLRA and §1430(b).

Defendants' argument that Sun Mar did not furnish the Patients' Bill of Rights absolves it of CLRA liability is without merit. *See* MSJ at 17:8-10. Sun Mar is subject to CLRA liability for the material staffing misrepresentations and omissions contained in the Standard Admission Agreement due to its management control of each facility's operations, including the requirement to comply with applicable laws and regulations.

Sun Mar is subject to CLRA liability for the material staffing misrepresentations and omissions contained in the Standard Admission Agreement due to its management control of each facility's operations, including the requirement to comply with applicable laws and regulations, and its sharing in the gross revenues of each facility. When multiple defendants personally participate in an unlawful deceptive practice, they may each be held liable under the CLRA. *See PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1177 (S.D. Cal. 2023) (joint liability under CLRA may be based on co-defendant's "personal participation in the unlawful practices" and "unbridled control over the practices"); *see also* Cal. Civ. Code §§ 1761(c), 1770(a), 1780(a) (extending liability to "unfair or deceptive acts or practices … undertaken by any person in a transaction" where "person" is defined to include any "group, however organized.")

For the same reasons, Defendants' claim that summary judgment is warranted on the §1430(b) claim as to Sun Mar fails. *See* MSJ at 17:23. What is more, Plaintiffs evidence that Sun Mar held itself out as a licensee is contained in Plaintiff Ashabraner's Admission Agreement. *See* JAF 57-58 (Umpierre Decl., Ex. 31, App'x A (Ashabraner Admission Agreement listing Sun Mar as licensee)).

### D. Moving Parties' Argument 4

**1.   Summary Judgment Should Be Granted Without Admissible Plaintiffs' Expert Evidence.**

Plaintiffs' Section 1430(b) and CLRA claims independently fail because Plaintiffs' expert evidence violates *Daubert* and Rule 702's standards. Plaintiffs' key premise that the facilities regularly staffed below the CDPH ratio requirements hinges on their experts' testimony, which Defendants have moved to exclude. Without this expert testimony, Plaintiffs have no support for their claims under Section 1430(b) or the CLRA, and Defendants are entitled to summary judgment.

**2.   Opposing Party's Response**

Defendants argue summary judgment should be granted without admissible Plaintiffs' expert evidence. MSJ at 17:2-9. But Plaintiffs' experts' testimony and analyses are admissible. They are based on reliable foundations formed after years of experienced the skilled nursing industry and/or the field of accounting and are tethered to the facts of this case. Ms. Gray employed the same method for determining Defendants' compliance with the mandatory staffing minimums as CDPH. As such, Plaintiffs' experts' testimony and analyses are offered to the trier of fact to understand the evidence or to determine a fact in issue in this case.

**E.   Moving Parties' Argument 5**

**1.   Summary Judgment Should Be Granted on the CLRA Claim Because Plaintiffs Have Not Established Any CLRA Element.**

Plaintiffs must show three elements to state a claim under the CLRA: misrepresentation, reliance, and damages. *Yastrab v. Apple Inc.*, No. 5:14–cv–01974–EJD, 2015 WL 1307163, at *4 (N.D. Cal. Mar. 23, 2015) (citing *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009)). Because Plaintiffs have not established any of the three elements, summary judgment is proper.

**a.   Misrepresentation**

First, Plaintiffs have not established any misrepresentation in this case. Plaintiffs allege that Defendants misrepresented that they would provide adequate

- 35 -

staffing.  However, with the pending exclusion of Plaintiffs' expert opinions and the lack of support explained above in the Moving Parties' Argument 1 section, Plaintiffs have not established that Defendants misrepresented their staffing as to any resident.

Plaintiffs also have no evidence that Defendants represented to Plaintiffs the 3.5/2.4 staff-resident ratios.  Plaintiffs' expert Cherney said he is "not aware of any express representation nor is there any - - in my long career any requirement to do so or practice by any facility to do so."  JAF 56.  Plaintiffs believe they are entitled to relief because of Defendants' alleged violations of the daily resident-staff ratio requirements, but Defendants made no such representations upon admission.  There is thus no misrepresentation as required for a CLRA claim.

### b.    Reliance

Second, Plaintiffs have not shown that class members relied on the Bill of Rights.  "If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009).  However, it is well-settled that defendants may rebut such an inference.  *See Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) ("The defendants may introduce evidence to rebut the inference of reliance"); *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 133-34 (2009) (finding no class-wide presumption where evidence showed class members continued taking the drug even after learning of its risks because of its countervailing benefits).  In a CLRA claim, "a representation is considered material if it induced the consumer to alter his position to his detriment."  *Id.*  The CLRA "does not create an automatic award of statutory damages upon proof of an unlawful act."  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).  Rather, CLRA plaintiffs must show "that the deception caused them harm."  *Id.* (citation omitted).  CLRA plaintiffs must show reliance, "that is, without the misrepresentation, the plaintiff would not have acted as he did."  *Id.* (citation omitted).  To obtain CLRA relief in a class action, "both the named plaintiff and unnamed class members must have

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

suffered some damage *caused by* a practice deemed unlawful under Civil Code section 1770." *Sevidal*, 189 Cal. App. 4th at 929 (citation omitted).

Here, Plaintiffs do not establish that any named Plaintiff, much less the entire class, relied on the Bill of Rights when choosing to reside at Gordon Lane or Country Oaks. Nor could they. In her deposition, Parrish-Lopez admitted that she did not ask anyone at Gordon Lane about staff-resident ratios, a hospital case manager gave her a list of skilled nursing facilities, she researched the facilities' reviews, and selected Gordon Lane accordingly. JAF 9. While her father resided at Gordon Lane, Parrish-Lopez never sought the staffing level information that Gordon Lane posted. JAF 10. In questionnaire responses, absent class members will state that they did not review the Resident Bill of Rights and that they entered their facility for many reasons not including the representation in the Bill of Rights. JAF 57.

These admissions will align with the expert testimony that individuals enter skilled nursing facilities for reasons unrelated to the Resident Bill of Rights—such as recommendations from physicians, hospital discharge planners, family members, or their own personal visits to the facility. *See* Bowblis Dec. (Dkt. 35-3), at 449 of 455 (Konetzka, TR and Perraillon MC. 2016. Use of Nursing Home Compare Website Appears Limited By Lack of Awareness and Initial Mistrust of the Data. *Health Affairs* 35(4): 706-713). It is also unrebutted that typical residents consider location, facility visits and inspections, activity offerings, payment, and cost over staffing ratio representations. *Id.* at ¶ 12. JAF 58.

Plaintiffs have failed to prove that *any* resident read the entire 82 pages of the admission packet "and made their admission decision based on one line." *Id.* at ¶ 17. "In summary, there is no common way nursing home residents choose a particular nursing home. There are multiple factors that a nursing home resident or their family may consider in picking a nursing home." *Id.* at ¶ 15. Because Plaintiffs have not established, and cannot establish, that named Plaintiffs or the class relied upon the Resident Bill of Rights as a reason to enter Gordon Lane or Country Oaks, the class-

wide CLRA claim fails as a matter of law.

### c.      Damages

Third, Plaintiffs have not shown that they suffered any damage, as required by the CLRA.  The damages requirement is not satisfied simply by infringement of any legal right, nor by "the mere employment of an unlawful practice."  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 643 (2009).  Rather, CLRA relief is "specifically limited to those who suffer damage." *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1164 (N.D. Cal. 2008) (citation omitted); *see also Sevidal*, 189 Cal. App. 4th at 929 (holding that named plaintiffs and unnamed class members must have suffered damage to prevail in a class CLRA claim).  Accordingly, Plaintiffs must show "not only that a defendant's conduct was deceptive but that the deception caused them harm." *Durell*, 183 Cal. App. 4th at 1367.

Judgment for Defendants on the class-wide claim for CLRA relief is inevitable because Plaintiffs do not show any damages, nor do they show any damages caused by deceptive conduct.  Plaintiffs claimed at certification that they would show payment of money based on the alleged misrepresentation, but that has not been done.  Plaintiffs have not identified any named plaintiff or class member who (1) actually paid money for their services, and (2) would not have paid that money had the facilities' staffing ratios been different.  Nor have Plaintiffs produced proof that they received less than the full value of services for which they paid.

As a result, under Ninth Circuit law, Plaintiffs cannot prevail on their CLRA claim: Where a material inducement to buy the service has not been shown, a "benefit of the bargain" defense may be raised. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013); *see also Horti v. Nestle HealthCare Nutrition, Inc.*, No. 21-CV-09812-PJH, 2022 WL 2441560, at *8 (N.D. Cal. July 5, 2022) (acknowledging that "Plaintiffs may establish a cognizable injury where they did not receive the full value of a purchase," but holding that Plaintiff did not allege concrete injury because Plaintiff did not identify how much they would have paid but for the

misrepresentation). Plaintiffs' CLRA claim must be dismissed at summary judgment because Plaintiffs cannot "show that [they] did not receive a benefit for which [they] actually *bargained*." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705-06 (9th Cir. 2020) (emphasis in original); *see also Krueger v. Wyeth*, 396 F. Supp. 3d 931, 949-50 (S.D. Cal 2019) (granting summary judgment for defendants in CLRA claim when plaintiff "provide[d] no evidence to support the market value of the alleged riskier and less beneficial HRT product she received in comparison to what she paid; nor d[id] she provide evidence of the market value of the HRT product if the false representations had been true[;] [and] Plaintiff offer[ed] no evidence of the monetary effect of the alleged misrepresentations or omissions on the market price of Defendants' products.").

At bottom, summary judgment is warranted because Plaintiffs have no evidence that any of the CLRA subclasses suffered damages as a result of the alleged adequate staffing representations.

**2. <u>Opposing Party's Response – Defendants' Motion for Summary Judgment Regarding Plaintiffs' CLRA Claim Should Be Denied Because There Are Triable Issues of Fact</u>**

**a. Applicable legal standards**

To state a claim under the CLRA, plaintiffs must show: (i) a misrepresentation or omission; (ii) reliance on same; and (iii) damages as a result thereof. *See, e.g.*, *In re Sony PS3 Other OS Litig.*, 551 Fed. Appx. 916, 920 (9th Cir. 2014); Jud. Council of Cal. Civ. Jury Instruction 4700. CLRA claims are governed by the "reasonable consumer" test, under which a plaintiff must allege that "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

To be actionable, a fraudulent omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835

- 39 -

(2006). To allege a duty to disclose, a plaintiff must show that the defendant (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; or (4) makes partial representations but also suppresses some material fact. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). Materiality hinges on whether "a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue." *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011).

### b. There are triable issues of fact regarding Defendants' misrepresentations and concealments.

Here, class members all receive a copy of Defendants' Resident Admission Agreement. JAF 15, 45 (Umpierre Decl., Ex. 24 & DE-143 at 2-5, 12). The language of the Agreements is standardized.[7]  In that document, Defendants represent that they will comply with the Resident Bill of Rights.  JAF 3, 47 (Umpierre Decl., Ex. 33 at 2).  The Agreement states that "[p]atients have the rights enumerated in this section and the facility shall ensure that these rights are not violated." It further states that "patients shall have the right[s]" as "specified in Health and Safety Code, Section 1599.1." *Id*. at 2-4.

Defendants' statements in these respects were false.  As discussed, under HSC § 1599.1, Defendants were obligated to provide Plaintiffs with a skilled nursing facility that "employ[s] an adequate number of qualified personnel to carry out all of the functions of the facility." *Id.,* § 1599.1(a).  Under governing law, the minimum direct nursing staffing levels mandated by California law provide a baseline measure of what is "adequate."  As the California Court of Appeals has

---

[7] Defendants must use the California Standard Admission Agreement for Skilled Nursing and Intermediate Care Facilities as the sole contract of admission. 22 CCR § 72516(a). All residents admitted to a skilled nursing facility in the State of California (or legal representative), must sign the California Standard Admission Agreement including an Attachment F titled "Resident Bill of Rights." Attachment F incorporates the Resident's Rights codified in 22 CCR § 72527 and 42 CFR 438.12 and is incorporated by Section IV titled "Your Rights as a Resident."

- 40 -

held, "[o]ne of the rights conferred on residents of a skilled nursing facility is the right to reside in a facility with an adequate number of qualified personnel to carry out all of the functions of the facility. [citations omitted] Section 1276.5, subdivision (a) requires a minimum staffing level of at least 3.2 NHPPD, 'provid[ing] an objective measure of what constitutes 'adequate.'" *Shuts*, 208 Cal. App. 4th at 620; *see also MacRae*, 691 Fed. Appx. at 477 (same); *Wehlage,* 791 F. Supp. 2d at 788.  As detailed by the Declaration of Valerie Gray, Defendants have routinely failed to meet the minimum staffing level of 3.5 hours of nursing hours per patient day and 2.4 CNA HPPD.

In addition, the evidence shows that Defendants have violated the CLRA by concealing material information from the class members.  As discussed, Defendants represented to Plaintiffs that they would provide adequate staffing within the meaning of California law, a statement that was untrue.  Notwithstanding the foregoing, it is undisputed that Defendants made no disclosures to Plaintiffs that they did not staff their facilities in compliance with the minimum requirements of California law, including Health & Code § 1599.1, 22 CCR § 72329.1(a), (f) and 22 CCR § 72329.2(a), even though these facts were highly material for the reasons discussed below.

**c.   Defendants' Misrepresentations and Concealments Were Material and Give Rise to An Inference of Classwide Reliance**

The statements in the Resident Bill of Rights, as well as Defendants' omissions, were material to the Plaintiff class members.  Materiality is evaluated based on whether the information at issue would be significant to the reasonable consumer.  *See, e.g.*, *Noohi v. Johnson & Johnson Consumer, Inc.*, 146 F.4th 854, 868 (9th Cir. 2025).  The representation or omission need not be the sole, decisive or even most important factor in the plaintiff's decision to purchase.  Rather, the statement or omission need only be a "substantial factor" in the decision.  *Lytle v.*

- 41 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Nutramax Lab.'s, Inc.*, 114 F.4th 1011, 1036 (9th Cir. 2024); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).

Plaintiffs easily meet this test.  As an initial matter, the named Plaintiffs have submitted detailed declarations confirming that they would not have selected Defendants' facilities if they had known that Defendants did not staff their facilities in compliance with the minimum levels of staffing required by California law.  JAF 8-10; Umpierre Decl., Ex. 43 (Rodriguez Decl.) at ¶ 13; Ex. 44 (Ashabraner Decl.) at ¶ 16; Ex. 45 (Parker Decl.) at ¶ 16.  Indeed, the materiality of sufficient staffing is confirmed by the State's statutes and regulations requiring minimum levels of nursing and direct caregiver staffing, which it deemed essential to protecting the health and safety of the residents.  As the Resident Agreement states, "[b]ecause these rights are so important, both federal and state laws and regulations describe them in detail, and state law requires that a comprehensive Resident Bill of Rights be attached to this Agreement."  JAF 58 (Umpierre Decl., Ex. 31 at 9); *see also* Umpierre Decl., Ex. 32 at 9; Ex. 33 at 3; Ex. 34 at 9.  In short, it is plain that the representations and concealments at issue are material. *See Heredia v. Sunrise Senior Living, Inc.,* No. 8:18-cv-01974-JLS-JDE, 2021 WL 6104188, at *11 (finding "staffing considerations" material to the reasonable consumer under the CLRA), *aff'd*, 2023 WL 4930840, at *2 (9th Cir. Aug. 2, 2023) (affirming inference of classwide reliance where all class members exposed to material representations about assisted living facility defendant's staffing levels through their residency agreements).

### d.  Defendants Have Not Rebutted the Inference of Classwide Reliance

Since Defendants' misrepresentations and concealments are material, an inference of classwide reliance arises.  *See, e.g.*, *Noohi*, 146 F.4th at 868; *Lytle*, 114 F.4th at 1022 ("Although reliance and materiality are separate elements, under the CLRA, a plaintiff can create a presumption of reliance by demonstrating a material

representation was made to the entire class.") (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011)).

Defendants' meagre evidentiary showing is insufficient to rebut the inference of classwide reliance arising from their material misrepresentations and omissions. Defendants argue that not all of the class members read or reviewed the statements in the Resident Admission Agreement.  However, Plaintiffs have submitted numerous declarations that confirm that they and the absent class members reviewed the statements in the Admissions Agreement and relied upon them. Umpierre Decl., Ex. 43 (Rodriguez Decl.) at ¶ 5; Ex. 44 (Ashabraner Decl.) at ¶¶ 8-9; Ex. 45 (Parker Decl.) at ¶ 8-9; Ex. 46 (Pareyra Decl.) at ¶ 5. Indeed, the Admission Agreements require the residents or their representatives to sign and "acknowledge that you have been informed of the 'Resident Bill of Rights.'" *See, e.g.*, JAF 47 (Umpierre Decl., Ex. 34 at PARRISH DEFS 0004194).  Further, "[p]arties are presumed to read the contract they sign." *Molly v. RK Netmedia*, *Inc.*, No. CV 09-02614 MMM (AGRx), 2009 WL 10669608, at *16 (C.D. Cal. Oct. 8, 2009); *see also Bingham v. Holder*, 637 F.3d 1040, 1045 (9th Cir. 2011).

Moreover, the inference of classwide reliance can only be rebutted with common proof.  *See, e.g.*, *Cohen v. Trump*, 303 F.R.D. 376, 386 (S.D. Cal. 2014) ("Because the Court finds that an inference of reliance is appropriate in this case, the inference can only be rebutted by evidence that can be properly generalized to the class as a whole."); *In re Nat'l Western Life Ins. Deferred Annuities Litig.*, No. 3:05-cv-1018-GPC-WVG, 2013 WL 593414, at *5-6 (S. D. Cal. Feb. 14, 2013); *Plascencia v. Lending 1st Mortg.*, No. C 07-4485 CW, 2011 WL 5914278, at *2 (N.D. Cal. Nov. 28, 2011) ("the class-wide presumption cannot be rebutted by showing that individual absent class members did not rely upon the fraudulent omissions").  Defendants have failed to proffer any classwide evidence.  Instead, Defendants have only proffered evidence from a small number of declarants.  But as discussed in the cases cited, isolated testimony from a few class members,

- 43 -

standing alone, is not sufficient to rebut the presumption of classwide reliance.

Likewise unavailing is Defendants' attempt to rebut the materiality of their omissions of material fact, in this case their nondisclosure that they do not follow the 3.5/2.4 minimum staffing levels. Mot. at 10:1-16. "Defendants may not proffer nonrepresentative [class member] testimony with respect to materiality." *Low v. Trump University LLC*, No.: 3:10-cv-00940-GPC-WVG, 2016 WL 6647793, at *2 (S.D. Cal. Nov. 10, 2016).

### e.    Defendants May Not Assert a "Benefit of the Bargain" Defense

Defendants' reliance on a purported benefit of the bargain defense is misplaced.  First, the California Supreme Court and the Ninth Circuit have held that the "benefit of the bargain" defense is ***not*** available where, as here, the misrepresentations and concealments at issue are material.  *See, e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013); *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th at 332-33 (2011); *Favell v. Univ. of S. Cal.*, No. CV 23-846-GW-MARx, 2023 WL 10406551, at *6-7 (C.D. Cal. July 5, 2023).

Second, even if this defense were available, the factual circumstances of this case make it inapplicable.  Here, the class members did not receive the full value of the services provided by Defendants because the facilities were staffed below minimum legal requirements. Thus, unlike cases where there is a need to offset for value received, here there was 'no value' conferred in that the baseline minimum guaranteed by California law was not provided.  Indeed, the class representatives and class members declare that they would not have paid Defendants ***any money at all*** if they had been informed that they did not staff their facilities in compliance with California's minimum legal requirements for staffing.  *See supra* § Opp. Party's SOF.  Thus, even if this defense were applicable, Plaintiffs' evidence raises triable issues of fact that preclude summary judgment.

**f.      Plaintiffs Have Suffered "Damage" Under the CLRA**

Plaintiffs easily meet the "any damage" requirement of the CLRA. Cal. Civ. Code § 1780(a). Plaintiffs and class members were injured when they paid (any) money to live in a SNF that provided fewer than the minimum number of direct nursing hours per patient day required by California law. *See supra* at § Resp. to Arg. 2. In addition, Plaintiffs and class members would not have paid money to Defendants if they had been told the truth, *i.e.*, that Defendants do not staff their facilities in compliance with California's mandatory minimums for staffing. It is well-settled that these types of harm are sufficient to meet the "any damage" requirement of the CLRA. *See, e.g.*, *Hinojos*, 718 F.3d at 1108; *Kwikset*, 51 Cal. 4th at 330; *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 724 (2018).

Dated: August 7, 2026

Respectfully submitted,

**RILEY SAFER HOLMES & CANCILA LLP**

By: /s/ *Jennifer Steeve*
JENNIFER STEEVE
MADELINE HOOKS
KATHLEEN A. STIMELING
BRIAN O. WATSON
Attorneys for Defendants

**STEBNER GERTLER & GUADADNI**

**SCHNEIDER WALLACE COTTRELL KIM LLP**

By: /s/ *Brian S. Umpierre*
KATHRYN A. STEBNER
BRIAN S. UMPIERRE
GUY B. WALLACE
JENNIFER U. BYBEE
TRAVIS C. CLOSE
SCOTT L. GORDON

Attorneys for Plaintiffs

- 45 -